TIMOTHY J. FAST,
on behalf of himself and all
others similarly situated,

        Plaintiff,

v.                                          Case No.: 16-CV-1637

CASH DEPOT, LTD.,

        Defendant.

## DECLARATION OF AMY BRADLEY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

I, Amy Bradley, declare as follows:

    1.    I am employed as a member of the Payroll Services Team with Schenck SC ("Schenck"). My current position is Operations Leader – Payroll. The Payroll Services Team assists various clients with their payroll administration. We assist clients in keeping abreast of any compliance changes and updates on wage and hour regulations.

    2.    I have been employed with Schenck for twelve (12) years. Prior to joining Schenck in 2005, I was employed in a payroll supervisory position at Party Concepts, Inc.; I held that position for five (5) years. Prior to then, I had worked in a variety of payroll positions, dating back to 1984. Attached as **Exhibit 1** is a copy of my resume outlining my employment history and experience with payroll.

    3.    Schenck was retained by the Defendant, Cash Depot, Ltd. ("Cash Depot"), via its legal counsel, to perform an audit of the Company's payroll records for the time period of December 2013 through February 2017. In particular, Schenck was retained to review the Company's payroll practices concerning the payment of on-call premiums, shift premiums, bonuses, and overtime.

    4.    As the Operations Leader, I was assigned the lead position on the payroll audit. I

had one member of Schenck's Operations Consulting team assist me on the payroll audit; that individual was Johnathan Braker. I oversaw and supervised his work, as well as reviewed and approved the final wage calculations.

5. I am very familiar with the wage and hour rules and regulations set forth in the Fair Labor Standards Act ("FLSA"), including those regulations pertaining to the requirement to pay non-exempt employees overtime on hours worked in excess of forty (40) during a workweek.

6. I have more than thirty (30) years of experience with payroll. I received my certified payroll professional ("CPP") certification from the Certification Board of the American Payroll Association in 1997. Attached as **Exhibit 2** is a copy of my CPP certification. In order to maintain my certification, I attend continuing education classes on an annual basis. I completed my most recent training at the American Payroll Association's 35th Annual Congress and Global Payroll Management Forum held on May 16-20, 2017. Attached as **Exhibit 3** is a copy of a letter confirming my attendance at the Global Payroll Management Forum, along with the number of continuing education credits I earned during the Forum.

7. Mr. Braker and I reviewed Cash Depot's payroll records, including the daily time records and payroll reports maintained in Cash Depot's timekeeping and payroll software, along with copies of the check/direct deposit registers for December 2013, all of 2014, 2015, and 2016 and January-February 2017. Although Plaintiff's Complaint only dealt with payment of overtime to field service technicians, Cash Depot and its legal counsel directed us to audit the payroll records for all employees employed during the December 2013 - February 2017 timeframe, including former and current employees. Accordingly, we reviewed payroll records for all employees employed during the December 2013 – February 2017 timeframe, not just the Plaintiff and field service technicians.

8. In addition, we reviewed the allegations set forth in Plaintiff's Complaint to understand the nature of the Plaintiff's allegations concerning Cash Depot's payroll practices. Based on our review of the Plaintiff's Complaint, it was our understanding that Mr. Fast is

alleging that Cash Depot failed to properly calculate and pay overtime on on-call premiums, shift premiums and bonuses paid to field service technicians. Mr. Fast also alleges that Cash Depot failed to pay overtime on all hours worked over 40 hours in a workweek.

9. As part of our payroll audit, we also reviewed and discussed with Cash Depot its payroll policies concerning the payment of on-call premiums, shift premiums, and bonuses. Per our discussions with Cash Depot and its legal counsel, we learned that Cash Depot paid an on-call premium of $75 per week to its field service technicians for each week the technician was on-call. Cash Depot did not pay shift premiums to field service technicians.

10. We also reviewed Cash Depot's policies concerning the definitions of workweek and on-call week. During the subject time period (i.e., December 2013 through February 2017), Cash Depot designated its workweek as Sunday through Saturday and its on-call week as Monday through Sunday. Based on the foregoing designations, the on-call premium paid by Cash Depot expanded over two workweeks.

