UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TIMOTHY J. FAST,
on behalf of himself and all
others similarly situated,

        Plaintiff,

v.                       Case No.: 16-CV-1637

CASH DEPOT, LTD.,

        Defendant.

## DECLARATION OF JODI ARNDT LABS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

I, Jodi Arndt Labs, declare as follows:

1. I am a shareholder and attorney at the Law Firm of Conway, Olejniczak & Jerry, S.C., legal counsel for Defendant, Cash Depot, Ltd. ("Cash Depot"). I have been working directly with Attorney George Burnett on this matter.

2. I submit this Declaration in Support of Defendant's Motion to Dismiss.

3. Our office retained the services of Schenck S.C. ("Schenck") to conduct a wage audit of Cash Depot's payroll records for December 2013 – February 2017.

4. Schenck determined that Cash Depot owed the Plaintiff, Timothy Fast, $190.38 in additional overtime compensation; such amount was based on the on-call premiums paid for Mr. Fast's on-call weeks, along with the one non-discretionary bonus payment to Mr. Fast during his one-year employment with Cash Depot.

5. Cash Depot cut Mr. Fast a payroll check for $380.76, which represents the amount owed to him plus liquidated damages in the same amount per the remedies afforded

under the Fair Labor Standards Act. Our office mailed Mr. Fast's payroll check to his legal counsel, James Walcheske, on June 6, 2017. Attached as **Exhibit 1** is a true and correct copy of Attorney George Burnett's letter to Attorney Walcheske enclosing the payroll check. Attorney Walcheske's office has not returned the payroll check to Cash Depot or our office.

6. In our June 6, 2017 correspondence, we advised Attorney Walcheske and his client that Cash Depot would pay the costs and attorneys' fees incurred in advancing the claim upon receipt of an accounting of the costs and reasonable fees. We enclosed formal discovery requests seeking information pertaining to Plaintiff's costs and attorneys' fees. Attached as **Exhibit 2** is a true and correct copy of Defendant's Interrogatories and Request to Produce Documents that was attached to the June 6, 2017 correspondence.

7. On June 21, 2017, I mailed to Attorney Walcheske Defendant's Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents. Defendant's Responses included a summary of how Schenck had calculated the additional overtime compensation due to Mr. Fast. We also included a copy of Schenck's spreadsheet summarizing its wage calculations. Attached as **Exhibit 3** is a true and correct copy of my June 21, 2017 correspondence and Defendant's Responses to Plaintiff's First Set of Interrogatories and Request to Produce Documents. Attached as **Exhibit 4** is a true and correct copy of Schenck's spreadsheet that was attached to Defendant's discovery responses as Exhibit B.

8. On June 23, 2017, I received an e-mail communication from Attorney Walcheske asking to discuss the matter, including a possible stay of deadlines in this matter. We scheduled such discussion for 10:00 a.m. on June 28, 2017. Attached as **Exhibit 5** is a true and correct copy of the e-mail communication between Attorney Walcheske and me.

2

9. Attorney Burnett and I called Attorney Walcheske at 10:00 a.m. on June 28, 2017; we received his voicemail message, at which time we left him a message to call either one of us back to discuss the status of this matter. Attorney Walcheske called Attorney Burnett back later that morning and the two of them discussed Defendant's discovery responses and the status of this matter. Attorney Walcheske advised Attorney Burnett that his calculations of overtime losses differed from Schenck's and he believed that despite Cash Depot's efforts it had still underpaid his client, Mr. Fast. During that discussion, Attorney Burnett agreed that Attorney Walcheske could meet with our expert, Schenck, to go over their methodology and computations in order to determine whether Schenck's computations were correct. In order to avoid unnecessary legal fees while the parties reviewed Schenck's audit findings, the parties agreed to stay the proceedings for a period of sixty (60) days. The parties memorialized their agreement in a stipulation to stay which they filed with the Court on July 6, 2017, along with a proposed order. Attached as **Exhibit 6** is a copy of the Stipulation to Stay and proposed order. On July 7, 2017, the Court approved the stipulation and issued an Order staying the proceedings for sixty (60) days. Attached as **Exhibit 7** is a copy of the Order issued by the Court on July 7, 2017.

10. On Friday July 7, 2017, Attorney Burnett received an e-mail from Attorney Walcheske that included a lengthy letter relating to Cash Depot's discovery responses. The e-mail was sent to Attorney Burnett during the afternoon of July 6th but Attorney Burnett was in Chicago that day attending hearings so he did not actually review the e-mail until July 7, 2017. Attorney Burnett responded to the e-mail that same day as we were surprised by the demands asserted in the letter in light of our agreement to stay the proceedings for sixty (60) days. Attached as **Exhibit 8** is a true and correct copy of the e-mail communications between Attorney Walcheske and Attorney Burnett between July 6 and July 10, 2017.

11. On July 10, 2017, Attorney Burnett advised Attorney Walcheske that we would arrange for him to meet with Schenck to review their wage calculations; Attorney Burnett recommended that such meeting be in person so everyone could review the supporting documentation and discuss Schenck's methodology and computations. Attorney Walcheske advised us that he believed that he such meeting could be held via a teleconference rather than an in-person meeting. Attached as **Exhibit 9** is a true and correct copy of the July 10, 2017 e-mail communication between Attorneys Burnett and Walcheske.

