UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

TIMOTHY J. FAST
on behalf of himself and all
others similarly situated,

        Plaintiff,

v.                             Case No. 16-CV-1637

CASH DEPOT, LTD.,

        Defendant.

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS ON MOOTNESS GROUNDS, FOR SUMMARY JUDGMENT, AND TO LIFT THE TEMPORARY STAY OF PROCEEDINGS**

## INTRODUCTION

Plaintiff, Timothy Fast, by his attorneys, Walcheske & Luzi, LLC, submits this Brief in Opposition to Defendant's Motions to Dismiss On Mootness Grounds, for Summary Judgment, and to Lift the Temporary Stay of Proceedings (collectively, "Defendant's Motions"). Stated simply, existing case law and Defendant's admitted, ongoing dispute over the merits of Plaintiff's claims demonstrate the baselessness of Defendant's Motions, which are nothing more than a continuation of its pattern of conduct interfering with and attempting to circumvent proper collective action procedure. Accordingly, and for the reasons stated herein, this Court should deny Defendant's Motions.

## STATEMENT OF FACTS

On December 9, 2016, Plaintiff filed his Complaint in this matter on behalf of himself and all other similarly-situated Field Service Technicians, alleging that Defendant violated the Fair Labor

Standards Act ("FLSA") by failing to lawfully compensate such employees: (1) at a correct overtime rate of pay; and (2) for all overtime hours worked at an overtime rate of pay. (ECF No. 1, ¶ 4.) With respect to the "correct" rate of overtime pay, Plaintiff specifically alleged that Defendant failed to include non-discretionary bonuses and on-call premiums in its employees' "regular rate" of pay, as that phrase is used and defined under the FLSA, when determining the amount of compensation each employee should have received each workweek. (*Id.*)

Through his Complaint, Plaintiff requested eight (8) forms of relief: (1) conditional certification of a collective; (2) appointment of Walcheske & Luzi, LLC as collective counsel; (3) declaratory relief; (4) remuneration for all unpaid wages, including overtime wages, owed to Plaintiff and the putative collective; (5) liquidated damages pursuant to the FLSA in an amount equal and in addition to the amount of wages, including overtime wages, owed to Plaintiff and the putative collective; (6) reimbursement for attorneys' fees and costs; (7) pre-judgment and post-judgment interest; and (8) any other relief the Court deemed just and equitable. (ECF No. 1.)

On May 12, 2017, Plaintiff served His First Set of Interrogatories and Requests for Production of Documents ("Plaintiff's first set of discovery") on Defendant. (Declaration of Kelly L. Temeyer ("Temeyer Decl.") ¶ 2.) Plaintiff's first set of discovery requested information necessary to support Plaintiff's anticipated motion for conditional certification of a collective action under the FLSA.[1] (Temeyer Decl. ¶ 3.) For example, Plaintiff's first set of discovery requested information relating to: (1) the individuals comprising the putative collective on whose behalf Plaintiff filed his Complaint; (2) Defendant's timekeeping systems and practices; (3) Defendant's overtime practices and/or policies; and (4) Defendant's practices and/or policies for determining the "regular rate" of the individuals comprising the putative collective. (*See id.* at ¶ 4.)

---

[1] Pursuant to this Court's Scheduling Order, Plaintiff's motion for conditional certification had to be filed on or before July 14, 2017. (*See* ECF No. 12.)

On June 14, 2017, and after Defendant did not provide Plaintiff any responses to Plaintiff's first set of discovery, Plaintiff's counsel faxed a letter to Defendant's counsel regarding its discovery obligations and unilaterally extending the due date for Defendant's discovery responses to June 16, 2017. (*Id.* at ¶¶ 5-7.)

In response and on June 14, 2017, Plaintiff's counsel received an email from Defendant's counsel stating that Defendant was working on its responses, but that it would not able to provide them until June 21, 2017. (*Id.* at ¶ 8-9.) The email further referenced a letter that was sent the prior week to Plaintiff's counsel, "along with a payroll check and some discovery requests." (*Id.*)

In correspondence from Defendant's counsel received on or about June 13, 2017, Defendant's counsel sent Plaintiff's counsel a check from Defendant made payable to Plaintiff in the amount of $338.98. (*Id.* at ¶¶ 10-11) Accompanying the check was a letter from Defendant's counsel dated June 6, 2017 ("counsel's June 6, 2017 letter"), stating, in part: "I have enclosed my client's draft in the amount of $338.98, which represents the full amount your client would be owed in the event he received everything he claims in his complaint…and includes all statutory damages as well as the allegedly unpaid compensation he claims." (*Id*. at ¶¶ 10-11.) Counsel's June 6, 2017 letter additionally stated, in part: "We have not enclosed a check for the costs or reasonable attorneys' fees in advancing the claim, because that information is lacking. My client will pay those costs and reasonable fees, so please forward an accounting of the costs and reasonable fees, and we will promptly remit payment." (*Id*. at ¶ 11.) Counsel's June 6, 2017 letter enclosed Defendant's Second Set of Interrogatories and Request to Produce Documents,[2] consisting of two (2) interrogatories: the first requesting information relating to Plaintiff's costs incurred in this ligation, and the second requesting an accounting of Plaintiff's attorneys' fees incurred in this litigation. (*Id.* at ¶¶ 10-12.)

---

[2] This was actually Defendant's first set of discovery. (*Id.* at ¶ 13.)

Prior to receiving Defendant's check made payable to Plaintiff, Defendant did not provide any indication to Plaintiff's counsel that it wanted to or would send a check to Plaintiff. (*Id.* at ¶ 14; Declaration of James A. Walcheske ("Walcheske Decl.") ¶ 4.) Plaintiff did not and has not cashed or deposited Defendant's check or otherwise indicated acceptance of Defendant's check. (Walcheske Decl. ¶ 5.)

