UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

TIMOTHY J. FAST
on behalf of himself and all
others similarly situated,

      Plaintiff,

v.                                            Case No. 16-CV-1637

CASH DEPOT, LTD.,

      Defendant.

---

## DECLARATION OF JAMES A. WALCHESKE

---

Pursuant to 28 U.S.C. § 1746, I hereby declare the following to be true under penalty of perjury:

1. I am counsel for Plaintiff in the above-captioned matter.

2. Attorney Kelly L. Temeyer of Walcheske & Luzi, LLC has assisted me with the litigation of this case.

3. On June 14, 2017, Attorney Temeyer called me and asked if I had received or knew about a letter from Defendant's counsel that had been mailed the prior week. I told her I had not seen anything, but to check my mail, which she did. Attorney Temeyer informed me that we received correspondence from Defendant's counsel containing: a check from Defendant made payable to Plaintiff; a letter stating, in part, that the check allegedly represented the full monetary amount Plaintiff could receive in his case; and discovery requests concerning our attorneys' fees and costs.

1

4. Prior to receiving Defendant's check made payable to Plaintiff, neither Defendant nor Defendant's counsel indicated to me that Defendant wanted to or would send a check to Plaintiff.

5. I remain in possession of Defendant's check made payable to Plaintiff. Plaintiff has not cashed or deposited the check. Neither I nor Plaintiff has ever indicated acceptance of Defendant's payment to Defendant or Defendant's counsel.

6. On June 21, 2017, I received Defendant's Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents via email ("Defendant's discovery responses").

7. Attached hereto as Exhibit A is a true and correct copy of Defendant's discovery responses (exhibits omitted).

8. In reviewing Defendant's discovery responses, I noted that Defendant failed and refused to provide any responsive information relating to the putative collective, which was necessary to support our anticipated motion for conditional certification. Defendant's discovery responses did so based on its objection that such information was "irrelevant, primarily due to the fact Cash Depot has paid its field service technicians all wages owed to them, including overtime." In other words, Defendant refused to provide us with highly relevant information necessary to Plaintiff's pursuit of claims on behalf of a collective based on its own, subjective determination that Plaintiff's claims were moot as a result of additional compensation it allegedly provided to Plaintiff and the putative collective.

9. Defendant's discovery responses, specifically its Response to Interrogatory No. 1, made clear that while it allegedly provided Plaintiff with liquidated damages, it did not do so for

2

Case 1:16-cv-01637-WCG   Filed 09/01/17   Page 2 of 7   Document 35

the putative collective. Rather, it provided "interest on any wages owed" to the putative class.

10. Attached as Exhibit B to Defendant's discovery responses was "a copy of the spreadsheet prepared by Schenck reflecting its calculation of wages due and owing to Mr. Fast."

11. Attached hereto as Exhibit B is a true and correct copy of "Exhibit B" to Defendant's discovery responses.

12. Prior to providing Defendant's discovery responses, Defendant made no indication that it had provided additional compensation to the putative collective or even that it was contemplating doing so. The parties had never even discussed possible damages and, to Plaintiff's knowledge, Defendant was denying liability in this matter.

13. Although Defendant's discovery responses stated that additional compensation was paid to Plaintiff and the putative collective, Defendant did not provide any proof thereof or details regarding that compensation, other than to state that the amount was "less than $22,000." Defendant did not identify the actual amount paid, the calculations underlying its payments, the identity of any individuals who received such payments, or even the number of individuals to whom Defendant provided such payments.

14. On June 23, 2017, I emailed Defendant's counsel requesting that the parties discuss "the status of this case," including a discussion of "who received the checks; what the checks represented; who performed the calculations underlying the check amounts; and whether [Defendant would] be willing to stipulate to stay this matter's deadlines pending our joint assessment of where this case currently stands in light of those checks." That meeting was later scheduled for June 28, 2017.

15. Attached hereto as Exhibit C is a true and correct copy of my June 23, 2017 email to Defendant's counsel.

16. Between June 23, 2017 and June 28, 2017, I reviewed the records and documents Defendant produced in discovery, including Defendant's Exhibit B. Based on my review, I determined that Schenck, S.C. ("Schenck") may not have correctly and legally determined the "regular rate" for Plaintiff and, by extension, all current and former employees of Defendant to whom Defendant provided additional compensation.

17. On June 28, 2017, I engaged in a teleconference with Attorney George Burnett, one of the attorneys for Defendant ("the June 28, 2017 teleconference").

18. During the June 28, 2017 teleconference, Attorney Burnett stated that Plaintiff's claims were mooted by Defendant's payments. In response, I told Attorney Burnett that I could not certify to the Court that this matter was moot because Defendant had not yet provided any information indicating who was paid, the amounts paid to each person, and the amounts' underlying calculations.

