# Following-Up

 **James A. Walcheske** <jwalcheske@walche        Jul 25

to Jodi

Please see the attached, which follows-up on our discussion with Schenck last week and my review of the calculations I have done thus far.

Thanks.



**Brookfield** -- 15850 W. Bluemound Rd., Suite 304, Brookfield, WI 53005 -- (262) 780-1953
**Appleton** -- 4321 W. College Ave., Suite 200, Appleton, WI 54914 -- (920) 757-2440

www.walcheskeluzi.com

This e-mail, and any attachment to this e-mail, is intended only for the person to whom it is addressed and may contain information that is privileged, confidential, and exempt from disclosure.  Use, distribution, or copying by anyone else is prohibited.  If you receive this in error, please notify us promptly and then destroy this communication.



PDF    Ltr to Labs 7-25-1…



July 25, 2017

**VIA E-MAIL ONLY (jodi@lcojlaw.com)**

Jodi Arndt Labs, Esq.
Conway, Olejniczak & Jerry, S.C.
231 S. Adams Street
Green Bay, WI 54305

  **Re:**   <u>**Fast v. Cash Depot, Ltd.**</u>
      Case No. 16-CV-1637

Dear Attorney Labs:

Thank you again for coordinating the discussion between us and Amy Bradley from Schenck S.C. ("Schenck") this past Thursday, July 20th. It was extremely productive, provided necessary clarification, and will certainly assist the parties in resolving this matter.

To briefly recap our discussion, during the call the parties reviewed and discussed a document your client provided in discovery and marked as Exhibit B. We confirmed that Exhibit B was created by Schenck and reflected the calculations Schenck utilized to determine the amounts owed to Mr. Fast. It was further confirmed that the same manner of calculation set forth on Exhibit B and relating to Mr. Fast was also utilized for all other individuals to whom your client provided a check representing owed and unpaid compensation.

During the call, we confirmed my understanding of those calculations. While trying not to be overly technical, the calculations showed that for each relevant workweek, Schenck divided the applicable portion of the on-call "flat rate" by the number of hours worked in that workweek, divided that number in half, and multiplied the resulting number by the number of hours worked over forty in that workweek. As an example, on the first page of Exhibit B, "PayDay" 8/20/15, workweek 08/02/15 – 08/08/15, this meant dividing $64.29 by 57.50 to get 1.1181, which was then divided in half to get 0.5591, which was then multiplied by 17.50 to arrive at $9.78 for the "Additional Amount Due." This same calculation was used each workweek and all amounts were totaled. This amount was then paid via check to Mr. Fast.

During the call, I explained that I also performed calculations based on the information your client provided in discovery and that, with respect to each pay period, my total amount owed was at least (but not necessarily exactly) double the amount calculated by Schenck. You expressed your belief

www.walcheskeluzi.com  contact@walcheskeluzi.com

BROOKFIELD          APPLETON

15850 West Bluemound Road, Suite 304    4321 West College Avenue, Suite 200
Brookfield, Wisconsin 53005       Appleton, Wisconsin 54914
Phone: (262) 780-1953        Phone: (920) 757-2449
Fax: (262) 565-6469         Fax: (262) 565-6469

that Schenck's calculations were performed correctly, that you have calculated them in a similar manner in the past and in other cases, and such calculations were previously approved by the Department of Workforce Development. In light of the discrepancy between our calculations, I stated that I would review the calculations I had performed to determine what the cause could be.

Since our discussion on Thursday, I have had an opportunity to conduct that review and, to ensure I was not somehow missing something, applicable regulations and case law. Based on that review, I am of the belief that my calculations are accurate and that the discrepancy is the result of Schenck's calculation method.

Based on our discussions and your client's conduct to date, I am operating under the assumption that we would all like to resolve this matter as expeditiously as possible, which will require a meeting of the minds on the correct manner of calculating the amounts owed to all affected individuals in the putative class/collective. I am more than happy to have a discussion facilitating that understanding; however, I am not willing to have that discussion without a preliminary understanding of how the parties will conduct themselves going forward.

My concern derives from your client's previous action of cutting checks to Mr. Fast and all putative class/collective members without notice to or consultation with us first, as well as the implication from Attorney Burnett that your client would do the same in the event that additional amounts are owed. As I have tried to make clear, if we are going to resolve this matter on a class/collective-wide basis, we need to do it through the proper channels. This means a settlement agreement, stipulating to certification for purposes of settlement, obtaining preliminary approval from the Court, distribution of notices, and final approval from the Court, including a fee petition hearing.

Accordingly, here is my proposal: assuming your client agrees that it will not randomly disburse checks to the putative class/collective, but will work with us toward properly resolving this matter as outlined above, I will share my calculations that comport with applicable regulations and case law. At that time, I believe we can notify the Court of our status, such that the temporary stay can remain in place pending the resolution of this matter.

In the event your client continues to assert that it has fully compensated all putative class/collective members in light of the checks it recently disbursed, or if it is unwilling to agree to the preliminary terms outlined herein, then I will expect that your client will fully comply with Plaintiff's First and Second Sets of Interrogatories and Requests for Production of Documents in a timely fashion. I will also be moving for summary judgment on this issue using the Court's fast-track procedure.

Having previously stayed your client's compliance with Plaintiff's First Set of Interrogatories and Requests for Production of Documents pending the outcome of our discussion on July 20th, I expect your client will provide the information as outlined in my July 6, 2017 letter to Attorney Burnett by no later than August 7, 2017, the same date upon which (at least according to my calendar) your client's responses to Plaintiff's Second Set of Interrogatories and Requests for Production of Documents are also due.

If you have any questions, please do not hesitate to call or email me. In the event you believe my recitation of our discussion on July 20th is in error, please let me know immediately.

I understand you are out of the office this week; therefore, I ask that your client provide a response to this proposal by no later than the end of the day Tuesday, August 1, 2017. If I do not hear back by that date and time, I will assume that your client has rejected my proposal. All discovery will then be due to me by August 7th.


Sincerely,
**WALCHESKE & LUZI, LLC**

s/ ***James A. Walcheske***
James A. Walcheske
Attorney at Law
jwalcheske@walcheskeluzi.com

cc:  Mr. Timothy Fast