UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

TIMOTHY J. FAST,
on behalf of himself and all
others similarly situated,

        Plaintiff,

v.                                          Case No.: 16-CV-1637

CASH DEPOT, LTD.,

        Defendant.

---

## DEFENDANT CASH DEPOT'S REPLY BRIEF

---

## INTRODUCTION

Timothy Fast opposes Cash Depot's motions to dismiss his complaint on mootness grounds and for summary judgment on the issue of his claimed damages. Along the way, the Plaintiff claims that Cash Depot engaged in a "pattern of conduct interfering with and attempting to circumvent proper collective action procedure" but, despite this invective, Fast cites no such procedures. (R. 34:1). Indeed, Cash Depot has paid the Plaintiff everything he is entitled to and also fully paid putative class members and even other nonexempt employees who would not be members of the class. The amount at issue is so small compared to the legal and expert costs involved in defending against the Plaintiff's claim, this local business has chosen to accede to the Plaintiff's demands rather than contest them. Nonetheless, the Plaintiff's counsel does not relent. Purportedly on behalf of his client, he opposes further payments to his client and confesses to concealing the added amounts supposedly due so that Cash Depot cannot pay them. (R. 35:6). Professional and ethical obligations aside, this is the type of conduct that has led the Seventh

Circuit to call some class action litigation a "racket". In re Subway Footlong Sandwich Litigation, ___ F.3d ___, 2017 WL 3666635 (August 25, 2017).

## I. THE PLAINTIFF ERRS IN BASIC MATHEMATICS.

The Plaintiff's first mistake involves basic mathematics. According to the Plaintiff, the case is not moot, because Cash Depot's recent payment was inadequate. While he repeats that conclusion many times, he never proves it. The Plaintiff received records showing Cash Depot's payments to him. (Arndt Decl. ¶ 4). These revealed his regular wages, overtime wages, hours, bonus, and on-call pay weekly and by pay period, (Id., Ex. 1, 2), but he never calculates, much less discloses, what he claims is actually owing.

Instead, the Plaintiff illustrates Cash Depot's supposed error by utilizing a fictitious example from Department of Labor regulations. (R. 34:20). The regulation, 29 CFR 778.110, demonstrates how to calculate pay for employees receiving a mandatory bonus. Thus, the first calculation (reproduced verbatim in the footnote below) yields totals for (1) wages owed, (2) overtime and regular pay, and (3) regular and overtime pay rates. The calculation establishes Cash Depot owes $637 in total wages in this hypothetical example.[1]

In contrast, utilizing the same fictitious figures, the Plaintiff shows just $3 owed under Cash Depot's method, thus implying the Plaintiff was grossly underpaid. Yet, Cash Depot's calculation bears no resemblance to the Department's calculation, because it calculates something different: It measures the remaining overtime pay due *after subtracting Cash Depot's*

---

[1] **In accordance with 29 C. F. R. § 778.110:**
$12.00 per hour x 46 hours = $552.00
$552.00 + $46.00 bonus = $598.00 total remuneration
$598.00 / 46 hours = $13.00 regular rate
$13.00 x 1.5 = $19.50 overtime rate
($13.00 x 40) + ($19.50 x 6) = $637.00 total wages owed

**As conducted by Defendant:**
$46.00 bonus / 46 hours = $1.00 additional hourly rate
$1.00 / 2 = $0.50 additional overtime premium owed
$0.50 x 6 overtime hours = $3.00 owed in addition to wages paid

*previous overtime payments*. It is an abbreviated calculation (also reproduced in the footnote) designed to show additional money owed beyond overtime wages already paid. In other words, comparing these two examples demonstrates nothing meaningful, because they demonstrate different things.

