UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY J. FAST,

    Plaintiff,

v.               Case No. 16-C-1637

CASH DEPOT LTD.,

    Defendant.

## DECISION AND ORDER

  This case presents the important question of whether an employer accused of violating the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (FLSA) in calculating the wages due its employees is required to incur the substantial costs and attorneys fees of a collective or class action even when it acknowledges the violations and promptly attempts to remedy them. Cash Depot, Ltd., is a Wisconsin company that sells, leases, rents, installs, ships, and services Automated Teller Machines (ATMs). Plaintiff Timothy Fast was employed by Cash Depot as a Field Service Technician for a little over a year between July 6, 2015 to July 29, 2016. On December 29, 2016, Fast brought this collective action against his former employer on behalf of himself and all other similarly situated current and former non-exempt Field Service Technicians employed by Cash Depot, alleging violations of the FLSA.

  Relatively early in the case, Cash Depot reached the conclusion that it had been underpaying its employees based upon a wage audit conducted by its accountant. Cash Depot then issued payroll checks for the underpayment calculated by its accountants to its current and former employees. On July 7, 2017, the court approved the parties' stipulation staying all proceedings for sixty days to

allow Fast's counsel to review Cash Depot's calculations regarding the amounts owed to Fast. Counsel for Fast disputes Cash Depot's calculation of his client's underpayment, but refuses to tell Cash Depot what he believes the correct amount is or how he arrived at it. Currently before the court are Cash Depot's motions to dismiss Fast's claims on mootness grounds and for summary judgment. The stay was continued pending resolution of the pending motions.

## BACKGROUND

Fast alleges in his complaint that Cash Depot violated the FLSA by failing to lawfully compensate current and former non-exempt field service technicians at a correct rate of overtime pay and for all overtime hours worked at that overtime rate of pay. *Id.* ¶ 4. The FLSA requires that non-exempt employees be paid overtime at a rate of one-and-a-half times their regular rate of pay. 29 U.S.C. § 207(a)(1). Fast's hourly rate for regular hours of work during his employment at Cash Depot was $15.00 per hour. Cash Depot paid him at a rate of one-and-a-half times that amount, or $22.50 per hour, for overtime hours. Bradley Decl. ¶ 15, ECF No. 24. What Cash Depot apparently did not realize, however, is that the FLSA defines "regular rate" of pay to include "all remuneration for employment paid to, or on behalf of, an employee," subject to several exceptions not relevant here. *Id.* at § 216(e). Fast alleged that Cash Depot failed to include non-discretionary bonuses and on-call premiums in calculating its employees' regular rates of pay for purposes of determining the amount of overtime compensation its employees should receive each workweek.

Sometime after Fast filed the instant action, Cash Depot's legal counsel retained Schenck SC, an accounting firm, to review Cash Depot's payroll practices concerning the payment of on-call premiums, shift premiums, bonuses, and overtime to its employees for the time period of December 2013 through February 2017. Bradley Decl. ¶ 3. Even though Fast's complaint only considered

2

overtime payments to field service technicians, Schenck audited the payroll records for all Cash Depot employees. *Id.* ¶ 7. Schenck learned that Cash Depot paid its field service technicians a $75 on-call premium each week the technicians were on call but did not pay them shift premiums. *Id.* ¶ 9. Schenck also reviewed Cash Depot's definitions of "workweek" and "on-call week." Cash Depot defined its workweek as Sunday through Saturday and its on-call week as Monday through Sunday. Based on these designations, the $75 on-call premium spanned two workweeks. *Id.* ¶ 10. The field service technicians' on-call week began on Monday, the second day of the workweek, and ended Sunday, the start of the following workweek. After considering Cash Depot's payroll materials, Schenck concluded Cash Depot did not correctly factor the on-call premiums into its employees' regular rates of pay when computing overtime and began calculating the proper amounts Cash Depot owed its employees.

Schenck calculated the overtime compensation amount for Fast by reviewing his daily and weekly time reports and payroll report. *Id.* ¶ 13. It noted which weeks Fast earned an on-call premium and divided the premium between the two workweeks. Schenck concluded Fast should receive $64.29 for the Monday through Saturday he was on call and $10.71 for Sunday, his last on call day but the start of Cash Depot's workweek. *Id.* ¶ 14. Schenck then verified the workweeks Cash Depot paid Fast overtime for all hours worked in excess of forty hours. It found that Cash Depot had already compensated Fast for overtime at his regular hourly rate of $15.00 per hour, so it developed a formula to calculate the additional overtime owed to him based on the on-call premiums. *Id.* ¶ 16. To determine this number, Schenck divided the on-call premium by the number of hours Fast worked in a given workweek. Based on these calculations, Schenck concluded Cash

3

Depot owed Fast an additional $167.50 in overtime wages for the on-call premiums it paid him throughout his employment. *Id.* ¶ 17.

