UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

TIMOTHY J. FAST,
on behalf of himself and
all others similarly situated

           Plaintiff,                                Case No. 16-cv-1347

      v.

CASH DEPOT, LTD.

           Defendant.

---

### PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR ATTORNEYS' FEES AND COSTS

---

This case was brought pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et. seq.* ("FLSA"), and Wisconsin's Wage Payment and Collection Laws ("WWPCL") by Plaintiff, Timothy J. Fast, on behalf of himself and all others similarly situated, alleging that Defendant, Cash Depot, Ltd., failed to compensate him and all other, similarly-situated Field Service Technicians at an overtime rate of pay for all hours worked in excess of forty (40) hours in a workweek, and improperly calculated his and others' "regular rate" of pay, as that phrase is used under the FLSA, when determining the overtime rate of pay to be used for compensating him and others for all hours worked in excess of forty (40) hours in a workweek.

With respect to Plaintiff's claim that Defendant failed to compensate him and other similarly-situated Field Service Technicians, Plaintiff specifically alleged that Defendant failed to properly calculate overtime on a workweek-basis and to compensate them for work performed "on call" that was less than fifteen (15) minutes in duration.

1

With respect to Plaintiff's claim that Defendant improperly calculated Plaintiff's and others' "regular rate" of pay, Plaintiff specifically alleged that Defendant failed to account for shift premiums, non-discretionary bonuses, and a flat rate or lump sum of $75.00 per week for each workweek in which a Field Technician was "on call," when determining the overtime rate of pay to be used for compensating him and others for all hours worked in excess of forty (40) hours in a workweek.

Ultimately, as a result of Plaintiff's counsel's efforts via this lawsuit and during the course of the litigation in this matter, Defendant compensated Plaintiff and all others similarly situated in the putative class/collective with monetary payments representative of wages owed, including at an overtime rate of pay. (Declaration of James A. Walcheske ("Walcheske Decl."), ¶¶ 13, 25.) Continued litigation ensued, including Defendant's filing of Motions to Lift the Temporary Stay of Proceedings, (ECF No. 16), to Dismiss on Mootness Grounds, (ECF No. 17), and for Summary Judgment, (ECF No. 22), against Plaintiff.

On November 7, 2017, the Court entered its Decision and Order on said Motions. Therein, the Court stated, in part:

> Cash Depot contends that once it recognized its mistake, it recalculated the overtime pay for all of its current and past employees for the three-year period prior to the filing of Fast's action, both exempt and non-exempt, and has paid them the difference in order to make them whole as well. If that is true, then it would appear that Cash Depot has a strong argument that any motion by Fast to conditionally certify a class should be denied. But because discovery has been stayed, Fast is not in a position to dispute Cash Depot's evidence on this issue. Once the stay is lift, both parties should be able to quickly assess their respective positions and determine where, if at all, any dispute still exists.
>
> If, as Cash Depot contends, it has cured its prior FLSA violations by paying what it owed its current and former employees, this case should promptly resolve with little additional expense to either party.

(Decision and Order, ECF No. 43, p. 13.)

Once the stay was lifted, the parties conferred and ultimately exchanged additional information in December 2017. (Walcheske Decl., ¶ 22.) Specifically, Plaintiff agreed to and did provide Defendant with Plaintiff's Amended Answers to Defendant's [Second Set] of Interrogatories and Requests to Produce Documents, specifically amending his answers to Interrogatory Nos. 1 and 2 therein, which requested a detailed accounting of Plaintiff's attorneys' fees and costs. (*Id.* at ¶¶ 22-24, Exhibit A.) For its part, Defendant agreed to and did provide Plaintiff with documents setting forth all wage calculations performed by Schenck for all of Defendant's employees for the time frame of December 2013 through February 2017. (*Id.* at ¶ 22.) Defendant's production exceeded two hundred (200) pages in length. (*Id.*)