11. The FLSA provides for a general overtime rate of pay not less than one and a half (1 ½) times the employee's "regular rate." The "regular rate" may not be less than the statutory minimum wage. If the employee's regular rate is higher than the statutory minimum, the employee's overtime compensation must be computed at a rate not less than one and a half times such higher rate. Typically, the regular rate is the hourly rate paid to the employee for all non-overtime work during any given workweek. However, Section 7(e) of the FLSA also requires inclusion in the "regular rate" of all remuneration for employment paid to the employee including premium payments and non-discretionary bonuses and, therefore, when an employer pays premiums such as an on-call premium, they must factor that premium into that particular workweek's regular rate of pay.

12. During our audit, we verified that Cash Depot did not factor the on-call premiums into the "regular rate" of pay when determining how much overtime it owed to the Plaintiff and other field service technicians. We also verified that Cash Depot did not factor shift premiums or non-discretionary bonuses into the "regular rate" of pay and, therefore, failed to pay overtime on

3

such payments.

13. In conducting the payroll audit, we initially reviewed the daily and weekly time reports and payroll report for the Plaintiff, Timothy Fast. Attached as **Exhibit 4** is a copy of the Plaintiff's payroll records we reviewed as part of our audit.

14. In conducting our review, we determined which weeks Mr. Fast was on-call and earned the $75/week on-call premium. Because the $75 on-call premium actually applied to two workweeks, we divided the $75 by 7 to determine the requisite daily amount and then multiplied that by 6 to determine how much of the on-call premium applied to the workweek that covered Monday through Saturday (i.e., $64.29) and then applied the remaining portion (i.e., $10.71) to the following workweek which would have included the Sunday of the on-call week.

15. In reviewing Plaintiff's payroll records we verified that Cash Depot paid overtime compensation on all hours worked in excess of forty (40) during each workweek. Although Cash Depot's pay periods were the 1st through the 15th and the 16th through the 30th or 31st, it did not use such periods to determine what its overtime obligations were. Cash Depot's payroll software calculated the number of hours worked for each workweek as designated by Cash Depot (i.e., Sunday through Saturday) and calculated overtime compensation for the corresponding workweek. Because Cash Depot did not pay employees on a weekly or bi-weekly basis, some pay periods included partial weeks and some even included time from three (3) separate workweeks. However, contrary to the Plaintiff's assertion, this did not mean that Cash Depot failed to pay overtime on all hours worked in excess of forty (40) during a workweek.

16. Because we determined that Cash Depot had already properly paid overtime to Mr. Fast on his regular hourly rate of pay of $15.00 per hour ($22.50 for overtime hours), we developed a formula and spreadsheet to calculate what additional overtime compensation was due to him for the on-call premiums paid. Attached as **Exhibit 5** is a copy of the spreadsheet we prepared summarizing the results of our audit of Mr. Fast's payroll records. The spreadsheet shows the manner in which we calculated the additional overtime compensation owed to Mr. Fast. As reflected in the spreadsheet, we took the on-call premium and divided it by the number

4

of hours worked in such workweek to determine the additional hourly rate for that workweek. For example, for the workweek of August 2, 2015 through August 8, 2015, Mr. Fast worked 57.50 hours; he earned $64.29 in on-call premiums for that workweek (i.e., 6/7 of the $75.00 on-call premium). We took the $64.29 and divided by 57.50 hours, arriving at an hourly rate of $1.1181 for that workweek. We then took that hourly rate and divided it by two (2) to calculate the additional overtime premium owed for the hours in excess of forty (40) hours (i.e., $1.1181 / 2 = $0.5591 x 17.50 hours = $9.78); this calculation factors in the fact that Cash Depot already paid the hourly rate (one times) for the overtime hours and hence only owed the "half times" portion of the overtime compensation. This method was used for each workweek during which Mr. Fast earned any on-call premium.

17. Mr. Fast was employed with Cash Depot from July 6, 2015 through July 29, 2016. We calculated that Cash Depot owed Mr. Fast an additional $167.50 in overtime wages for the on-call premiums paid to Mr. Fast during his year of employment.