12. I contacted Amy Bradley at Schenck to coordinate a date and time for the meeting with Attorney Walcheske; Amy Bradley was the lead payroll specialist assigned by Schenck to the payroll audit. I provided the various dates and times presented by Attorney Walcheske in his July 10th e-mail communications (see Exhibit 9). I subsequently informed Attorney Walcheske that both Amy Bradley and I were available on July 19th. Attorney Walcheske asked whether we could meet instead on July 20th. After confirming Ms. Bradley's availability, I notified Attorney Walcheske that we could meet on July 20th. We ultimately scheduled the meeting July 20, 2017 at 11:00 a.m. Attached as **Exhibit 10** is a true and correct copy of my e-mail communications with Attorney Walcheske concerning the July 20th meeting.

13. Amy Bradley and I called Attorney Walcheske on July 20, 2017 to review and discuss Schenck's methodology and calculations of the additional overtime compensation owed to Mr. Fast. Per Attorney Walcheske's request, we had copies of Mr. Fast's payroll records and Schenck's spreadsheet in front of us when we called Attorney Walcheske. During the call, Attorney Walcheske asked Ms. Bradley to explain her methodology in how she arrived at the determination that Cash Depot owed Mr. Fast $190.38 in additional overtime compensation. We specifically walked through the calculations and methodology applied for the weeks of August 2,

2015 and August 9, 2015.  When Ms. Bradley confirmed how she calculated the overtime wages for the foregoing workweeks, she explained that she applied the same methodology for each workweek Mr. Fast was on-call.  Ms. Bradley also informed Attorney Walcheske that she used the same methodology for the one bonus payment received by Mr. Fast.  When Ms. Bradley mentioned the bonus payment, Mr. Walcheske thanked her for mentioning the bonus as he had not gotten that far in Schenck's spreadsheet and, therefore, he had not seen the calculations performed for the bonus payment.  This surprised me as I was under the impression that we would be going through all of Schenck's calculations and that we would have a detailed discussion about how each party calculated the additional overtime wages.  I had actually set aside an hour for the meeting and Ms. Bradley even drove up from her Appleton office to be present in my offices during the call.  The actual call with Attorney Walcheske was short and lasted approximately 15 minutes.

14.     During the July 20th conference call, I asked Attorney Walcheske to explain how he was calculating the additional wages owed to Mr. Fast; I advised him that I wanted to understand where he believed we went wrong with our methodology and/or calculations.  I understood from discussions with Attorney Burnett that Attorney Walcheske had advised Attorney Burnett that his calculations were coming in higher and that was the purpose of meeting with Schenck to go over their calculations.  Attorney Walcheske did not explain to us how he calculated the additional overtime wages.  He told us that he was unsure but that his calculations were two times as much as we had calculated so he wanted to understand what we did.  At the end of our call, Attorney Walcheske informed us that he would review his calculations and let us know if he disagreed with our approach.

5

15. On July 25, 2017, Attorney Walcheske e-mailed me a letter wherein he summarized our July 20th conference call. In that letter Attorney Walcheske advised me that he had performed his own calculations based on the payroll documentation we had provided to him with our discovery responses and that his calculations revealed that the amount owed to Mr. Fast was at least double the amount calculated by Schenck. Attorney Walcheske did not explain how he performed the calculations. Rather, he said he would provide us with the calculations only if we agreed to the series of conditions set forth in his July 25th correspondence. The conditions laid out by Attorney Walcheske included an automatic certification of the class and seemed to ignore the statutory requirements for class certification. Attached as **Exhibit 11** is a copy of Attorney Walcheske's July 25, 2017 correspondence. It appears from our review of the letter that Mr. Walcheske's primary concern was that Cash Depot would make additional payments to individuals he does not represent.

16. On July 13, 2017, we received a letter from Attorney Kelly Temeyer, an associate at Attorney Walcheske's office. The July 13th letter included a copy of Plaintiff's Answers and Objections to Defendant's [Second Set] of Interrogatories and Request to Produce Documents. The Plaintiff's discovery responses addressed Cash Depot's request for information pertaining to the costs and attorneys' fees incurred to date to advance Mr. Fast's wage claim. Although we requested details and backup documentation to support the Plaintiff's costs and attorneys' fees, we received vague responses that did not provide any supporting detail. Attached as **Exhibit 12** is a true and correct copy of the July 13, 2017 correspondence, accompanied by Plaintiff's Answers and Objections to Defendant's [Second Set] of Interrogatories and Request to Produce Documents.

17. In an effort to verify the reasonableness of the attorneys' fees incurred to date so as to allow Cash Depot to issue a check for such costs and attorneys' fees, our office sent a letter to Attorney Temeyer on July 17, 2017 requesting additional information. Attached as **Exhibit 13** is a true and correct copy of our July 17, 2017 letter to Attorney Temeyer. As of today's date, we have not received any response to our July 17, 2017.

18. On August 3, 2017, we mailed a check in the amount of $13,333.35 to Attorney James Walcheske, representing payment by Cash Depot of the costs and attorneys' fees Plaintiff disclosed in his discovery responses. Attached as **Exhibit 14** is a copy of our August 3, 2017 correspondence, along with the referenced check.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of August, 2017 at Green Bay, Wisconsin.

    /s/ Jodi Arndt Labs