On June 21, 2017, Plaintiff received Defendant's Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents via email. (*Id.* at ¶ 6-7.) Defendant refused to provide any responsive information relating to the putative collective, objecting that such information was "irrelevant, primarily due to the fact Cash Depot has paid its field service technicians all wages owed to them, including overtime." (*Id.* at ¶ 8; *see also id. at* ¶ 7.)

With respect to that objection, Defendant disclosed that it engaged the services of Schenck S.C. ("Schenck"), an outside accounting firm, to conduct a wage audit "for all employees, not just field service technicians" for the period covered by Plaintiff's Complaint. (*Id.* at ¶ 7.) As a result, Schenck "determined that Cash Depot owed employees (both former and current) additional wages in an amount less than $22,000," which "represent[ed] the potential amount that would have been in controversy if Plaintiff were to be successful in certifying this matter as a class action."[3] (*Id.* at ¶ 7.) Based on Schenck's determination, "Cash Depot mailed a payroll check to each individual who was no longer employed with Cash Depot. As for individuals still employed with Cash Depot, Cash Depot added the additional wages to their payroll check and included a note explaining the reason for the additional wages." (*Id.*) While Defendant's check to Plaintiff included liquidated damages, Defendant

---

[3] Although Defendant's discovery responses stated that additional compensation was paid to Plaintiff and the putative collective, Defendant did not provide any proof thereof or details regarding the compensation, other than to state that the amount paid was "less than $22,000." (*Id.* at ¶ 13.) Defendant did not identify the actual amount paid, the calculations underlying each individual's payment, the identity of the individuals who received payments, or even the number of individuals to whom Defendant provided such payments. (*Id.*)

4

did not provide liquidated damages to any members of the putative collective. (*Id.* at ¶ 9; *see also id.* at ¶ 7.)

As to its method of calculation underlying Defendant's payments, Defendant explained that Schenck "calculated the regular rate of pay by factoring in any on-call shift premiums paid to Mr. Fast, along with any non-discretionary bonuses earned and paid out to Mr. Fast during his one-year term of employment with Cash Depot." (*Id.* at ¶ 7.) Defendant produced as "Exhibit B" to its discovery responses "a copy of the spreadsheet prepared by Schenck reflecting its calculation of wages due and owing to Mr. Fast" ("Schenck's spreadsheet"). (*Id.* at ¶¶ 10-11.)

Prior to providing Defendant's discovery responses, Defendant made no indication to Plaintiff's counsel that it had provided additional compensation to the putative collective or even that it was contemplating doing so. (*Id.* at ¶ 12.) The parties had never even discussed possible damages and, to Plaintiff's knowledge, Defendant was denying liability in this matter. (*Id.*)

On June 23, 2017, Plaintiff's counsel requested that the parties discuss "the status of this case," including a discussion of "who received the checks; what the checks represented; who performed the calculations underlying the check amounts; and whether [Defendant would] be willing to stipulate to stay this matter's deadlines pending our joint assessment of where this case currently stands in light of those checks." (*Id.* at ¶¶ 14-15.) That meeting was scheduled for June 28, 2017. (*Id.* at ¶ 14.)

Between June 23, 2017 and June 28, 2017, Plaintiff reviewed Schenck's spreadsheet. (*See id.* at ¶ 16.) From that review, Plaintiff determined that Schenck may not have correctly and legally determined the "regular rate" for Plaintiff and, by extension, all current and former employees to whom Defendant provided additional compensation. (*Id.*)

On June 28, 2017, the parties engaged in a teleconference. (*Id.* at ¶ 17.) During the teleconference, Defendant's counsel stated its belief that Plaintiff's claims were mooted by

Defendant's payments. (*Id.* at ¶ 18.) Plaintiff's counsel stated that he could not certify to the Court that this matter was moot because Defendant had not yet provided any information indicating who was paid, the amounts paid to each person, and the amounts' underlying calculations. (*Id.*) The parties' discussion then moved to Schenck's calculations as presented in Schenck's spreadsheet. (*Id.* at ¶ 19.) Defendant's counsel confirmed that the same calculations presented in Schenck's spreadsheet, which related solely to Plaintiff, were the same as those performed for all current and former employees of Defendant. (*Id.*) Plaintiff's counsel stated his belief that the calculations were incorrect and tried to explain his understanding of Schenck's calculations and how they should have been performed; however, Defendant's counsel did not have Schenck's spreadsheet in front of him, so he was unable to follow Plaintiff's counsel's explanations. (*Id.*) During the call, Defendant's counsel stated that if, in fact, Defendant owed additional compensation, it would simply disburse additional checks (as it had already done). (*Id.* at ¶ 20.) In light of Plaintiff's counsel's concerns with Schenck's calculations, Defendant's counsel offered to arrange a meeting between Plaintiff's counsel and Schenck regarding the same, which was accepted. (*Id.* at ¶ 21.) The parties further agreed to stipulate to a temporary stay of proceedings to address the parties' disputes. (*Id.* at ¶ 22.) On July 6, 2017, the parties filed that stipulation. (ECF No. 14.)