19. During the June 28, 2017 teleconference, Attorney Burnett and I discussed Schenck's calculations as summarized by Defendant's Exhibit B as produced by Defendant. When asked, Attorney Burnett confirmed that the same calculations presented in Defendant's Exhibit B, which related solely to Plaintiff, were the same as those performed for all current and former employees of Defendant. I told Attorney Burnett that I did not believe those calculations were correct and I tried explaining my understanding of how Schenck did its calculations and how they should have been conducted, but Attorney Burnett did not have Defendant's Exhibit B in front of him, so he was not able to follow my explanation.

20. During the June 28, 2017 teleconference, Attorney Burnett told me that if, in fact, Defendant owed additional compensation, it would simply disburse additional checks.

21. During the June 28, 2017 teleconference and in light of my stated disagreement with Schenck's calculations, Attorney Burnett offered to arrange a meeting between Schenck and I, which I accepted.

22. During the June 28, 2017 teleconference and because of Defendant's failure to provide any information necessary to support our anticipated motion for conditional certification, as well as its alleged payment of unknown amounts to unknown individuals, I asked Attorney Burnett if Defendant would stipulate to a stay of proceedings while these matters were addressed. He agreed.

23. On July 6, 2017, I emailed a letter to Defendant's counsel, as well as Plaintiff's Second Set of Interrogatories and Requests for Production of Documents to Defendant ("Plaintiff's second set of discovery").

24. Attached hereto as Exhibit D is a true and correct copy of my July 6, 2017 email, as well as the email correspondence between the parties in response and subsequent thereto.

25. Attached hereto as Exhibit E is a true and correct copy of my July 6, 2017 letter to Defendant's counsel.

26. Attached hereto as Exhibit F is a true and correct copy of Plaintiff's second set of discovery.

27. Plaintiff's second set of discovery requested information relating to the payments Defendant allegedly made to its current and former employees, as asserted in its discovery responses.

28. On July 20, 2017, I engaged in a teleconference with Attorney Jodi Arndt Labs, one of Defendant's attorney, and Amy Bradley from Schenck ("the July 20, 2017 teleconference").

29. Prior to the July 20, 2017 teleconference, I emailed a copy of Defendant's Exhibit B, as produced by Defendant, to Defendant's counsel to facilitate our discussion.

30. Attached hereto as Exhibit G is a true and correct copy of the email chain leading up to the July 20, 2017 teleconference, most relevantly containing my emails to Defendant's counsel forwarding a copy of Defendant's Exhibit B for purposes of facilitating our discussion.

31. During the July 20, 2017 teleconference, Ms. Bradley confirmed my understanding of Schenck's method of calculating Plaintiff's and, by extension, the putative collective's "regular rates" of pay for purposes of determining overtime compensation.

32. During the July 20, 2017 teleconference, I told Attorney Labs and Ms. Bradley that I had performed my own calculations, that I had done them differently than Schenck, and that they resulted in amounts different than those calculated by Schenck. After some brief discussion and in light of the difference between methods of calculation and their corresponding results, we ended the teleconference with my stating that I would review my calculations and follow-up with Attorney Labs.

33. During the July 20, 2017 teleconference and because of Attorney Burnett's statement to me during the June 28, 2017 teleconference that Defendant would simply disburse additional checks to Plaintiff and the putative collective if additional monies were due and owing, I did not share my method of calculation with Attorney Labs and Ms. Bradley.

34. Subsequent to the July 20, 2017 teleconference, I reviewed the calculations I had performed. Based on applicable statutory language and case law, I determined that my calculations were legally "correct" and that those performed by Schenck were legally "incorrect."

6

Case 1:16-cv-01637-WCG     Filed 09/01/17     Page 6 of 7     Document 35

35. As a follow-up to Attorney Labs, on July 25, 2017, I sent a letter to her via email. Attached hereto as Exhibit H are true and correct copies of that letter, as well as the email to which it was attached.

36. Defendant did not respond to my July 25, 2017 letter.

37. On August 4, 2017, I received correspondence from Defendant's counsel containing a check from Defendant made out to my firm in the amount of $13,333.35, as well as a letter stating, in part: "This check represents payment of the costs and attorneys' fees incurred in advancing Mr. Fast's wage claim against Cash Depot."

38. Attached hereto as Exhibit I are true and correct copies of the check received from Defendant and its accompanying letter from Defendant's counsel.

39. The check from Defendant to my firm remains in my possession. I have not deposited or otherwise ever indicated any measure of acceptance of Defendant's check.

Dated this 1st day of September, 2017.

                                                      *s/ James A. Walcheske*
                                                      James A. Walcheske