Viewing the issue another way, Amy Bradley's declaration proves there is no difference regardless of the methodology employed. In paragraph 11, she samples one period, showing that, under the Department's methodology, Fast was owed $785.68 in total wages but paid $781.97. (Bradley Decl. ¶ 11). That yielded an underpayment of $3.71. By contrast, utilizing Schenck's methodology, which calculates just the additional overtime pay owed, the Plaintiff receives $3.72, with the discrepancy attributable to decimal rounding that favors Fast. (Id.).

In contrast, the Plaintiff never produced *evidence*, much less evidence from anyone familiar with calculating wages and overtime pay. Instead, the Plaintiff relied on his lawyer's flawed example. Demonstrating that Bradley's calculations were wrong should have been easy using actual data: calculate wages and overtime wages by the Department of Labor method, calculate them again by Cash Depot's method, and look for a difference. Although the Plaintiff possessed all pertinent wage information necessary to make the comparison since Cash Depot produced it in discovery months ago, he did not do that. Even after receiving Schenck's report, its spreadsheet demonstrating its calculations, and quizzing Schenck's wage specialist (who Cash Depot voluntarily produced to explain things to Plaintiff's counsel), the Plaintiff's position remained deceptively wrong.

The Plaintiff's error is simple to detect, for he failed to subtract the regular and overtime wages that Cash Depot had already actually paid. After all, the Plaintiff did not go unpaid; he received regular pay and almost all overtime pay; he simply claims that the overtime payment

3

Case 1:16-cv-01637-WCG   Filed 09/15/17   Page 3 of 16   Document 37

was not enough. Subtracting past payments under the Department of Labor method yields the same result as Schenck's method yields. (Id.). When previous payments are considered, no difference exists regardless of the method selected.

## II. THE CASE IS MOOT AND SHOULD BE DISMISSED.

The Plaintiff contends that even were he fully compensated, a case and controversy still remains because he requests other relief: class certification, his lawyer's appointment as class counsel, interest, declaratory relief that Cash Depot violated wage and hour laws, and more attorney's fees. None of this saves a moot case.

### A. Justiciability Generally.

As this Court explained in Freedom From Religion Foundation, Inc. v. City of Green Bay, 581 F. Supp. 2d 1019, 1022-3 (E.D. Wis. 2008) [citations omitted]:

> It is fundamental to the exercise of judicial power under Article III of the United States Constitution that "federal courts may not give opinions upon moot questions or abstract propositions." Article III of the Constitution limits a federal court's jurisdiction to "cases" or "controversies." The case or controversy requirement insures that the Federal Judiciary respects "the proper – and properly limited – role of the courts in a democratic society."
>
> \* \* \* \* \*
>
> This requirement insures that the federal judicial power is confined to a role consistent with a system of separated powers and limited to cases which are traditionally thought to be capable of resolution through the judicial process. Thus, federal courts have abjured appeals to their authority which would convert the judicial process into "no more than a vehicle for the vindication of the value interests of concerned bystanders." . . .
>
> \* \* \* \* \*
>
> The closely related doctrines of standing and mootness are based upon Article III's limitation of judicial power. "Standing doctrine addresses whether, at the inception of the litigation, the plaintiff had suffered a concrete injury that could be redressed by action of the court. Mootness addresses whether the plaintiff continues to have such a stake throughout the course of the litigation." The Supreme Court has described the doctrine of mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the

commencement of the litigation (standing) must continue throughout its existence (mootness)."

### B. Full Payment Makes Fast's Claim for Declaratory Relief Moot.

As to a declaratory judgment that the Defendant supposedly violated the FLSA, the Plaintiffs are entitled to compensatory damages if they are right, not a public declaration that Cash Depot was wrong. The case is no less moot simply because the Plaintiffs seek a judicial determination in the correctness of their position months after they have received full compensatory damages. This Court has already held that for declaratory relief (and its "functional equivalent" nominal damages), mootness principles require dismissal when the Plaintiff no longer has an injury:

> "The very determination that nominal damages are an appropriate remedy for a particular wrong implies a ruling that the wrong is worthy of vindication by an essentially declaratory judgment." Thus, for justiciability purposes, there is no reason to treat nominal and declaratory relief differently. Each is a different form of remedy available in cases where the court has Article III jurisdiction. But neither were intended to confer jurisdiction that did not otherwise exist. To conclude otherwise . . . would unreasonably expand federal court jurisdiction [because] if appending a claim for nominal damages were sufficient to create standing or to avoid mootness, litigants could manufacture Article III jurisdiction by the mere expedient of pleading. It is hard to conceive of a case in which a plaintiff would be unable to append a claim for nominal damages, and thus insulate the case from the possibility of mootness. Article III justiciability should not be so manipulable.