Schenck also found that Cash Depot failed to pay Fast overtime compensation for a $700 non-discretionary bonus he received in August 2015 for meeting the company's transaction goals in July 2015. Schenck divided $700 by the number of hours Fast worked during the month of July and determined Cash Depot owed Fast $22.88 in overtime compensation for the 11.15 hours of overtime he worked in July 2015. *Id.* In all, Schenck found Cash Depot owed Fast $190.38 in overtime compensation related to the on-call premiums and non-discretionary bonuses Cash Depot did not previously factor into his regular rate of pay. *Id.* ¶ 18.

Schenck contends that it not only audited Cash Depot's payroll records for Fast, but also the records for all of Cash Depot's current and former employees, even those who were not employed as field service technicians, who worked during the December 2013 through February 2017 time period. After calculating the additional overtime compensation due to each employee, Schenck calculated interest payments on those amounts. *Id.* ¶ 24. Schenck determined Cash Depot owed its employees a total of $21,986.47, including those payments owed Fast. *Id.*

After receiving a spreadsheet from Schenck itemizing these figures, Cash Depot processed payments to all of its current and former employees. Although the payments did not include liquidated damages in accordance with the FLSA, they comprised any overtime wages and interest due to the employee. With respect to employees who Cash Depot owed less than $10, the company elected to pay those employees $10.00. Cash Depot electronically deposited these funds with its current employees during the May 20, 2017 pay period and mailed checks to its former employees.

4

Reis Decl. ¶ 13, ECF No. 19. In all, Cash Depot issued 63 paychecks to its current and former employees, excluding Fast, totaling $21,983.53. *Id.*

As to Fast himself, Cash Depot determined it was obligated to pay him $380.76, which represented the amount owed to him in overtime compensation plus the amount of liquidated damages afforded under the FLSA. On June 6, 2017, Cash Depot's counsel mailed a letter to Fast's counsel, Attorney James Walcheske, enclosing a payroll check in the amount of $338.98—the total owed less federal and state taxes. Labs Decl. ¶ 5, ECF No. 21; ECF No. 21-1. This correspondence advised Fast and his counsel that Cash Depot would also pay the costs and attorneys' fees associated with advancing Fast's FLSA claim and enclosed formal discovery requests regarding those amounts. ECF Nos. 21-1 & 21-2.

On June 21, 2017, Cash Depot's counsel served Fast's counsel with Defendant's Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents, which included a spreadsheet summarizing Schenck's overtime compensation calculations as they related to Fast. Labs Decl. ¶ 7. Cash Depot's responses did not provide any information relating to the putative class, asserting that the information is "irrelevant, primarily due to the fact Cash Depot has paid its field service technicians all wages owed to them, including overtime." ECF No. 35-1 at 10. Cash Depot also did not provide Fast with an itemized list of the payments it made to all current and former employees. Walcheske Decl. ¶ 13, ECF No. 35.

Fast's counsel was unaware Cash Depot would be sending Fast a check for the amounts owed to him and requested that the parties discuss the status of the case on June 23, 2017. *Id.* ¶ 14; Labs Decl. ¶ 8. In a telephone conference on June 28, 2017, Fast's counsel suggested that, based on his calculations, Cash Depot underpaid Fast. *Id.* ¶ 9. Cash Depot's counsel advised that if it did

5

underpay its employees, it would simply disburse additional checks to Fast and the putative collective to supplement their compensation. During the conference, Cash Depot's counsel offered to arrange a meeting with a Schenck representative and Fast's counsel to discuss Schenck's calculations as they related to Fast. *Id.*; Walcheske Decl. ¶ 21.