On February 2, 2018, and having had an opportunity to review each other's additional information, the parties conferred once again. (*Id.* at ¶ 25.) Therein, Plaintiff's counsel stated his belief, based on his review of Defendant's documents, that Defendant had paid all wages owed to its employees resulting from its FLSA violations. (*Id.*) Plaintiff's counsel further indicated that the only outstanding issue was reimbursement of Plaintiff's attorneys' fees and costs as set forth in Plaintiff's Amended Answers to Defendant's [Second Set] of Interrogatories and Requests to Produce Documents. (*Id.* at ¶ 25, Exhibit B.) Plaintiff's counsel stated that, assuming Defendant reimbursed said attorneys' fees and costs, the case "would be done" or words to that effect. (*Id.* at ¶ 25.) Defendant's counsel expressed reluctance, but indicated he would discuss the matter with Defendant. (*Id.*)

On February 14, 2018, and having not received any response from Defendant on whether it intended to reimburse Plaintiff's attorneys' fees and costs, Plaintiff's counsel emailed

3

Defendant counsel seeking an update regarding the same. (*Id.* at ¶ 26.) Defendant never responded. (*Id.*)

Because of Plaintiff's counsel's efforts, Plaintiff achieved substantial success in this matter and is considered a prevailing party, entitling him to reimbursement of reasonable attorneys' fees and costs expended in the litigation.

For the reasons set forth herein, Plaintiff requests: reimbursement of reasonable attorneys' fees for time spent litigating the merits of this matter in the amount of $49,730.00; reimbursement of reasonable costs incurred in litigating this matter in the amount of $407.04; and $2,695.00 in attorneys' fees, representing 7.7 hours of work for time spent preparing this Motion and supporting Brief and Declarations.

## ARGUMENT

Under the FLSA, successful Plaintiffs are entitled to reimbursement for their attorneys' fees and costs. 29 U.S.C. § 216(b). Generally, courts undertake a three-part analysis when deciding motions for attorneys' fees and costs in FLSA cases: (1) determining whether the Plaintiff was a "prevailing party"; (2) determining the "lodestar" amount (i.e., the total amount of reasonable fees expended) by multiplying the reasonable hourly rate(s) by the number of hours reasonably expended; and (3) determining whether the "lodestar" amount should be increased or decreased based on a variety factors, such as the plaintiff's degree of success obtained, the complexity of the case, and the public interest advanced by the litigation. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433, 436 (1983); *Schlacher v. Law Offices of Phillip J. Rotche Assocs.*, 574 F.3d 852, 856-57 (7th Cir. 2009); *Connolly v. Nat'l Sch. Bus Serv., Inc*., 177 F.3d 593, 595-97 (7th Cir.1999); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999); *Strange v. Monogram Credit Card Bank of Ga*., 129 F.3d 943, 946 (7th Cir. 1997); *Bankston v.*

4

*Illinois*, 60 F.3d 1249, 1255 (7th Cir. 1995); *Garcia v. Oasis Legal Fin. Operating Co*., 608 F. Supp. 2d 975, 977–78 (N.D. Ill. 2009).

While an award of attorneys' fees and costs in FLSA cases is mandatory, a district court has "wide latitude" in determining the amount of the fees and costs. *Uphoff v. Elegant Bath, Ltd*., 176 F.3d 399, 406 (7th Cir. 1999); *Strange v. Monogram Credit Card Bank of Ga*., 129 F.3d 943, 945 (7th Cir.1997); *Bankston v. State of Ill., 60 F.3d 1249, 1254* (7th Cir.1995). The district court "is in the best position to determine the worth of the attorneys practicing before him." *Uphoff*, 176 F.3d at 407.

For the reasons stated below, Plaintiff was a prevailing party in this matter, and the amount of attorneys' fees and costs she seeks is reasonable and should be awarded to Plaintiff's counsel by this Court.

## I.     PLAINTIFF WAS A PREVAILING PARTY IN THIS CASE

A "prevailing party" is a plaintiff who has "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit," *Hensley*, 461 U.S. at 433. A "prevailing party" is also a plaintiff who has "achieved some success on the merits and can point to a resolution that has changed the legal relationship between herself and defendant." *Connolly*, 177 F.3d at 595 (citing *Farrar v. Hobby*, 506 U.S. 103 (1992); *Hewitt v. Helms*, 482 U.S. 755 (1987)).