18. In addition to the on-call premiums, we determined that Cash Depot failed to pay overtime compensation on a non-discretionary bonus paid to Mr. Fast in August 2015. During the term of Plaintiff's employment, Cash Depot had a bonus program known as its "Road to 10 Million Bonus Program." Cash Depot paid a $700 bonus to Mr. Fast in August 2015; per the bonus program, the bonus was earned by employees based on the company hitting its target number of transactions in July 2015. Accordingly, we took the $700 bonus and divided it by the number of hours Mr. Fast worked during the month of July to calculate what additional amount Cash Depot owed him in the way of overtime compensation. Based on our calculations, we determined that Cash Depot owed Mr. Fast an additional $22.88 in overtime compensation for the 11.15 hours of overtime worked during July 2015. See Exhibit 5.

19. We ultimately determined that Cash Depot owed Mr. Fast $190.38 in wages related to the additional overtime compensation that Cash Depot owed for the on-call premiums and non-discretionary bonuses that the Company had not previously factored into Mr. Fast's regular rate of pay. See Exhibit 5.

20. It is my understanding that Cash Depot issued a payroll check to Mr. Fast for the foregoing wages and that Cash Depot actually doubled the amount to factor in the liquidated damages provided for under the FLSA (i.e., $380.76, less state and federal tax withholdings).

21. It is also my understanding that Cash Depot provided a copy of Schenck's spreadsheet (Exhibit 5) to Plaintiff's legal counsel as part of discovery responses, as well as backup for the payroll check Cash Depot issued to Mr. Fast.

22. Cash Depot's legal counsel advised me that Plaintiff's legal counsel, James Walcheske, wanted to meet with me to discuss our audit findings and the methodology we used for calculating the additional wages owed to Mr. Fast. It was my understanding that Cash Depot's legal counsel agreed to such a meeting in the hopes that the parties could reach a settlement.

23. I traveled to the Law Firm of Conway, Olejniczak & Jerry on July 20, 2017 to participate in a conference call with Attorney Jodi Arndt Labs and Attorney James Walcheske. Attorney Walcheske had asked us to have the payroll records we reviewed (Exhibit 4) and our spreadsheet (Exhibit 5) in front of us during the call so we could walk through the documents and our calculations. We contacted Attorney Walcheske at the scheduled time and he asked me to explain how I performed the calculations. We walked through my methodology for the weeks of August 2, 2015 and August 9, 2015. I believe Attorney Walcheske understood my methodology and calculations. I further explained that we had used the same methodology with the one bonus payment Mr. Fast received in August 2015; I pointed out such calculation was on the last page of the spreadsheet. At that time, Attorney Walcheske thanked me for the explanation and stated that he had not yet gotten to that page of the document so he appreciated us pointing it out to him. It was my understanding that Attorney Walcheske wanted this meeting because he had performed some preliminary calculations that derived at amounts that were higher than what we had calculated. Attorney Labs and I asked Attorney Walcheske to explain how he was calculating the amount of overtime owed. Attorney Walcheske did not explain to us his method of calculating the overtime but instead stated that he would run his calculations again

6

and let us know if his numbers continued to be higher than our calculations. It did not appear that Attorney Walcheske was fully prepared for our meeting as he was unable to explain to us how he had calculated the additional overtime and/or why his numbers were higher. He merely advised us that his numbers were at least 50% higher than what we had calculated. Attorney Walcheske also admitted that he had not performed calculations for the entire duration of Mr. Fast's employment.

24. In addition to auditing Mr. Fast's payroll records, we audited the payroll records for all employees employed by Cash Depot from December 2013 through February 2017. We applied the same methodology in calculating the additional overtime compensation as we outlined above for Mr. Fast. Once we had calculated the additional overtime wages Cash Depot owed to its current and former employees, we calculated interest payments on such amounts using a five percent (5%) interest rate. We prepared a spreadsheet for Cash Depot summarizing our audit results. Based on our audit findings, we determined that Cash Depot owed its former and current employees a total of $21,986.47; this amount includes the additional wages we had calculated for Mr. Fast. In the way of a breakdown of the foregoing amount, we determined that Cash Depot owed an additional $10,647.42 in overtime compensation for on-call premiums paid over the 3+ year time period, an additional $9,350.84 in overtime compensation for non-discretionary bonuses paid between 2013 and 2017, and an additional $115.75 in overtime compensation for shift premiums paid over the same timeframe; the remaining $1,872.16 is attributed to interest payments.

I declare under penalty of perjury that the foregoing is true and correct.

    Executed this 2nd day of August, 2017 at Appleton, Wisconsin.

                                        s/Amy Bradley
                                        Amy Bradley