On July 6, 2017, Plaintiff's counsel sent Defendant's counsel a letter via email (the "July 6, 2017 letter"), as well as Plaintiff's Second Set of Interrogatories and Requests for Production of Documents to Defendant ("Plaintiff's second set of discovery").[4] (Walcheske Decl. ¶ 23.) The July 6, 2017 letter, in part: (1) memorialized the parties' teleconference on June 28, 2017; (2) stated that Plaintiff could not "certify to the Court that this matter is moot" without information relating to Defendant's alleged payments made; (3) requested that Defendant comply with its discovery

---

[4] Plaintiff's second set of discovery requested information relating to the payments Defendant allegedly made to its current and former employees. (*Id.* at ¶ 27.)

obligations and properly respond to Plaintiff's first set of discovery because this matter "remains an open and ongoing dispute"; and (4) restated Plaintiff's belief that the "putative class' damages were miscalculated and underpaid." (*Id.* at ¶ 25.) Plaintiff requested that Defendant provide its responses to Plaintiff's first set of discovery by July 17, 2017. (*Id.*)

On July 7, 2017 and in response to the July 6, 2017 letter, Defendant's counsel emailed Plaintiff's counsel implying Defendant would not comply with its discovery obligations in light of the stay of proceedings, but would arrange a meeting with Schenck. (*Id.* at ¶ 24.) In response, Plaintiff's counsel emailed Defendant's counsel stating his expectation that Defendant will comply with discovery because "the payments [Defendant] made did not sufficiently compensate all putative class members … Accordingly, this matter is still very much in dispute, leaving no basis for continuing to not provide me with the information." (*Id.*) Counsel additionally stated, in part: "Unless a judgment is entered or a[n] all-encompassing settlement is reached, we will continue litigating on behalf of our client and the putative class." (*Id.*)

In response and on July 7, 2017, Defendant's counsel emailed Plaintiff's counsel stating, in part, "Do not expect supplemental answers by the 17th," because "provid[ing] information about sums already paid to people you do not represent undoes much of what the stipulation accomplishes and is counter-productive." (*Id.*)

Subsequently and on July 7, 2017, Plaintiff's counsel emailed Defendant's counsel stating an agreement to hold Defendant's duty to respond to Plaintiff's first set of discovery in abeyance pending the outcome of his (Plaintiff's counsel's) discussion with Schenck, but that Plaintiff expected responses to Plaintiff's second set of discovery regardless of that discussion because:

> Even in the event the calculations are correct…I cannot assert to the Court that the claims of my client[] and the putative class are moot when I have zero information to base that on with the exception of [Defendant's] statements that they were paid all outstanding amounts.

> That would be a complete and utter failure to do my job and we would also be asking the Court to neglect its duty in a class action situation to protect the interests of the class. I'm not interested in doing either.
>
> While I am aware I do not personally represent any of the putative class members, this is a class action. The identities of those individuals, a calculation of what they were owed, and the amounts they received is necessary to protect the putative class.

(*Id.*)

On July 13, 2017, Plaintiff sent Defendant Plaintiff's Answers to Defendant's [Second Set] of Interrogatories and Requests to Product Documents. (Temeyer Decl. ¶ 15.) In response to Defendant's Interrogatory No. 1, which requested information concerning Plaintiff's costs, Plaintiff provided the requested information, but cautioned Defendant: "Plaintiff reserves the right to amend this response to reflect additional costs, as incurred. Further, by answering this Interrogatory, Plaintiff has not and does not agree to accept reimbursement for costs in the amounts stated herein as a form of settlement of his claims against Defendant." (*Id.* at ¶ 16.) Similarly, in response to Defendant's Interrogatory No. 2, which requested information concerning Plaintiff's attorneys' fees, Plaintiff provided the requested information, but cautioned:

> Because litigation in this matter is ongoing, Plaintiff reserves the right to amend this response to reflect the additional attorneys' fees he continues to incur. Further, by answering this Interrogatory, Plaintiff has not and does not agree to accept reimbursement of his attorneys' fees in the amount stated herein as a form of settlement of his claims against Defendant.

(*Id.*)

On July 20, 2017, Plaintiff's counsel conferred by telephone with Defendant's counsel and Amy Bradley of Schenck. (Walcheske Decl. ¶ 28.) Prior thereto, Plaintiff's counsel emailed a copy of Schenck's spreadsheet to Defendant's counsel and Ms. Bradley to help facilitate their discussion. (*Id.* at ¶¶ 29-30.) During the call, Ms. Bradley confirmed Plaintiff's understanding of Schenck's

method of calculating Plaintiff's and, by extension, the putative collective's "regular rates" of pay for purposes of determining overtime compensation. (*Id.* at ¶ 31.) During the call, Plaintiff's counsel indicated that he performed his calculations differently and that they resulted in different amounts.[5] (*Id.* at ¶ 32.) The parties ended the conversation with Plaintiff's counsel stating that he would review his calculations and follow-up with Defendant's counsel. (*Id.*)

On July 25, 2017, Plaintiff's counsel sent Defendant's counsel a letter via email ("the July 25, 2017 letter"). (*Id.* at ¶ 35.) The July 25, 2017 letter, in part: (1) summarized the parties' teleconference on July 20, 2017; (2) stated Plaintiff's belief that Defendant's overtime calculations were incorrect; (3) stated Plaintiff's willingness to work with Defendant to resolve the dispute over the amount owed "through the proper channels," *i.e.,* assuming agreement over Plaintiff's calculations, "a settlement agreement, stipulating to certification for the purposes of settlement, obtaining preliminary approval from the Court, distribution of notices, and final approval from the Court, including a fee petition hearing"; and, in the alternative (4) stated Plaintiff's expectation that Defendant would comply with its discovery obligations by responding to Plaintiff's first and second sets of discovery by August 7, 2017. (*See id.*) Defendant did not respond to the July 25, 2017 letter. (*Id.* at ¶ 36.)