Id. at 1030. [citations and quotations omitted]. Cash Depot no longer employs Fast, so no future threat exists, and he seeks no injunctive relief, no doubt for that reason.

### C. Attorney's Fees Related to the Litigation do not Supply Justiciability.

As to attorney's fees, the Plaintiff's position is no stronger. The Supreme Court has repeatedly ruled, "An interest in attorney's fees is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 108, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998); *see also*

5

Diamond v. Charles, 476 U.S. 54, 70, 106 S. Ct. 1697, 90 L. Ed. 2d 48, 67 (1986). Moreover, the Plaintiff already received a substantial attorney fee. As they concede, they received a check for over $13,000 for fees and costs based upon cursory answers to interrogatories, which failed to reveal how they accumulated such a large bill by merely filing suit, participating in a Rule 16 conference, and serving a short set of interrogatories.

The claim that there is more now in accumulated fees fails not only because a claim for attorney's fees cannot supply Article III justiciability, Lewis v. Continental Bank Corp., 494 U.S. 472, 480, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990), but also because the Plaintiff's contention alone, without proof, fails to suffice. The Plaintiff makes no effort to substantiate the fact by affidavit or declaration, so it is a contention the Court cannot technically accept. Fed. R. Civ. P. 43(e). More importantly, if the Plaintiff has incurred more in attorney's fees, he should supply a fee agreement establishing that fees are actually owing and an accounting of the work done to earn them, much like the information sought in original discovery which the Plaintiff ignored. Fed. R. Civ. P. 26(e) also required the Plaintiff to supplement discovery, but he failed to do so, and Fed. R. Civ. P. 37(c)(1) bars its use in this motion. West v. Bell Helicopter Textron, Inc., 803 F.3d 56, 70-72 (1st Cir. 2015) (duty to supplement is triggered by information acquired after original response). In other words, from both a jurisprudential and a practical standpoint, no case or controversy exists simply because the Plaintiff is now involved in a lawsuit to recover the fees of this lawsuit.

Although the Plaintiff notes that he has not "accepted" those fees or Cash Depot's payment, he acknowledges receiving the checks and keeping them. (R. 35:1, 2, 7). Whether the Plaintiff and his lawyers cashed their checks is inconsequential, for they presently control the

funds, and after holding them for weeks they have accepted payment. *Cf.* IFC Credit Corp. v. Bulk Petroleum Corp., 403 F.3d 869, 875 (7th Cir. 2005).

Finally, the Plaintiff's positions are wrong and sometimes deceptively wrong, behavior that should not be financially rewarded or its consequences overlooked. It is time consuming and expensive for Cash Depot to correct these obvious errors, and an imposition on this Court, given the press of far more serious business. The attention the Plaintiff demands from this Court to superintend its errors subtracts from attention the Court can provide deserving litigants.