On July 6, 2017, the parties filed a stipulation, approved by the court, to stay proceedings for sixty days to allow them to evaluate the accuracy of Schenck's calculations and Cash Depot's payments. ECF Nos. 14–15. That same day, Fast's counsel emailed a letter to Cash Depot's counsel regarding Cash Depot's previous discovery responses and attached Plaintiff's Second Set of Interrogatories and Requests for Production of Documents. Walcheske Decl. ¶ 23. Even though the parties agreed to stay all proceedings in the case, Fast's counsel indicated he expected responses to the requests by July 17, 2017. ECF No. 35-4. On July 7, 2017, the parties decided to table the discovery issue until Fast's counsel met with Schenck representatives to discuss their calculations. *Id.*

Meanwhile, on July 13, 2017, Cash Depot's counsel received Plaintiff's Answers and Objections to Defendant's Interrogatories and Request to Produce Documents addressing the costs and attorneys' fees associated with advancing Fast's claim. Labs Decl. ¶ 16. Fast indicated he incurred $402.35 in costs and $12,931.00 in attorneys' fees related to this litigation. ECF No. 21-12 at 3–4. On July 17, 2017, Cash Depot's counsel sent a letter to Fast's counsel requesting additional information to verify the reasonableness of the attorneys' fees incurred by Fast. Labs Decl. ¶ 17. Cash Depot's counsel did not receive a response to this correspondence.

On July 20, 2017, Cash Depot's counsel and Amy Bradley, Schenck's lead payroll specialist, participated in a teleconference with Fast's counsel to discuss Schenck's methodology and

6

calculations of the overtime compensation owed to Fast. *Id.* ¶ 13. During the conference, Fast's counsel indicated his calculations resulted in higher amounts, but because he did not want Cash Depot to disburse additional checks to Fast or its other employees for amounts owed, he did not explain his methodology or calculations. Walcheske Decl. ¶ 34. Fast's counsel sent an email following the teleconference on July 25, 2017, summarizing the call and reiterating that his calculations revealed that the amount owed to Fast was at least double the amount calculated by Schenck. *Id.* ¶ 35. Again, Fast's counsel did not reveal his calculations.

On August 3, 2017, Cash Depot's counsel mailed a check in the amount of $13,333.35 to Fast's counsel, which represented payment by Cash Depot of the attorneys' fees and costs disclosed in Fast's discovery responses. Labs Decl. ¶ 18. The following day, Cash Depot filed the instant motion to dismiss on the ground that Fast has been paid in full and his claim is now moot. Alternatively, Cash Depot filed a motion for summary judgment seeking a determination that it owes Fast the sum of $380.76, plus his costs and reasonable attorneys' fees. Fast denies that the case is moot, noting that although the checks from Cash Depot remain in his attorney's possession, neither Fast nor his counsel have deposited the checks or indicated any acceptance of the funds. Walcheske Decl. ¶ 39. Fast also contends that Cash Depot's motion for summary judgment is premature and inappropriate.

**ANALYSIS**

"Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies.'" *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting U.S. Const. Art. III, § 2). That is, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)

7

(quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)). "This jurisdictional requirement ensures that the resources of the federal judiciary are not expended on advisory opinions and hypothetical disputes." *Home Care Providers, Inc. v. Hemmelgarn*, 861 F.3d 615, 620 (7th Cir. 2017) (quoting *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 488 (7th Cir. 2004)).

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Service Employees Int'l Union*, 567 U.S. 298, 307 (2012) (internal quotation marks and source omitted). Cash Depot argues that is precisely the situation here. This case has become moot, Cash Depot contends, because it has already paid Fast all that he is legally entitled to under the FLSA. Because it has already paid him in full what he could recover, Cash Depot argues it is impossible for the court to grant him any further relief.

Fast argues that the case is not moot because: (1) neither he, nor his attorney, has deposited or cashed the check that Cash Depot mailed to his attorney; (2) the additional relief requested in his complaint, including conditional certification of the collective, appointment of his attorneys as collective counsel, and full payment of wages due, liquidated damages and pre-judgment interest, has not been granted; and (3) Cash Depot's calculation of the overtime pay due Fast and other employees is incorrect. Only the first of these reasons has support in the law and facts of the case.

If Fast's claim is moot, the fact that the additional relief available for FLSA collective actions has not been granted is irrelevant. In the absence of other employees opting in, "the mere presence

8

of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied." *Genesis Healthcare Corp.*, 569 U.S. at 73. Indeed, even conditional certification of a collective class would not save the suit from mootness absent a live claim by the original or an opt-in plaintiff. *Id.* at 75.