A plaintiff who favorably settles his or her case is considered a prevailing party under the FLSA. *See* 29 U.S.C. § 216(b); *Connolly*, 177 F.3d at 595; *Small v. Richard Wolf Med. Instruments Corp*., 264 F.3d 702, 707 (7th Cir. 2001); *Batt v. Micro Warehouse, Inc*., 241 F.3d 891, 893 (7th Cir. 2001). A case is favorably settled for a plaintiff if he or she recovers a portion

of the damages alleged or if "the lawsuit was causally linked to the relief obtained." *Connolly*, 177 F.3d at 595; *Fisher v. Kelly*, 105 F.3d 350, 353 (7th Cir.1997).

Here, Plaintiff was a prevailing party. Plaintiff alleged and Defendant ultimately conceded that Defendant violated the FLSA by failing to factor-in on-call and shift premiums and non-discretionary bonuses when determining its employees' "regular rate" for purposes of determining each employee's proper overtime rate of pay for all hours worked in excess of forty (40) hours in a workweek. (*See* Declaration of Amy Bradley ("Bradley Decl."), ECF No. 20, ¶ 12; *see also* Declaration of Jodi Arndt Labs ("Labs Decl."), ECF No. 21, ¶ 4.) Indeed, as well-stated in the Declaration of Amy Bradley:

> During our audit, we verified that Cash Depot did not factor the on-call premiums into the 'regular rate' of pay when determining how much overtime it owed to the Plaintiff and other field service technicians. We also verified that Cash Depot did not factor shift premiums or non-discretionary bonuses into the 'regular rate' of pay and, therefore, failed to pay overtime on such payments.

(Bradley Decl., ECF No. 20, ¶ 12.)

As a result of these conceded violations, Defendant determined Plaintiff was owed a total of $380.76 and provided him with a check in that amount (less tax withholdings). (*Id.* at ¶¶ 16-20; Defendant's Brief Supporting Motion to Dismiss ("Motion to Dismiss"), ECF No. 18, p. 2.) Defendant further determined that it owed its former and current employees a total of $21,986.47 (including Plaintiff). (Bradley Decl., ¶ 24; Motion to Dismiss, ECF No. 18, p. 2.) In discovery, Defendant represented that said amount "represents the potential amount that would have been in controversy if Plaintiff were to be successful in certifying this matter as a class action." (Walcheske Decl., ¶ 13; Defendant's Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents ("Def. Disc. Resp."), ECF No. 35-1, Response to Interrogatory Number ("Int. Resp. No.") 1.) Having been provided with documents

6

demonstrating Defendant's calculations and amounts paid, Plaintiff agrees that Defendant did compensate its current and former employees with said amount as remuneration for wages owed pursuant to the FLSA. (*See* Walcheske Decl., ¶ 23.)

Thus, Plaintiff is a prevailing party in this case because he succeeded in obtaining all wages owed to not only himself, but to all to all putative collective members on whose behalf he brought his claim. Thus, the only issue to be decided by this Court is the reasonable attorneys' fees and costs to be awarded to Plaintiff.

## II. USING THE LODESTAR METHOD, PLAINTIFF'S ATTORNEYS' FEES OF $49,730.00 AND COSTS OF $407.04 ARE REASONABLE

When a plaintiff is a prevailing party, and thus entitled to reimbursement for attorneys' fees and costs under 29 U.S.C. § 216(b), courts determine the "lodestar" amount by calculating the reasonable hourly rate multiplied by the hours reasonably expended.[1] *Hensley*, 461 U.S. at 433-37; *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012); *Pickett v. Sheridan Health Care*, 664 F.3d 632, 640–43 (7th Cir. 2011); *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007); *Uphoff*, 176 F.3d at 407; *Bankston v. Illinois*, 60 F.3d at 1255.

### A. Plaintiff's Counsel's Hourly Rate of $350.00 Is Reasonable.

A "reasonable" hourly rate reflects the "market rate" for the attorney's services. *Pickett*, 664 F.3d at 640; *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003); *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir.1996). The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon*, 175 F.3d at 555; *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir. 1993). An attorney's actual billing rate for comparable

---

[1] The lodestar approach forms the "centerpiece" of attorneys' fee determinations, and it applies even in cases where the attorney represents the prevailing party pursuant to a contingent fee agreement. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989); *Pickett*, 664 F.3d at 639.