On August 4, 2017, and despite Plaintiff telling Defendant that this litigation was ongoing and that, accordingly, he did not want and would not accept reimbursement of his attorneys' fees and costs from Defendant, Plaintiff's counsel received a check from Defendant and made payable to Plaintiff's counsel in the amount of $13,333.35. (*Id.* at ¶¶ 37-38.) Accompanying the check was a letter from Defendant's counsel dated August 3, 2017 stating, in part: "This check represents payment of the costs and attorneys' fees incurred in advancing Mr. Fast's wage claim against Cash Depot." (*Id.*)

---

[5] Because of Defendant's stated intention to continue interfering with Plaintiff's rights, as well as those of the putative collective, and circumventing proper procedure by simply sending out more checks to Plaintiff and the putative collective, Plaintiff's counsel did not elaborate on his calculations during this call. (*Id.* at ¶ 33.)

Plaintiff's counsel has not deposited, or otherwise indicated any acceptance of Defendant's check. (*Id.* at ¶ 39.)

Additionally, on August 4, 2017, Defendant filed its Motion to Lift the Temporary Stay of Proceedings, (ECF No. 16), Motion to Dismiss on Mootness Grounds, (ECF No. 17), and Motion for Summary Judgment. (ECF No. 22.)

## ARGUMENT

**I.      THE COURT SHOULD DENY DEFENDANT'S MOTIONS BECAUSE DEFENDANT'S UNACCEPTED PAYMENT CANNOT MOOT PLAINTIFF'S CLAIMS, PLAINTIFF HAS A CONCRETE INTEREST IN THE OUTCOME OF THIS CASE, AND A LIVE CONTROVERSY EXISTS AS TO THE ADEQUACY OF THE PAYMENTS DEFENDANT HAS MADE**

A case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307, 132 S. Ct. 2277, 2287, 183 L. Ed. 2d 281 (2012); *see also Church of Scientology of California v. United States*, 506 U.S. 9, 12, 113 S. Ct. 447, 449, 121 L. Ed. 2d 313 (1992) ("if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed"); *Holstein v. City of Chicago,* 29 F.3d 1145, 1147 (7th Cir. 1994) ("A case becomes moot when the dispute between the parties no longer rages, or when one of the parties loses his personal interest in the outcome of the suit.") "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172, 133 S. Ct. 1017, 1023, 185 L. Ed. 2d 1 (2013).

### A.      This Court Should Deny Defendant's Motion To Dismiss On Mootness Grounds Because Defendant's Unaccepted Payment To Plaintiff Cannot Moot His Case

On or about June 13, 2017, Plaintiff's counsel received a check from Defendant made payable to Plaintiff in the amount of $338.98. (Temeyer Decl., ¶ 10.) Accompanying the check was a letter from Defendant's counsel stating, in part: "I have enclosed my client's draft in the amount of $338.98,

which represents the full amount your client would be owed in the event he received everything he claims in his complaint…and includes all statutory damages as well as the allegedly unpaid compensation he claims." (*Id.* at ¶¶ 10-11.). On June 21, 2017, Plaintiff received Defendant's Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents. (Walcheske Decl. ¶ 6.) Therein, Defendant disclosed that it provided additional compensation for monies "owed [to] employees (both former and current)…in an amount less than $22,000." (*Id.* at ¶ 7.) On August 4, 2017, Plaintiff's counsel received a check made payable to it from Defendant in the amount of $13,333.35, despite Plaintiff warning in his discovery responses that this litigation was ongoing, that Plaintiff reserved the right to amend his stated attorneys' fees and costs, and that Plaintiff would not accept payment of his attorneys' fees and costs because of this matter's ongoing nature. (*Id.* at ¶ 37.)

Neither Plaintiff nor Plaintiff's counsel, solicited, had notice of, cashed, deposited, or otherwise indicated any manner of acceptance of Defendant's payments. (*See id.* at ¶¶ 4-5, 39.) Despite these circumstances, Defendant asserts that this matter is moot because it provided "payment of everything the Plaintiff is entitled to." (Defendant's Brief Supporting Motion to Dismiss ("Def. Br."), ECF No. 18, p. 6.) Defendant's argument has been repeatedly rejected by the United States Supreme Court and the Seventh Circuit.

In 2016, the United States Supreme Court adopted Justice Kagan's dissenting opinion in *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 133 S. Ct. 1523 (2013), that "an unaccepted offer of judgment cannot moot a case." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670, 193 L Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016). As adopted by the Court:

> When a plaintiff rejects such an offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer— like any unaccepted offer—is a legal nullity, with no operative effect.

As every first-year law student learns, the recipient's rejection of an offer leaves the matter as if no offer had ever been made.

*Id.* at 670 (internal citations omitted). Thus, absent acceptance, Defendant's mere act of sending checks to Plaintiff is a legal nullity. *See id.* "In short, with no settlement offer still operative, the parties remained adverse; both retained the same stake in the litigation they had at the outset." *Id.* at 670-71.