### D. Campbell-Ewald and Fulton Dental Provide No Support.

The Plaintiff next misreads Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) and Fulton Dental, LLC v. Bisco, Inc., 860 F.3d 541 (7th Cir. 2017). The Plaintiff contends that each case establishes Cash Depot cannot force the Plaintiff to settle his case against his will by tendering an offer of judgment under Fed. R. Civ. P. 68 or depositing money with the Court under Rule 67. But Cash Depot did neither and offered to settle nothing. It paid the Plaintiff all wages and liquidated damages supposedly due, the attorney's fees and costs incurred, and, for that matter, paid putative class members, as well. Unlike Campbell-Ewald or Fulton Dental, Cash Depot demanded no release, stipulation, or end of litigation as a condition of payment. The Plaintiff is free to continue the litigation, provided a case or controversy remains. Because no case or controversy remains, however, the lawsuit must be dismissed, not because the Plaintiff has agreed to dismissal, but because federal courts do not resolve hypothetical disputes. Since the Plaintiff has no proverbial dog in the fight or anything meaningful to gain from litigation, the Court lacks power to continue the adjudication. Because of the exorbitant cost of defending a class action claim, Cash Depot elected to pay the Plaintiff rather than to fight. Nothing in the law requires Cash Depot to continue to fight when it prefers to pay.

7

In contrast, Campbell-Ewald held that the courts could not force the plaintiff to reach an agreement and end the litigation, even if an offer of judgment fully compensated the plaintiff. The Court approached the statutory offer as if it were a proposal to contract:

> When a plaintiff rejects such an offer [under Rule 68] – however good the terms – her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer – like any unaccepted contract offer – is a legal nullity, with no operative effect. . . . Nothing in Rule 68 alters that basic principle; to the contrary, that rule specifies that '[a]n unaccepted offer is considered withdrawn.'

Id., 136 S. Ct. at 670, quoting Genesis Healthcare Corp. v. Symczak, 569 U.S., 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013) (Kagan, J., dissenting) [citations and quotations omitted].

Fulton Dental involved Fed. R. Civ. P. 67, which primarily functions "to relieve a party who holds a contested fund from responsibility for disbursement of that fund among those claiming some entitlement thereto." 860 F.3d at 545. Fulton Dental held that Rule 67 did not permit a litigant to force a settlement on an unwilling party. The court noted that Campbell-Ewald left open the question of whether making payment to the plaintiff warranted a different conclusion, Id. at 544, but found that depositing funds with the district court clerk is not such a payment, for the courts, not the Plaintiff, control the funds' disbursement, and the original depositor may not lose all interest in them. Id. at 545; Conrad v. Boiron, Inc., ____ F.3d ____, 2017 WL 3623960 *4 (August, 2017).

Here, none of that has occurred. Payment has been made to the Plaintiff without reservation or condition. He must agree to nothing. He has been fully paid. He is free, of course, to contest that fact, but here, for strategic reasons only the Plaintiff understands, he has not ably done so. Using the data and payment history already provided is the most simple and direct way to prove that he was underpaid. From discovery, the Plaintiff knows the amount of his bonus, his base pay, the hours and overtime hours worked, and the overtime pay already

received for each week he worked at Cash Depot. Thus, showing he remains underpaid despite what Cash Depot recently paid him is a simple endeavor, an endeavor the Plaintiff, however, deliberately refuses to undertake. Only Cash Depot has supplied this critical evidence to the Court. Refusing to recognize what is plain and obvious does not transform an uncontestable fact into a genuine dispute over one.

### E. The Plaintiff Has No Right to Speak for the Putative Class.

The Plaintiff next argues that he also requested the appointment of his lawyer to serve as class counsel and sought class certification, so payment leaves these claims unresolved. But neither gives the Plaintiff sufficient reason to avoid dismissal of the suit for mootness. McMahon v. LVNV Funding, LLC, 744 F.3d 1010, 1018 (7th Cir. 2014), confirms the long-standing and intractable requirement that all the plaintiff's claims, including one for class certification, must be dismissed once he loses a personal stake in the outcome unless he first filed a certification motion. Though overruled on other grounds by Campbell-Ewald, Damasco v. Clearwire Corp., 662 F.3d 891, 895-6 (7th Cir. 2011) summarizes this principle well. Only filing the motion before mootness occurs preserves a claim for class action status. Here, the Plaintiff never filed such a motion before receiving payment, so his claim is moot and he has no standing to seek class certification.