And Fast's argument that Cash Depot's calculation is incorrect is waived, at least for purposes of the instant motion. Cash Depot has filed a sworn declaration by the leader of the Payroll Services Team of its accountant showing precisely how she arrived at the calculation of Fast's unpaid overtime for the approximately one year he was employed by Cash Depot. ECF Nos. 24-4 & 24-5. Fast challenges the accuracy of Cash Depot's determination of his regular rate and corresponding overtime rate, but he has failed to state where its accountant's calculation is wrong or produce any countervailing evidence to contradict Cash Depot's calculations. Instead, Fast refers to a hypothetical example provided in 29 C.F.R. § 778.110 to demonstrate the "legally correct" method of calculating an employee's regular rate of pay. Pl.'s Resp. Br. at 20, ECF No. 34. This is not enough. Fast states that he does not want to provide his case-specific computations for fear that Cash Depot will send supplemental payroll checks compensating him and the potential opt-in plaintiffs for those amounts. Pl.'s Resp. Br. at 9 n.5. But this makes no sense. A plaintiff cannot refuse to tell the defendant the amount of his claim for fear the defendant will pay him the amount he requests and eliminate the need for a lawsuit. "Ordering a defendant to do what it is willing to do has no legitimate claim on judicial time. Why should a judge do legal research and write an opinion on what may be a complex issue when the plaintiff can have relief for the asking? Opinions are supposed to be the byproducts of real disputes." *Chapman v. First Index, Inc.*, 796 F.3d 783, 787–88 (7th Cir. 2015).

9

Cash Depot has coupled its motion to dismiss with a motion for summary judgment. Fast is required at the summary judgment stage to present some evidence to allow the court to accept his position that Cash Depot's calculations regarding Fast's additional overtime payments are incorrect. *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) ("Once a party has made a properly-supported motion for summary judgment, the opposing party . . . must . . . submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." (citations omitted)). He has offered none. He thus has waived any claim that the amount calculated by Cash Depot with respect to Fast is incorrect. *See* Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by a motion [for summary judgment], it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.").

There remains Fast's argument that a live controversy continues to exist because he has not cashed the check he received from Cash Depot. In *Campbell-Ewald*, the Supreme Court held that an unaccepted offer of judgment for the full amount the plaintiff could recover on his claim pursuant to Rule 68 of the Federal Rules of Civil Procedure did not render the claim moot. 136 S. Ct. at 666. "Under basic principles of contract law," the Court held, [the defendant's] settlement bid and Rule 68 offer of judgment, once rejected, had no continuing efficacy." *Id.* at 670 (citing *Genesis Healthcare Corp.*, 569 U.S. at —, 133 S. Ct. at 1533 (Kagan, J., dissenting)). "In short, with no settlement offer still operative, the parties remained adverse; both retained the same stake in the litigation they had at the outset." *Id.* at 670–71.

The Court left open in *Campbell-Ewald* the question of whether depositing the full amount of the plaintiff's individual claim in an account payable to the plaintiff, along with a judgment for the

10

plaintiff for that amount, would render the claim moot. The majority likewise did not address the suggestions offered by Justice Alito in his dissent that a defendant could render a plaintiff's suit moot by paying over the damages claimed in the form of a certified check or by depositing the funds with the district court or another trusted intermediary. *Id.* at 684 (Alito, J., dissenting). However, the Seventh Circuit held in *Fulton Dental, LLC v. Bisco, Inc.*, that depositing the full value of the individual plaintiff's claim with the court pursuant to Rule 67 of the Federal Rules of Civil Procedure did not have such an effect. 860 F.3d 541, 545 (7th Cir. 2017). The court saw "no principled distinction between attempting to force a settlement on an unwilling party through Rule 68, as in *Campbell-Ewald*, and attempting to force a settlement on an unwilling party through Rule 67." *Id.* "In either case," the court explained, "all that exists is an unaccepted contract offer, and as the Supreme Court recognized, an unaccepted offer is not binding on the offeree." *Id.* Cash Depot contends that neither *Campbell-Ewald* nor *Fulton Dental* control here because it did more than make an offer of settlement pursuant to Rule 68 or deposit the funds with the court. Cash Depot argues Fast's claim is moot because it actually paid both him and his attorney all they had coming.

It would be more accurate to say that Cash Depot has tried to pay Fast, however. It has sent his attorney a check for the amount he was underpaid for overtime, plus liquidated damages. But neither Fast nor his attorney has cashed, deposited or otherwise indicated an intent to accept Cash Depot's offer of settlement. Cash Depot argues that because Fast and his attorney retained the checks, whether they cashed them or not is inconsequential, "for they presently control the funds, and after holding them for weeks they have accepted payment." Def.'s Reply Br. at 6–7, ECF No. 37.