7

work or similar litigation is appropriate to use as the market rate. *Pickett*, 664 F.3d at 640; *Denius*, 330 F.3d at 930; *Small*, 264 F.3d at 707; *People Who Care*, 90 F.3d at 1310; *Uphoff*, 176 F.3d at 407. Ultimately, a fee applicant need only offer third party affidavits attesting to comparable billing rates to meet her burden. *Pickett*, 664 F.3d at 641; *Spegon*, 175 F.3d at 556.

Here, the actual billing rates of Plaintiff's counsel, Attorneys James A. Walcheske and Scott S. Luzi of Walcheske & Luzi, LLC, were $350.00 per hour, and Attorneys Jesse R. Dill and Kelly L. Temeyer of Walcheske & Luzi, LLC, were $250.00 per hour for work performed on employment law cases, including but not limited to matters litigated under the FLSA and WWPCL. (*See* Walcheske Decl., ¶¶ 8, 29, Exhibit A; Declaration of Scott S. Luzi ("Luzi Decl."), ¶ 7.)

Plaintiff's counsel's hourly rates of $350.00 for Attorneys Walcheske and Luzi, and $250.00 for Attorneys Dill and Temeyer, are reasonable because these rates are similar to the rates that other attorneys of similar ability and experience in the community normally charge their paying clients for similar services and types of work. (*See* Declaration of Larry A. Johnson ("Johnson Decl."), ¶¶ 6, 10; Declaration of Summer Hart Murshid ("Murshid Decl."), ¶¶ 6, 10; Declaration of Robert M. Mihelich ("Mihelich Decl."), ¶¶ 6, 10.)

**B.    Plaintiff's Counsel's 139.7 Total Hours Spent Litigating The Merits Of This Matter Is Reasonable.**

Plaintiff's counsel expended a total amount of 139.7 hours litigating the merits in this matter: 95.6 hours by Attorney Walcheske (Walcheske Decl., ¶ 27), 33.2 hours by Attorney Luzi (Luzi Decl., ¶ 8), 7.3 hours by Attorney Dill (Walcheske Decl., ¶ 28), and 11.3 hours by Attorney Temeyer. (*Id.*) Plaintiff's counsel's total amount of 139.7 hours litigating this matter is detailed as follows: a total of 13.6 hours was spent reviewing initial documentation relevant to Plaintiff's FLSA and WWPCL claims and drafting and filing the Complaint and related initiating

and service documentation; a total of 12.6 hours was spent researching relevant case law related to Plaintiff's FLSA and WWPCL claims and Defendant's arguments; a total of 2.4 hours was spent drafting the parties' Rule 26(f) report, communicating with Defendant's counsel regarding same, and filing same with this Court; a total of 0.6 hours was spent related to the Rule 16 Scheduling Conference with this Court; a total of 25.1 hours was spent drafting Plaintiff's Initial Disclosures, reviewing Defendant's Answer, reviewing Defendant's provided documentation, conducting damages calculations, and drafting written discovery requests to Defendant; a total of 48.0 hours was spent drafting responsive pleadings to Defendant's Motions to Lift the Temporary Stay of Proceedings, to Dismiss on Mootness Grounds, and for Summary Judgment; a total of 12.0 hours was spent drafting motions and reviewing Court Orders; a total of 15.3 hours was devoted to intra-office communications; a total of 6.7 hours was spent communicating with Plaintiff; and a total of 3.4 hours was spent communicating with Defendant's counsel (primarily via e-mail). (*Id.* at ¶ 31, Exhibit B.)