Less than two (2) months before Defendant filed its Motion to Dismiss on Mootness Grounds, the Seventh Circuit addressed a factual scenario in *Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541 (7th Cir. 2017) analogous to the circumstances presented here. In that case and before Fulton Dental, LLC ("Fulton") filed a motion for conditional certification, Bisco, Inc. ("Bisco") moved to deposit $3,600.00 with the court, which it claimed represented the maximum possible damages Fulton could recover, as well as $595.00 for Fulton's fees and costs, while also agreeing to have an injunction entered against it. *See id.* at 543. Based on these payments and its agreement to injunctive relief, "Bisco argued that the deposit had made Fulton's claim moot." *Id.* Fulton did not accept, but rather objected to, Defendant's deposit. *See id.* As summarized by the Seventh Circuit, "[i]n essence, Bisco is arguing that it has forced a settlement that moots the case." *Id.*

However, the Seventh Circuit noted that "[m]ootness, plainly, is not the correct legal concept for the course of events that took place here" because Bisco was "instead talking about something more like accord and satisfaction or payment, both affirmative defenses recognized by the Federal Rule of Civil Procedure 8(c)(1)." *Id.* at 544.[6] Because Fulton did not accept Bisco's attempt at forced

---

[6] *See also, Chapman v. First Index, Inc.*, 796 F. 3d 783, 787 (7th Cir. 2015) ("a defendant's proof that the plaintiff has *accepted* full compensation ('accord and satisfaction' in the language of Rule 8(c)(1)) is an affirmative defense rather than a jurisdictional bar") (emphasis in original); *Wendell H. Stone, Inc. v. Metal Partners Rebar, LLC*, 318 F.R.D. 343, 347 (N.D. Ill. 2016) ("[T]he only possible time at which Stone's claims could become moot would be after Metal Partners has made the deposit and the Court has entered judgment in Stone's favor. This is supported by implication in *Campbell-Ewald*, in which the Court indicated it need not 'decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim … *and the court then enters judgment for the plaintiff in that amount.*' It is only both of these actions, together, that conceivably might result in Stone's claims becoming moot.") (emphasis in original).

relief, the Seventh Circuit found that "all that exists is an unaccepted contract offer, and as the Supreme Court recognized, an unaccepted offer is not binding on the offeree," *id.* at 545, and that, "[n]othing forces [Fulton] to accept Bisco's valuation of…[its] case." *Id.* Thus, the Seventh Circuit concluded that "an unaccepted offer to settle a case, accompanied by a payment intended to provide full compensation," *id.* at 547, has no binding effect. *See id.*

Through his Complaint, the facts in *Fulton Dental, LLC v. Bisco, Inc.* are very similar to the facts of this case. Here, Defendant attempted to force a settlement upon Plaintiff and then claimed mootness. However, Plaintiff did not cash, deposit, or otherwise convey acceptance of Defendant's unsolicited payments. Accordingly, Defendant's mere act of disbursing checks, without any acceptance thereof, does not and cannot moot Plaintiff's claims. Indeed, as held by the United States Supreme Court and the Seventh Circuit, Defendant's attempt at forcing a settlement upon Plaintiff is a legal nullity and has no effect. *See Campbell-Ewald Co.*, 136 S. Ct. at 670; *Fulton Dental, Inc.*, 860 F.3d at 547; *Webster v. Bayview Loan Servicing, LLC*, 618 F. App'x 864, 866 (7th Cir. 2015) ("A defendant's tender of full relief does not moot the litigation."). Thus, this Court should deny Defendant's Motion to Dismiss on Mootness Grounds.

### B. This Court Should Deny Defendant's Motion To Dismiss On Mootness Grounds Because Plaintiff Has A Concrete Interest In The Outcome Of This Case

Through his Complaint, Plaintiff requested eight separate forms of relief: (1) conditional certification of the collective; (2) appointment of Walcheske & Luzi, LLC as collective counsel; (3) declaratory relief; (4) remuneration for all unpaid wages, including overtime wages, owed to Plaintiff and the putative collective; (5) liquidated damages pursuant to the FLSA in an amount equal and in addition to the amount of wages, including overtime wages, owed to Plaintiff and the putative collective; (6) reimbursement for attorneys' fees and costs; (7) pre-judgment and post-judgment interest; and (8) any other relief the Court deemed just and equitable. (ECF No. 1.)

Defendant filed its Motion to Dismiss on Mootness Grounds subsequent to disbursing checks in the amounts purportedly due to Plaintiff and the putative class, as well as incomplete[7] payment of attorneys' fees and costs. (*See* Def. Br., ECF No. 18, p. 2.) Even assuming, *arguendo,* that Defendant correctly calculated the wages owed to Plaintiff and the putative collective, and that its payment to Plaintiff's counsel had any legal effect, Plaintiff nonetheless still seeks and has not yet obtained: (1) conditional certification of a collective; (2) appointment of collective counsel; (3) declaratory relief; (4) liquidated damages for the putative collective; (5) full reimbursement of attorneys' fees and costs; (6) pre-judgment and post-judgment interest; and/or (7) judgment against Defendant.

As stated by the United States Supreme Court, "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox*, 567 U.S. at 307. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin*, 568 U.S. at 172.

As recently noted by the Seventh Circuit in *Chapman v. First Index, Inc.*, "[m]any other decisions say the same thing." 796 F.3d at 786. Based on this standard, the Seventh Circuit determined that in cases where a defendant offers or provides a plaintiff with full monetary relief,[8] the plaintiff's case is not moot if he additionally sought other relief. *See id.* ("The district court could award damages and enter an injunction. Chapman began this suit seeking those remedies; he does not have them yet; the court could provide them.").

Here, there can be no dispute that Defendant has solely offered what it believes to be Plaintiff's and the putative collective's monetary wages owed, as well as Plaintiff's attorneys' fees

---

[7] Even assuming, *arguendo*, that Defendant's unsolicited and unaccepted check to Plaintiff's counsel satisfied Plaintiff's attorneys' fees and costs as of that date, Defendant subsequently caused Plaintiff to incur additional and extensive attorneys' fees in connection with having to respond to Defendant's Motions, for which Defendant has not provided any reimbursement. Accordingly, even if Plaintiff had accepted Defendant's payment of attorneys' fees and costs, that payment would be insufficient.

[8] Plaintiff does not concede that Defendant has provided full monetary relief in this case.