The Plaintiff's claim that his lawyer serve as class counsel is all the more perplexing, because before certification, the putative class is a legal nullity – there is no one to represent. Genesis Healthcare Corp., 569 U.S. at 75. Moreover, here, the class has been fully paid, and no one has rejected the payment or even sought more. (Arndt Decl. ¶ 6). Individual members have every right to resolve their own claims foregoing litigation, and the Plaintiff has no legal standing to force them to do otherwise. Weight Watchers of Philadelphia, Inc. v. Weight

9

Case 1:16-cv-01637-WCG    Filed 09/15/17    Page 9 of 16    Document 37

Watchers Int'l, 455 F.2d 770, 775 (3rd Cir. 1972).  The Plaintiff has no legally protected right to sue on behalf of others who prefer not to.

Moreover, since the class was fully paid, the Courts' traditional antagonism to efforts to decapitate the class fails to apply.  Class action targets sometimes seek to avoid class action litigation by paying a named Plaintiff everything sought and thereby circumventing class certification.  That eliminates exposure for the large damages that class action litigation typically brings, but here, Cash Depot's conduct is different.  It has paid the named Plaintiff *and* the putative class everything sought, not to avoid damages but to avoid litigation and its costs.  The Plaintiff yearns to keep the lawsuit going but provides no sensible reason to do so.  He never calculates his own loss and relies instead on a flawed methodology intended to discredit Cash Depot's calculations.  This camouflages the lack of a genuine controversy and never refutes the contention that the claim is moot.  After all, the Plaintiff must have standing at each stage of proceedings, Spencer v. Kemna, 523 U.S. 1, 7, 118 S.C. 978, 140 L. Ed. 2d 43 (1998), and a legal strategy to obscure any loss beyond what Cash Depot has paid him abdicates that responsibility.

The Plaintiff's claim that Cash Depot omitted liquidated damages for putative class members from its payment does not supply him a case or controversy, either.  The Plaintiff does not represent the class, has filed no motion for class certification, and has no legal interest in participating in lawsuits for other people.  Genesis Healthcare concluded justiciability for a class is born when it is certified and thereby actually acquires an "independent legal status" under Rule 23, noting even conditional certification under the FLSA confers no such status on a collective.  569 U.S. at 75.  Accordingly, the Genesis Healthcare court dismissed a class representative's claim as moot before class certification, just as Cash Depot seeks here.

### F. Cause for Sanctions Possibly Exists.

Most lawyers will have calculated a purported loss by now, especially when an adversary says none exists. It is suspicious that the Plaintiff refused to calculate overtime wages using actual figures. In making his calculations, Plaintiff's counsel certainly understood that Cash Depot previously paid Fast some overtime, especially when Cash Depot's wage summaries showed it repeatedly. If the Plaintiff made those calculations here but concealed them, it merits the strongest condemnation. Perhaps simple neglect is the more charitable explanation, but neglect that costs other litigants substantial funds and the courts' scarce resources provides an equally legitimate basis to impose sanctions.

Thus, Chapman v. First Index, Inc., 796 F.3d 783 (7th Cir. 2015), warns that there are "consequences" for doing what the Plaintiff attempts to do here, for "you cannot persist in suing after you've won," so principles of estoppel or waiver should probably foreclose further suit. Id. at 787, quoting Greisz v. Household Bank (Illinois), 176 F.3d 1012, 1015 (7th Cir. 1999). Conrad, *supra*, 2017 WL 3623960 *4 (August 24, 2017), noted that promoting a case for litigation's sake constitutes an "abusive litigation" tactic and merits severe consequences:

> Prominent among them is 28 U.S.C. § 1927, which authorizes the court to sanction against any attorney who so multiplies the proceedings in any case unreasonably and vexatiously. Rule 11 of the Federal Rules of Civil Procedure also serves as a constraint on a lawyer's ability to file a case that is not appropriately founded . . . . If the defendant . . . uses the rule best suited for pre-trial offers of settlement – Rule 68 – and that offer is not accepted, then, if the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made. Finally, the courts have inherent power to punish abuses of process.