The case Cash Depot cites for this argument, however, does not support the principle upon which it rests. The case, *IFC Credit Corp. v. Bulk Petroleum Corp.*, 403 F.3d 869 (7th Cir. 2005),

11

involved the doctrine of accord and satisfaction, which as *Chapman* noted, is an affirmative defense rather than a jurisdictional bar. 796 F.3d at 787. More importantly, in *IFC Credit*, the plaintiff cashed the check and, even though it claimed it had done so inadvertently, retained the money. 403 F.3d at 874–75. Here, by contrast, Fast has persisted in his refusal to accept Cash Depot's payment and did not cash the check.

Ultimately, I conclude that the case is controlled by *Fulton Dental*. There the court made clear that a defendant may not force a settlement on an unwilling party, whether by offering the plaintiff the full value of his claim or by depositing that amount with the court. "In either case, all that exists is an unaccepted contract offer, and as the Supreme Court recognized, an unaccepted offer is not binding on the offeree." 860 F.3d at 545. Citing Justice Thomas' concurrence in *Campbell-Ewald*, the court noted that "[a]t common law, . . . 'a plaintiff was entitled to deny that the tender was sufficient to satisfy his demand and accordingly go to trial.' . . . That is just what Fulton is trying to do: it is saying that its suit is about more than the statutory damages to which it believes it is entitled; it is also about the additional reward that it hopes to earn by serving as the lead plaintiff for a class action. Nothing forces it to accept Bisco's valuation of the latter part of the case." *Id.* (quoting *Campbell-Ewald*, 136 S. Ct. at 675 (Thomas, J., concurring)).

Likewise in this case, Fast has refused to accept Cash Depot's offer of payment for his claim because he believes his case is about more that the unpaid overtime to which he believes he is entitled. Among the other relief he requests in his complaint may be an additional award as lead plaintiff for a collective action. In any event, the Seventh Circuit seems to have decided that a collective or class action plaintiff can refuse an offer of settlement for the full value of his claim to avoid rendering his potential class or collective action moot. As the court noted in *Chapman*, "[s]ettlement proposals

12

designed to decapitate the class upset the incentive structure of the litigation by separating the representative's interests from those of other class members." 796 F.3d at 787.

Of course, this case differs from *Chapman* and *Fulton Dental*, as well as *Campbell-Ewald*, in that Cash Depot contends that it has not simply offered Fast what he has asked for so as to "decapitate" the collective class, or "pick off" the class representative and leave the rest of the possible claimants with nothing. Cash Depot contends that once it recognized its mistake, it recalculated the overtime pay for all of its current and past employees for the three-year period prior to the filing of Fast's action, both exempt and non-exempt, and has paid them the difference in order to make them whole as well. If that is true, then it would appear that Cash Depot has a strong argument that any motion by Fast to conditionally certify a class should be denied. But because discovery has been stayed, Fast is not in a position to dispute Cash Depot's evidence on this issue. Once the stay is lifted, both parties should be able to quickly assess their respective positions and determine where, if at all, any dispute still exists.

If, as Cash Depot contends, it has cured its prior FLSA violations by paying what it owed its current and former employees, this case should promptly resolve with little additional expense to either party. Courts should not countenance meaningless class actions, or collective actions, that benefit no one but the attorneys. *See In re Subway Footlong Sandwich Marketing & Sales Practices Litigation*, 869 F.3d 551 (7th Cir. 2017). Federal courts have both statutory and inherent powers to sanction, deny recovery, or shift fees to address unreasonable and vexatious conduct that unnecessarily multiplies proceedings or delays or increases costs. *See* Fed. R. Civ. P. 37; 28 U.S.C. § 1927; *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). For the reasons set forth above, these are the tools the must be used to protect truly repentant defendants who are willing to make full

13

restitution for FLSA violations from abusive lawsuits. Forced settlements, as the law now stands, are not an option.

## CONCLUSION

Accordingly and for the reasons set forth above, Cash Depot's motion for summary judgment (ECF No. 22) is **GRANTED-IN-PART and DENIED-IN-PART**. Cash Depot's motion for summary judgment is granted to the extent that Cash Depot correctly calculated that it owes Fast the sum of $380.76 in unpaid overtime plus his costs and reasonable attorneys' fees. Cash Depot's motion to dismiss the case as moot (ECF No. 17) is **DENIED**. Fast's motion for leave to file a sur-reply (ECF No. 40) is **GRANTED**. Cash Depot's motion to lift the stay (ECF No. 16) is **GRANTED**.

**SO ORDERED** at Green Bay, Wisconsin this   6th   day of November, 2017.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