In the Court's Decision and Order on Defendant's Motions dated November 7, 2017, the Court stated, in part:

> Cash Depot contends that once it recognized its mistake, it recalculated the overtime pay for all of its current and past employees for the three-year period prior to the filing of Fast's action, both exempt and non-exempt, and has paid them the difference in order to make them whole as well. If that is true, then it would appear that Cash Depot has a strong argument that any motion by Fast to conditionally certify a class should be denied. But because discovery has been stayed, Fast is not in a position to dispute Cash Depot's evidence on this issue. Once the stay is lift, both parties should be able to quickly assess their respective positions and determine where, if at all, any dispute still exists.
>
> If, as Cash Depot contends, it has cured its prior FLSA violations by paying what it owed its current and former employees, this case should promptly resolve with little additional expense to either party.

9

(Decision and Order, ECF No. 43, p. 13.) Notably, and pursuant to the Court's guidance, Plaintiff's counsel devoted only 6.0 of its 139.7 total hours litigating the merits subsequent to the Court rendering said Decision and Order. (*See* Walcheske Decl., Exhibit B.)

Ultimately, Plaintiff's counsel's time spent litigating Plaintiff's substantive FLSA and WWPCL claims are reasonable because Plaintiff's counsel litigated this matter as efficiently as possible on behalf of Plaintiff given the legal issues (and defenses) presented, the vigorous disputes involved, the uncertainty of the outcome, and the public interests advanced by the litigation. Specifically, the amount of time Plaintiff's counsel expended in litigating this matter significantly contributed to Plaintiff's success: a recovery of monetary damages sought not just for Plaintiff, but the entire putative class/collective.

### C. Plaintiff's Counsel's Costs Totaling $407.04 Incurred In This Matter Are Reasonable.

In addition to incurring attorneys' fees, Plaintiff incurred a total of $407.04 in costs. (*See id.*) Specifically, Plaintiff incurred his $400.00 filing fee and a total of $7.04 in postage. Given the amount of time and effort Plaintiff's counsel devoted to litigating Plaintiff's claims on behalf of Plaintiff and the putative class/collective, Plaintiff's counsel believes that its total costs of $7.04 in addition to the mandatory filing fee are highly reasonable.

### D. Plaintiff's Counsel's 7.7 Total Hours Spent Preparing the Attorneys' Fees Motion and Brief Is Reasonable.

Time spent preparing attorneys' fees motions (and corresponding briefs and declarations) is recoverable. *Uphoff*, 176 F.3d at 410-11; *Ustrak v. Fairman,* 851 F.2d 983, 988 (7th Cir. 1988); *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988); *Muscare v. Quinn*, 680 F.2d 42 (7th Cir. 1982). Generally, the time is recoverable in proportion to the number of hours spent litigating the merits of the case. *Id.*

For example, in *Ustrak*, the Court awarded plaintiff's counsel about thirty-six (36) hours for preparation of fee petition(s) when plaintiff's counsel expended 467.10 total hours litigating the case. 851 F.2d at 988. This ratio is approximately 7.7%. Similarly, in *Kurowski*, the Court stated that the 1.6 hours of time requested for preparing the attorneys' fees motions was "the smallest we have ever seen for this function...," and the Court, "commend plaintiffs' counsel for their parsimony." *Kurowski*, 848 F.2d at 777. Finally, in *Uphoff*, the Court, acknowledging the *Kurowski* decision, awarded plaintiff's counsel 1.6 hours for preparation of fee petition(s) when Plaintiff's counsel expended approximately 100 total hours litigating the case. 851 F.2d at 988. This ratio is approximately 1.6%.

Here, Plaintiff's counsel seeks 7.7 hours of time, or $2,695.00, for preparing this Motion and corresponding briefs and declarations, which is in line and proportional to the total amount of time Plaintiff's counsel spent litigating the substantive matter, or 139.7 total hours. This ratio is approximately 5.5%, and it is consistent with prior precedent as noted above.

## III. THE REASONABLE ATTORNEYS' FEES AND COSTS SOUGHT BY PLAINTIFF SHOULD NOT BE ADJUSTED

In limited circumstances, "once the lodestar amount is calculated, it may be adjusted." *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012); *Pickett v. Sheridan Health Care*, 664 F.3d 632, 640–43 (7th Cir. 2011). Courts can adjust the loadstar amount (either up or down) based upon the complexity of the case, the plaintiff's degree of success, the proportionality of the lodestar to the damages recovered, and the public interest advanced by the litigation. *Schlacher*, 574 F.3d at 856-57 (citing *Connolly*, 177 F.3d at 597); *Strange*, 129 F.3d at 946.