14

and costs as of a particular date. (*See* Def. Br., ECF No. 18, p. 1 (stating, "Fast's claims are moot; first, because after suit Cash Depot paid him in full and second, because Cash Depot fully paid all potential class members as well.")) However, this, at best, comprises two of the eight forms of relief Plaintiff requested in his Complaint. As a result, *even if* Plaintiff had accepted Defendant's payments (which he has not), additional monetary and non-monetary remedies remain that this Court can provide to Plaintiff, and thus his claims are not moot. *See Smith v. Greystone Alliance*, *LLC*, 772 F.3d 448, 450 (7th Cir. 2014) ("[A] defendant cannot have the suit dismissed by making an offer limited to what it concedes the plaintiff is entitled to receive, even if the defendant happens to be right about its view of the plaintiff's entitlement"); *see also Knox*, 567 U.S. at 307; *Chafin*, 568 U.S. at 172; *Chapman,* 796 F.3d at 786.

Indeed, "a jurisdictional dismissal is proper only if the defendant offers *more* that the plaintiff's demand. If the plaintiff asks for the moon, only offering the moon extinguishes the controversy. *Smith*, 772 F.3d at 450 (7th Cir. 2014) (emphasis added); *see also Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1539 (8th Cir. 1996) ("Judgment should be entered against a putative class representative on a defendant's offer of payment only where class certification has been properly denied and the offer satisfies the representative's entire demand for injuries and costs of the suit").

For such reasons, this Court should deny Defendant's Motion to Dismiss on Mootness Grounds.

### C.     This Court Should Deny Defendant's Motion To Dismiss On Mootness Grounds Because A Live Controversy Exists As To The Adequacy Of Defendant's Payments Made

Defendant, in its Motion to Dismiss on Mootness Grounds, acknowledges that Plaintiff disputes the monetary amount(s) in controversy – specifically, that Plaintiff does not agree with Defendant's method of calculation and that additional monetary wage compensation is owed to him

and the putative collective. (*See, e.g.,* Def. Br., ECF No. 18, p. 3 ("[Plaintiff's counsel] indicated that his calculations of overtime losses differed from Schenck's and he believed that despite Cash Depot's efforts it had still underpaid his client.")) Despite this bona fide legal dispute, it can be deduced that Defendant filed its Motion to avoid working with Plaintiff to fully, finally, and properly resolve this matter. (*See id.* at pp. 3-4 (noting that Plaintiff's resolution "proposal was unacceptable and thus this motion comes for dismissal under Federal Rule of Civil Procedure 12(b)(1)."))

The parties' dispute regarding the adequacy and totality of Defendant's monetary payments is a justiciable controversy requiring a decision on the merits. As such, mootness is inappropriate and inapplicable. *See Genesis Healthcare Corp.*, 569 U.S. at 66 ("Unlike claims for injunctive relief challenging ongoing conduct, a claim for damages cannot evade review; it remains live until it is settled, judicially resolved, or barred by a statute of limitations. Nor can a defendant's attempt to obtain settlement insulate such a claim for review"); *see also Smith*, 772 F.3d at 449-50 ("[I]f A demands $200,000, and B offers $110,000, there is a justiciable controversy even if B insists that A's legal entitlement is less than the offer. To know whether A's entitlement exceeds $110,000, the court would have to decide the merits.")

Although not of primary precedential value, the District of Massachusetts' decision in *Bais Yaakov of Spring Valley v. ACT, Inc.,* 186 F. Supp. 3d 70 (D. Mass. 2016), is instructive and persuasive given its factual similarities to this matter and the congruity of its decision with applicable United States Supreme Court and Seventh Circuit precedent. In *Bais Yaakov of Spring Valley v. ACT, Inc.*, the "Defendant sent to Plaintiff's counsel, by overnight delivery, a certified check for $4,800. In a letter accompanying the payment, Defendant explained that this amount represented what… [it] determined was the maximum amount Plaintiff could recover on the merits of its claims." *Id.* at 75. Subsequently, the "Defendant moved to dismiss for lack of subject matter jurisdiction, on the ground

that the case is now moot because Defendant has unconditionally tendered full satisfaction of Plaintiff's claims." *Id.* However, the plaintiff contended that the amount tendered was not the maximum amount he could recover. *See id.* at 77. Based on the plaintiff's contention, the court denied the defendant's motion to dismiss, explaining:

> [W]hen the measure of damages is disputed, the mootness determination is not the proper place to settle the issue. Thus, because the proper measure of damages for Plaintiff's claims remains in dispute, and Defendant has tendered less than the amount to which Plaintiff claims entitlement, the tender does not satisfy Plaintiff's claims. There remains a live controversy over the measure of damages, and Plaintiff's…claims are not moot.

*Id.*

The same holds true here. The record before this Court, including Defendant's Brief Supporting Motion to Dismiss, demonstrates that Plaintiff repeatedly told Defendant that it did not agree with its (and, technically, Schenck's) method of calculating Plaintiff's and the putative collective's wages owed, that Defendant likely underpaid Plaintiff and the putative collective, and that, as a result, a live, ongoing dispute remained. (*See, e.g.,* Walcheske Decl. ¶ 35; Def. Br. ECF No. 18, p. 3.) Further, as a result of Defendant's continual refusals to provide Plaintiff with any information regarding the payments it allegedly made to the putative class, Plaintiff's counsel is unable to verify whether those alleged payments even amount to their respective unpaid wages. (*See, e.g.,* Walcheske Decl. ¶ 24.)

In this case, the disputed amount of wages owed is the result of on-call premiums and non-discretionary bonuses Defendant paid to Plaintiff and the putative collective, but admittedly and unlawfully did not include in these individuals' regular rates of pay when determining and calculating the amount of compensation, including overtime, owed to them. (*See* Bradley Decl., ECF No. 20, ¶¶ 9-10.)