But sanctions are little help against impecunious litigants, and Cash Depot has not sought sanctions so far, but rather merely attempts to extricate itself from this litigation by paying the Plaintiff, his lawyers, and the putative class everything owed.

### G. Cash Depot Complied with All Discovery and Ethical Rules.

The Plaintiff complains that he never received a listing of potential class members' names or addresses or the voluminous other information about them that he sought – necessary information, he claims, to move to certify a class. But Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 354, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978), holds that putative class members' identifying information falls outside the scope of discovery under Fed. R. Civ. P. 26(b)(1) and requires a court order under Fed. R. Civ. P. 23(d) in class action litigation. Filing a prophylactic motion for certification with suit typically preserves class representative status, Fulton Dental, 860 F.3d at 546, though Fast never did this.

Fast also criticizes Cash Depot's direct payment to putative class members, but neither cites a rule transgressed nor identifies specific falsehoods or misconduct, and Gulf Oil Co. v. Bernard, 452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981), counsels that restrictions on communications with potential class members should occur only under very limited circumstances. Indeed, the Plaintiff's lawyer finds himself in a contorted ethical position in objecting to voluntary payments Cash Depot made to the class he hopes to represent.

### H. The Plaintiff Has Lost No Interest.

Next, the Plaintiff contends that he is deprived of post-judgment interest and a judgment against Cash Depot. Yet, the Plaintiff is not entitled to a judgment because there is nothing left to pay, and post-judgment interest does not accrue until a judgment has been obtained. The liquidated damages the Plaintiff received substitute for pre-judgment interest, and interest has been foreclosed for almost two decades. Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 406 (7th Cir. 1999).

The Plaintiff deals with all this in a remarkable fashion. He cites Smith v. Greystone Alliance, LLC, 772 F.3d 448 (7th Cir. 2014), as holding that once he takes a contrary view to the

Defendant's, a controversy exists under Article III regardless of how ridiculous, baseless, outrageous, or deceptively false that position might be. As the Court has previously ruled, however, that makes the question of mootness simply a matter of pleading and argument, and any half-competent lawyer could insulate the case from the possibility of mootness merely by appending a specious claim to his complaint. Freedom From Religion Foundation, *supra*, concludes Article III justiciability is not so manipulable.

While the Plaintiff does not mention it, Campbell-Ewald Co. overruled Smith. A very different case than this one, Smith held that a district court erred by deciding that the merits of a claim proved the amount in controversy was less than the jurisdictional amount and dismissed the case as moot because a Rule 68 offer exceeding what the plaintiff could gain from federal litigation had been extended.

Here, there was more than an offer; there was a payment. And the payment equaled what the plaintiff could gain from the litigation, so no controversy existed within the scope of Article III. With that payment, this became a suit where relief beyond what the plaintiff had been paid was impossible, the classic definition of mootness. Knox v. Service Employees Int'l Union, 567 U.S. 298, 307, 132 S. Ct. 2277, 183 L. Ed. 2d 281 (2012).

### III. THE MOTION FOR SUMMARY JUDGMENT IS UNCONTESTED BY EVIDENCE.

Finally, the Plaintiff contends that a motion for summary judgment is inappropriate, first because summary judgment is somehow synonymous with the motion to dismiss on mootness grounds. But it is not. Cash Depot seeks a legal determination that it owed the Plaintiff $386.76 – based on an expert's calculation and the evidence Cash Depot produced. A summary judgment determination to that effect eliminates the controversy the Plaintiff tries to stoke. Responsibility fell to the Plaintiff to produce countervailing evidence showing Cash Depot's calculations were

wrong, Fed. R. Civ. P. 56(c), but he did not. His fallacious comparison between Schenck's calculations and a Department of Labor regulation failed to achieve that. In other words, the motion addresses the question of damages, and if the Plaintiff is entitled to recover only what the Defendant paid, the controversy resolves and the case is moot. None of the cases the Plaintiff raises – Smith, Genesis Healthcare, Campbell-Ewald, or Fulton Dental – involved a motion to dismiss made in conjunction with a judicial determination that the defendant is right on the question of damages. Whatever procedural impediments the Plaintiff seeks to erect fail because he has produced no evidence contradicting Cash Depot's calculation of his claimed damages.