However, courts cannot arbitrarily award fees based upon a gut reaction; a court must provide a clear and concise explanation of its award. *Schlacher*, 574 F.3d at 857; *Small*, 264 F.3d at 708; *In re Cont'll Ill. Sec. Litig.*, 962 F.3d 566, 570 (7th Cir. 1992). Further, it is inappropriate

for a court to "eyeball" a fee request and cut it down by an arbitrary percentage because it seemed excessive. *See Schlacher*, 574 F.3d at 857; *Spellan v. Bd. of Educ.*, 59 F.3d 642, 646-47 (7th Cir. 1995) (citing *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir. 1986)).

Here, the loadstar amount should not be adjusted in any respect because all time spent by Plaintiff's counsel litigating this matter was reasonable.

### A.    Plaintiff Achieved Substantial Success In This Matter

In his lawsuit, Plaintiff alleged, and Defendant ultimately conceded, that Defendant violated the FLSA by failing to factor-in on-call and shift premiums and non-discretionary bonuses when determining its employees' "regular rate" for purposes of determining each employee's proper overtime rate of pay for all hours worked in excess of forty (40) hours in a workweek. (*See* Bradley Decl., ECF No. 20, ¶ 12; *see also* Labs Decl., ECF No. 21, ¶ 4.) Indeed, as stated in the Declaration of Amy Bradley:

> During our audit, we verified that Cash Depot did not factor the on-call premiums into the 'regular rate' of pay when determining how much overtime it owed to the Plaintiff and other field service technicians. We also verified that Cash Depot did not factor shift premiums or non-discretionary bonuses into the 'regular rate' of pay and, therefore, failed to pay overtime on such payments.

(Bradley Decl., ECF No. 20, ¶ 12.)

As a result of these conceded violations, Defendant determined Plaintiff was owed a total of $380.76 and provided him with a check in that amount (less tax withholdings). (*Id.* at ¶¶ 16-20; Motion to Dismiss, ECF No. 18, p. 2.) Defendant further determined that it owed its former and current employees a total of $21,986.47 (including Plaintiff). (Bradley Decl., ¶ 24; Motion to Dismiss, ECF No. 18, p. 2.) In discovery, Defendant represented that said amount "represents the potential amount that would have been in controversy if Plaintiff were to be successful in certifying this matter as a class action." (Walcheske Decl., ¶ 13; Def. Disc. Resp., ECF No. 35-1,

Int. Resp. No. 1.) Having been provided with documents demonstrating Defendant's calculations and amounts paid, Plaintiff agrees that Defendant did compensate Plaintiff and the putative collective with said amount as remuneration for wages owed pursuant to the FLSA. (*See* Walcheske Decl., ¶ 25.) Thus, Plaintiff achieved substantial success in this matter on behalf of himself and the putative class/collective.

### B. This Case Was Sufficiently Complex and Uncertain To Warrant the Time Expended In Litigation

The procedural history of this matter demonstrates the complexity and uncertainty that was present therein, warranting that necessary time be expended in litigation. Specifically, the parties had a strenuous dispute regarding proper calculation of the "regular rate." In an effort to resolve the same, Plaintiff's counsel devoted significant time to reviewing payroll and time records produced by Defendant, conducting calculations, and communicating with Defendant's counsel. (*See id.* at ¶¶ 16-18.) When the parties could not reach a resolution on this dispute, Defendant filed its Motions to Lift the Temporary Stay of Proceedings, (ECF No. 16), to Dismiss on Mootness Grounds, (ECF No. 17), and for Summary Judgment, (ECF No. 22), against Plaintiff, requiring the expenditure of additional, significant time to respond to the same.

Even after the Court resolved the dispute between the parties, Plaintiff's counsel had to review Defendant's pay records relating to its payments to Plaintiff and the putative class/collective to ensure payment was proper. (*See* Walcheske Decl., ¶¶ 22, 25.) Thereafter, Plaintiff's counsel intentionally devoted almost no time whatsoever to litigating the matter, in an effort to expediently resolve the same. When it again became clear that the parties could not reach a resolution to this matter, Plaintiff's counsel was compelled to file its present Motion.