17

With respect to the on-call premium, Defendant "paid an on-call premium of $75 per week to its field service technicians for each week the technician was on-call." (*Id.* at ¶ 9.) Defendant defined its "workweek as Sunday through Saturday and its on-call week as Monday through Sunday." (*Id.* at ¶ 10.) As a result, "the on-call premium paid by Cash Depot expanded over two workweeks." (*Id.*) In practice, this meant that $64.29 of the $75.00 on-call premium was allocable to one workweek and the remaining $10.71 was attributable to the following workweek. (*See id.* at ¶ 14.)

With respect to the non-discretionary bonus, "Cash Depot failed to pay overtime compensation on a non-discretionary bonus paid to Mr. Fast in August 2015," in connection with its "bonus program known as its 'Road to 10 Million Bonus Program.'" (*Id.* at ¶ 18.) The amount of the bonus was $700.00. (*Id.*)

29 U.S.C. § 207(a)(1) states, in part: "no employer shall employ any of his employees… for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the *regular rate* at which he is employed." (emphasis added). An employee's "regular rate" is determined "by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109; *see also Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S. Ct. 1242, 1245, 89 L. Ed. 1705 (1945) (stating that the regular rate "by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments."); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 673 (7th Cir. 2010).

Included in an employee's "total remuneration for employment" are non-discretionary payments and bonuses. 29 C.F.R. § 778.110. Thus, an employee's "total remuneration for

employment" must first be determined before that employee's "regular rate" can be properly and legally calculated. Only then can an employee's overtime rate of pay and total compensation for that particular workweek be determined.

Indeed, federal regulations provide an example of how to properly determine the correct and legal "regular rate" of pay for Plaintiff and the putative collective in this case:

> Hourly rate and bonus. If the employee receives, in addition to the earnings computed at the $12 hourly rate, a production bonus of $46 for the week, the regular hourly rate of pay is $13 an hour (46 hours at $12 yields $552; the addition of the $46 bonus makes a total of $598; this total divided by 46 hours yields a regular rate of $13). The employee is then entitled to be paid a total wage of $637 for 46 hours (46 hours at $13 plus 6 hours at $6.50, or 40 hours at $13 plus 6 hours at $19.50).

*Id.*

Here, the on-call premiums Defendant pays to Plaintiff and the putative collective are legally considered non-discretionary "bonuses." Thus, these amounts must be added to the hourly compensation earned by Plaintiff and the putative collective during any given workweek to determine the "total remuneration" for the workweek, such that the "regular rate" and corresponding overtime rate of pay can be correctly and legally calculated. *See id.* Accordingly, determining the amount of wages Defendant owes to Plaintiff and the putative collective requires correctly determining the regular rates and corresponding overtime rates of pay for Plaintiff and the putative collective and then comparing the sum of those calculations to the amounts Defendant actually and already paid to such individuals.

However, it is Plaintiff's contention that when determining what monetary amounts Defendant owed Plaintiff and the putative collective, Defendant did not correctly determine Plaintiff's regular rate and corresponding overtime rate by using the method set forth above. Instead, Defendant determined the monetary amounts Defendant owed to Plaintiff and the putative collective using solely

the number of hours Plaintiff worked in a workweek and the monetary amount of the on-call shift

premium. (*See* Bradley Decl., ECF No. 20, ¶ 16.) As explained by Schenck:

> [W]e took the on-call premium and divided it by the number of hours
> worked in such workweek to determine the additional hourly rate for
> that workweek. For example, for the workweek of August 2, 2015
> through August 8, 2015, Mr. Fast worked 57.50 hours; he earned
> $64.29 in on-call premiums for that workweek (i.e., 6/7 of the $75.00
> on-call premium). We took the $64.29 and divided by 57.50 hours,
> arriving at an hourly rate of $1.1181 for that workweek. We then took
> that hourly rate and divided it by two (2) to calculate the additional
> overtime premium owed for the hours in excess of forty (40) hours
> (i.e., $1.1181 / 2 = $0.5591 x 17.50 hours = $9.78); this calculation
> factors in the fact that Cash Depot already paid the hourly rate (one
> times) for the overtime hours and hence only owed the 'half times'
> portion of the overtime compensation. This method was used for each
> workweek during which Mr. Fast earned any on-call premium.

(*Id.*)

To demonstrate the difference between the legally "correct" method of calculating an

employee's regular rate as set forth in 29 C.F.R. § 778.110 and Defendant's method of calculation,

the following is an illustration of the two methods using the example provided in 29 C.F.R. § 778.110:

> In accordance with 29 C.F.R. § 778.110:
>
> $12.00 per hour x 46 hours = $552.00
> $552.00 + $46.00 bonus = $598.00 total remuneration
> $598.00 / 46 hours = $13.00 regular rate
> $13.00 x 1.5 = $19.50 overtime rate
> ($13.00 x 40) + ($19.50 x 6) = $637.00 total wages owed
>
> As conducted by Defendant:
>
> $46.00 bonus / 46 hours = $1.00 additional hourly rate
> $1.00 / 2 = $0.50 additional overtime premium owed
> $0.50 x 6 overtime hours = $3.00 owed in addition to wages paid

(*Compare* 29 C.F.R. § 778.110 *with* Bradley Decl., ECF No. 20, ¶ 16.)

Plaintiff, who has performed his calculations in conformance with 29 C.F.R. § 778.110 and,

as admitted by Defendant and made clear by the record, disputes Defendant's method of calculation.