Next, the Plaintiff argues that the motion for summary judgment on his damages is inappropriate because it gives no consideration to the putative collective's damages. But the Plaintiff does not represent the putative collective. He has not moved for class certification, and it is well-settled that until the class is certified, it is a legal nullity. Neither class nor collective exists, and the Plaintiff has no legal interest in bringing lawsuits for other people.

Calling this motion "a thinly veiled attempt to pick off the named Plaintiff" (R. 34:22) shows a fundamental ignorance of what picking off the named Plaintiff involves. After all, Cash Depot paid the putative class, thus making it unnecessary to eliminate the Plaintiff here. Moreover, there is nothing inappropriate about paying the Plaintiff's claim, even without paying putative class members. If paid before filing a motion for class certification, the named Plaintiff's claim is moot and must be dismissed. Fulton Dental, 860 F.3d at 546. If the certification motion precedes payment, no bar exists to seeking class treatment, although the Plaintiff's personal claim is still moot. Id. As Fulton Dental emphasized, the critical moment presents when a formal class certification motion is filed, for if, at the time the class was certified the Plaintiff suffered no injury, the Plaintiff is ineligible to represent the class. Id. at 546-7,

14
Case 1:16-cv-01637-WCG   Filed 09/15/17   Page 14 of 16   Document 37

citing Gen. Tel. Co. v. Falcon, 457 U.S. 147, 156, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982); East Texas Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 156, 403-04, 97 S. Ct. (1891), 52 L. Ed. 2d 453 (1977). At present, the Plaintiff has no interest in anything but his own claim, and consequently, with full payment, that claim should be dismissed.

The Plaintiff also fundamentally misunderstands Rule 56. The Plaintiff incorrectly contends that Cash Depot implicitly seeks, on one hand, a full judgment as a matter of law against him, and on the other, "summary judgment against itself." (R. 34:22). The Plaintiff's effort to transform a simple motion for partial summary judgment on damages into something else is nonsense. Rule 56(a) permits a party to move for partial summary judgment, and "requests for and grants of partial summary judgment . . . are nothing new." Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund, 778 F.3d 593, 606 (7th Cir. 2015).

The Plaintiff's final argument is also gibberish. The Plaintiff argues that its damages are "a necessary by-product of the dispute," indeterminable until that dispute is resolved and judgment entered. The Plaintiff indicates the motion does not seek to decide that dispute or to determine the correct method of calculating regular and overtime rates of pay "such that the question of damages can even be reached." (R. 34:22).

Of course the question of damages can be reached. That is the determination the motion and supporting brief asked for. (R. 22; R. 18:4 n.1). That is exactly what the Bradley declaration sets forth and the Plaintiff contests (ineffectively) at page 20 of his brief. In short, there is no genuine issue of material fact over the Plaintiff's damages. The calculation of his damages involves mathematics and a single answer. It can involve nothing but an undisputed issue of fact.

15
Case 1:16-cv-01637-WCG   Filed 09/15/17   Page 15 of 16   Document 37

Dated this 15th day of September, 2017.

                LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.
                Attorneys for Defendant, Cash Depot

                By: s/George Burnett
                    George Burnett

POST OFFICE ADDRESS:
231 South Adams Street
Green Bay, WI 54301
P.O. Box 23200
Green Bay, WI 54305-3200
(920) 437-0476
State Bar. 1005964

201615.046:#2670667

16

Case 1:16-cv-01637-WCG    Filed 09/15/17    Page 16 of 16    Document 37