13

Given the strenuous dispute between the parties and the litigation efforts in which they engaged, this matter was demonstrably complex and uncertain, warranting the amount of time Plaintiff's counsel devoted to litigating the same.

### D. Litigating Meritorious FLSA and WWPCL Cases, Regardless of Proportionality, Advances the Public Interest

When deciding whether to adjust the lodestar amount, courts can also consider the proportionality of the lodestar to the damages recovered, *Spegon*, 175 F.3d at 558, and the public interests advanced by the litigation. *Schlacher*, 574 F.3d at 856-57 (citing *Connolly*, 177 F.3d at 597); *Strange*, 129 F.3d at 946.

The Seventh Circuit has "'rejected the notion that the fees must be calculated proportionally to damages.'" *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (quoting *Alexander v. Gerhardt Enterprises, Inc.*, 40 F.3d 187, 194 (7th Cir. 1994)). "To hold otherwise would in reality prevent individuals with relatively small claims from effectively enforcing their rights." *Hodgson v. Miller Brewing Co.*, 457 F.2d 221, 228-29 (7th Cir. 1972). And, "'[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys fee requests will exceed the amount of the judgment in the case.'" *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 956 (E.D. Wis. 2003 (collecting cases)).

Thus, simply because the attorneys' fees in this case exceed Plaintiff's and the putative class/collective's monetary recovery does not mean that this Court must necessarily reduce the amount to be awarded. To the contrary, arbitrarily adjusting the figure downward would work against the very reason Congress enacted 29 U.S.C. § 216.

For example, in *Ustrak*, and when awarding $21,000 in attorneys' fees despite only a $1,001 recovery in a civil rights lawsuit, the Seventh Circuit stated:

14

> … [T]he value of Ustrak's victory cannot be gauged by the modest size of the damages awarded. A judicial decision that finds a violation of constitutional rights and punishes the perpetrator with an award of punitive damages not only vindicates constitutional principles but is a deterrent to future violations, to the benefit not only of the plaintiff but of others in similar situations. See, e.g., *Aubin v. Fudala,* 782 F.2d 287, 291 (1st Cir.1986); *Lenard v. Argento, supra,* 808 F.2d at 1248. If these were not permissible considerations, no attorney's fees could be awarded in a case where the plaintiff obtained only nominal damages. That is not the law. See, e.g., *Williams v. Mensey,* 785 F.2d 631, 640 (8th Cir.1986).
>
> Once it is determined that civil rights claims of small cash value nevertheless have enough social value to warrant litigation, it follows that attorney's fees awards will sometimes exceed the damages awards in such cases—and the Supreme Court therefore has held that the damage award is not a ceiling on the fee award. *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). …

*Ustrak*, 851 F.2d at 989.

Similarly, in this case, this Court should not reduce the loadstar amount simply because Plaintiff's reasonable attorneys' fees ($49,730.00) and costs ($407.04) expended in litigating this matter exceeded Plaintiff's and that putative class/collective's amount recovered ($21,986.47).

Indeed, the purpose of 29 U.S.C. § 216 provides an incentive for attorneys to take cases like these, knowing the presiding court will award prevailing parties with reimbursement for reasonable attorneys' fees and costs. *See Anderson*, 578 F.3d at 545 (stating that "[f]ee-shifting provisions signal Congress' intent that violations of particular laws be punished, and not just large violations that would already be checked through the incentives the American Rule"). Otherwise, a court's reduction of otherwise reasonable attorneys' fees and costs sought on behalf of a prevailing plaintiff would contravene Congress' intent under the FLSA and encourage defendants to engage in protracted and inefficient litigation.

15

## **Conclusion**

For the reasons stated herein, Plaintiff respectfully requests that this Court award him reasonable attorneys' fees in the total amount of $49,730.00 and reasonable costs in the amount of $407.04.

Dated this 20th day of June, 2018.

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

s/ *James A. Walcheske*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405

WALCHESKE & LUZI, LLC
15850 W. Bluemound Rd., Ste. 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com

16