20

That dispute requires resolution on the merits from this Court, which the Court cannot perform if it dismisses this case on mootness grounds as requested by Defendant. *See Genesis Healthcare Corp.*, 569 U.S. at 66; *see also Smith*, 772 F.3d at 449-50. Accordingly, the relief Defendant requested (mootness) is inappropriate and this Court should deny Defendant's Motion to Dismiss on Mootness Grounds.

## II.  THIS COURT SHOULD DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE RELIEF IT SEEKS IS INAPPROPRIATE

Through its Motion for Summary Judgment, Defendant asks that in the event this Court denies Defendant's Motion to Dismiss on Mootness Grounds, it should enter an order of judgment finding that the Defendant owes Plaintiff the sum of $386.76, plus his costs and reasonable attorneys' fees. (ECF No. 22.) Defendant's requested relief is legally inappropriate for multiple reasons. Accordingly, this Court should deny Defendant's Motion for Summary Judgment.

First, Defendant's Motion for Summary Judgment fails for the same reasons as its Motion to Dismiss on Mootness Grounds. Indeed, Defendant bases both motions on the same argument: this Court should dismiss Plaintiff's claims because Defendant "paid him in full." (Def. Br., ECF No. 18, p. 1.) However, "a defendant cannot have the suit dismissed by making an offer limited to what it concedes the plaintiff is entitled to receive, even if the defendant happens to be right about its view of the plaintiff's entitlement." *Smith*, 772 F.3d at 450.

Second, Defendant's Motion for Summary Judgment is inappropriate because it seeks "judgment" relating solely to Plaintiff's damages and does not give any consideration to the damages of the putative collective on whose behalf Plaintiff filed his Complaint. This is of particular import given the live dispute over the adequacy of the payments Defendant made not only to Plaintiff, but also the putative collective, including but not limited to liquidated damages. Given the ongoing nature of that dispute, Plaintiff's stated intention of moving for conditional certification, and Defendant's

ongoing efforts to impede Plaintiff's ability to obtain conditional certification, Defendant's Motion for Summary Judgment appears to be nothing more than a thinly-veiled attempt to "pick-off" the named Plaintiff. *See Fulton Dental, LLC*, 860 F.3d at 546.

Third, Defendant's Motion for Summary Judgment is an inappropriate legal procedure for the relief it seeks. By moving for summary judgment, Defendant inherently asserts to this Court that it is entitled to judgment as a matter of law against Plaintiff. *See* FED. R. CIV. P. 56(a). However, Defendant's Motion does not specify on what grounds it seeks judgment against Plaintiff or what the outcome of that judgment should be. Indeed, based on the totality of Defendant's Motions, it appears that Defendant may actually be seeking summary judgment against itself, particularly in light of its admissions of unlawful compensation, (*see* Bradley Decl., ECF No. 20, ¶¶ 12, 17-19, 24), and its request that the Court find that Defendant "owes the Plaintiff, Timothy J. Fast, the sum of $380.76, plus his costs and reasonable attorneys' fees." (ECF No. 22.) However, such a result is not the purpose of FED. R. CIV. P. 56.

Fourth, the question of Plaintiff's damages is not appropriately before this Court. Judgment has not (yet) been entered in this matter against Defendant because, as stated herein, a live dispute exists over the adequacy of Defendant's payments, particularly as they relate to the putative collective. Plaintiff's damages and the amounts at stake are a necessary byproduct of that dispute and cannot be determined until that dispute has been settled or judgment is entered on that dispute by this Court. However, Defendant's Summary Judgment Motion does not ask this Court to decide that dispute or otherwise determine as a matter of law the correct method of calculating Plaintiff's and the putative collective's regular and overtime rates of pay, such that the question of damages can even be reached.

22

For these reasons, this Court should deny Defendant's Motion for Summary Judgment, wherein Defendant requests an order of judgment finding that the Defendant owes Plaintiff the sum of $386.76, plus his costs and reasonable attorneys' fees. (ECF No. 22.)

### III. THIS COURT SHOULD DENY DEFENDANT'S MOTION TO LIFT THE TEMPORARY STAY OF PROCEEDINGS IN LIGHT OF ITS ORDER ENTERED AUGUST 29, 2017

On July 6, 2017, the parties filed their Stipulation to stay proceedings in this case. (ECF No. 14.) On July 7, 2017, the Court entered an Order staying all proceedings and ordered Plaintiff's counsel to advise the Court of the status of this matter within sixty (60) days, or September 5, 2017. (ECF No. 15.)

On August 4, 2017, Defendant filed, in part, its Motion to Lift the Temporary Stay of Proceedings. (ECF No. 16.). On August 22, 2017 and in partial response thereto, Plaintiff filed His Civil L.R. 7(h) Expedited Non-Dispositive Motion For Continuation of Stay and to Limit Putative Class Communications ("Plaintiff's 7(h) Motion"). (ECF No. 28.) On August 29, 2017, this Court entered an Order in pertinent part granting Plaintiff's 7h Motion as related to the continuation of the stay. (ECF No. 33.) Therein, the Court ordered that continuation "of the stay until Defendant's motions have been resolved." (*Id.*) For this reason, the Court should deny Defendant's Motion to Lift the Temporary Stay of Proceedings.

### <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should deny Defendant's Motion to Dismiss on Mootness Grounds, Motion for Summary Judgment, and Motion to Lift the Temporary Stay of Proceedings.

Dated this 1st day of September, 2017.

                              WALCHESKE & LUZI, LLC
                              Counsel for Plaintiff


                              **s/ _James A. Walcheske_**
                              James A. Walcheske, State Bar No. 1065635
                              Scott S. Luzi, State Bar No. 1067405
                              Jesse R. Dill, State Bar No. 1061704