UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

TIMOTHY J. FAST
on behalf of himself and
all others similarly-situated,

        Plaintiff,

  v.                            Case No. 16-CV-1637

CASH DEPOT, LTD.,

        Defendant.

---

## DECLARATION OF JAMES A. WALCHESKE

---

I, James A. Walcheske, certify under penalty of perjury that the following is true and correct to the best of my knowledge and recollection:

1.    The statements set forth in this Declaration are made of my own personal knowledge and, if called as a witness, I could and would testify competently to the matters stated below.

2.    I am an attorney licensed to practice in the State of Wisconsin and am counsel for Plaintiff in the above-captioned matter.

3.    I was admitted to the Bar of the State of Wisconsin in 2008. I am also admitted to practice before the United States District Courts for the Eastern and Western Districts of Wisconsin and the Northern District of Illinois, the United States Court of Appeals for the Seventh Circuit, and the United States Supreme Court. Most of my professional time and efforts have involved representing employees in employment matters, including wage and hour matters.

4. I worked as an Associate for the employment law firms of Carroll & McDonald, L.L.C. from January 2008 to October 2009, and Heins Law Office LLC from October 2009 to March 2012. In March 2012, I started my own law practice with Attorney Scott S. Luzi. I am the co-founder and co-Managing Partner of Walcheske & Luzi, LLC.

5. I am a member of the Wisconsin Employment Lawyers Association, the National Employment Lawyers Association, and the Labor & Employment Section of the Wisconsin State Bar, among other organizations.

6. Throughout my years of practice, I have represented hundreds of individuals and employees in employment law matters, including matters to recover unpaid wages under both state and federal law. My law practice for my entire professional career has been devoted to employment law, including wage and hour litigation in federal court.

7. I have represented plaintiffs in individual and class/collective action wage and hour matters in front of the United States District Court for the Eastern and Western Districts of Wisconsin. I believe that I am experienced with complex federal wage and hour litigation because I have successfully represented numerous individuals in single-Plaintiff and multi-Plaintiff wage and hour actions.

8. I currently bill for my services at the rate of $350.00 per hour for any and all work performed on employment law cases, including but not limited to wage and hour matters litigated under the FLSA and WWPCL. Through my involvement in the Wisconsin legal community, and particularly my interactions with other attorneys who practice in the area of labor and employment, I am familiar with the rates attorneys in Wisconsin charge for their work representing plaintiffs under the Fair Labor Standards Act and Wisconsin state law, as well as a plaintiff's ability to recover reasonable attorneys' fees and costs incurred in such litigation. With respect to individual and

class/collective action wage and hour cases, I believe that my hourly rate is reasonable and representative of the market rate for such services on these cases.

9. In this matter, Plaintiff alleged that Defendant failed to compensate him and all other, similarly-situated Field Service Technicians at an overtime rate of pay for all hours worked in excess of forty (40) hours in a workweek, and improperly calculated his and others' "regular rate" of pay, as that phrase is used under the FLSA, when determine the overtime rate of pay to be used for compensating him and others for all hours worked in excess of forty (40) hours in a workweek.

10. During the litigation in this matter, Defendant filed an Answer (ECF No. 9) disputing Plaintiff's claims. Initially, and after the filing of the pleadings, I, among other things, engaged in communications with Defendant's counsel, drafted the parties' Rule 26(f) Report, attended the Rule 16 conference with the Court, drafted Plaintiff's Initial Disclosures, and engaged in written discovery.

11. On June 21, 2017, I received Defendant's Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents via email ("Defendant's discovery responses").

12. A true and accurate copy of Defendant's discovery responses previously filed with the Court (ECF No. 35-1).

13. In Defendant's Response to Interrogatory No. 1, Defendant disclosed that it, "with the assistance of an outside account firm, Schenck SC ("Schenck"), voluntarily conducted a wage audit for the period of December 2013 through February 2017 … [and that] Schenck ultimately determined that Cash Depot owed employees (both former and current) additional wages in the amount less than $22,000; the foregoing amount included interest on any wages owed from December 2013 through April 2017. The foregoing amount also represents the potential amount that would have been in controversy if Plaintiff were to be successful in certifying this matter as a

class action." Defendant further disclosed that after completing the audit and determining the wages owed, "Cash Depot mailed a payroll check to each individual who was no longer employed with Cash Depot. As for individuals still employed with Cash Depot, Cash Depot added the additional wages to their payroll check and included a note explaining the reason for the additional wages. Accordingly, all field service technicians employed during the time period referenced by Plaintiff in its discovery request have been properly compensated …."

14. Attached as Exhibit B to Defendant's discovery responses was "a copy of the spreadsheet prepared by Schenck reflecting its calculation of wages due and owing to Mr. Fast."

15. Attached hereto as Exhibit B is a true and correct copy of "Exhibit B" to Defendant's discovery responses.

16. Subsequent to receiving Defendant's discovery responses, including its Exhibit B thereto, I conducted calculations of Plaintiff's "regular rate" for purposes of not only attempting to ascertain Plaintiff's damages, but also for the purpose of comparing the results of my calculations against the amounts determined through the calculations performed by Schenck.

17. There were discrepancies between my calculations and those performed by Schenck that I could not rectify. Specifically, I believed that I had reverse engineered Schenck's method of calculating the "regular rate," but could not get Schenck's method to mirror that provided in the regulations. Accordingly, I engaged in additional communications with Defendant's counsel regarding its calculations, including a discussion with a representative from Schenck, during which that representative confirmed my understanding of its method of calculating Plaintiff's and, by extension, the putative collective's "regular rates" of pay for purposes of determining overtime compensation. Thereafter, I reviewed and re-calculated my prior calculations to determine whether Defendant's method of calculation was erroneous.

18. Notably, Defendant's discovery responses did not disclose the specific amounts paid to individuals in the putative collection on whose behalf Plaintiff brought his claims or disclose how such amounts were calculated. Accordingly, I engaged in additional communications with Defendant's counsel seeking this information, but was unsuccessful, resulting in Plaintiff propounding additional discovery upon Defendant attempting to ascertain the same.

19. Via letter dated July 25, 2017, I proposed working toward a resolution to this matter that involved Defendant not simply sending additional checks to Plaintiff and/or the putative class in the event we jointly determined additional monies were owed (namely, that if we did make that determination, that we would work toward a settlement agreement, stipulating to certification for purposes of settlement, obtaining preliminary approval from the Court, distribution of notices, and final approval from the Court, including a fee petition hearing).

20. A true and accurate copy of my July 25, 2017 letter was previously filed with the Court (ECF No. 35-8).

21. Defendant did not respond to my July 25, 2017 letter. Instead, it filed its Motions to Lift the Temporary Stay of Proceedings, (ECF No. 16), to Dismiss on Mootness Grounds, (ECF No. 17), and for Summary Judgment, (ECF No. 22), against Plaintiff. Thereafter, I expended significant time responding to the same, including conducting research and drafting responsive pleadings.

22. After the Court granted, in part, and denied, in part, Defendant's motions and once the stay that had been placed on the proceedings in this case was lifted, I conferred with Defendant's counsel. Through that discussion, the parties ultimately agreed to provide each other with additional information, which they did in December 2007. Specifically, Plaintiff agreed to and did provide an updated accounting of Plaintiff's attorneys' fees and costs by way of Amended Answers to Defendant's [Second Set] of Interrogatories and Requests to Produce Documents. For its part,

Defendant agreed to and did provide Plaintiff with documents setting forth all wage calculations performed by Schenck for all of Defendant's employees for the time frame of December 2013 through February 2017. Defendant's production exceed two hundred (200) pages in length.

23. Attached as **Exhibit A** is a true and correct copy of Plaintiff's Amended Answers to Defendant's [Second Set] of Interrogatories and Requests to Produce Documents.

24. Notably, Plaintiff's Amended Answers to Defendant's [Second Set] of Interrogatories and Requests to Produce Documents, specifically his amended answer to Interrogatory No. 2, provided a calculation of Plaintiff's attorneys' fees that did not use the lodestar method, meaning that it did not reflect our firm's then-current rates. Specifically, effective January 1, 2018, my hourly rate and that of Attorney Luzi increased from $300.00 to $350.00 per hour. This increase was intentionally not reflected in the updated accounting of fees as provided to Defendant (although such an increase would have been appropriate under the lodestar method), with the hope that the parties could more easily resolve the matter if the number was as low as possible.

25. On February 2, 2018, and having had an opportunity to review each other's additional information, I again conferred with Defendant's counsel. During the conversation, I stated my belief that, based on my review of the additional documentation Defendant produced, Defendant had paid all wages owed to its employees as a result of its prior failure to correctly calculate said employees' "regular rates." Based on that determination, I stated my belief that the only outstanding issue was reimbursement of Plaintiff's attorneys' fees and costs as identified in Plaintiff's Amended Answers to Defendant's [Second Set] of Interrogatories and Requests to Produce Documents. With respect to the same, I told counsel that my belief was that, assuming Defendant paid those fees and costs, the case "would be done," or words to that effect. In response, Defendant's counsel expressed reluctance, but indicated he would discuss the matter with Defendant.

26. By February 14, 2018, I still had not received a response from Defendant's counsel regarding Plaintiff's attorneys' fees and costs. Thus, on this same date, I emailed counsel seeking an updated regarding the same. Defendant's counsel did not respond.

27. I was the lead attorney on this matter, and I spent a total of 95.6 hours litigating this matter, which is detailed in **Exhibit B**, attached hereto.

28. I have personal knowledge of the work performed in this matter by Attorneys Jesse R. Dill and Kelly L. Temeyer, who were Associates at our firm during the pendency of this matter. Attorneys Dill and Temeyer periodically provided assistance to me in litigating this matter at my direction. As detailed in Exhibit B, Attorney Dill spent a total of 7.3 hours litigating this matter and Attorney Temeyer spent a total of 11.3 hours litigating this matter.

29. I have personal knowledge of the billing rates of Attorneys Dill and Temeyer during the pendency of this matter because I am the individual who set their rates. At all times relevant hereto, Attorneys Dill and Temeyer billed at the rate of $250.00 per hour for any and all work performed on employment law cases, including but not limited to wage and hour matters litigated under the FLSA and WWPCL.

30. The calculations of attorneys' fees as reflected in Exhibit B was done using the lodestar method with respect to Attorneys Walcheske and Luzi (making them a uniform $350.00 per hour for all work performed), given that Plaintiff has been forced to petition the Court for the same. The hourly rates of Attorneys Dill and Temeyer remained unchanged at $250.00 per hour.

31. Plaintiff's counsel's total amount of 139.7 hours litigating this matter is detailed as follows: a total of 13.6 hours was spent reviewing initial documentation relevant to Plaintiff's FLSA and WWPCL claims and drafting and filing the Complaint and related initiating and service documentation; a total of 12.6 hours was spent researching relevant case law related to Plaintiff's FLSA and WWPCL claims and Defendant's arguments; a total of 2.4 hours was spent drafting the

parties' Rule 26(f) report, communicating with Defendant's counsel regarding same, and filing same with this Court; a total of 0.6 hours was spent related to the Rule 16 Scheduling Conference with this Court; a total of 25.1 hours was spent drafting Plaintiff's Initial Disclosures, reviewing Defendant's Answer, reviewing Defendant's provided documentation, conducting damages calculations, and drafting written discovery requests to Defendant; a total of 48.0 hours was spent drafting responsive pleadings to Defendant's Motions to Lift the Temporary Stay of Proceedings, to Dismiss on Mootness Grounds, and for Summary Judgment; a total of 12.0 hours was spent drafting motions and reviewing Court Orders; a total of 15.3 hours was devoted to intra-office communications; a total of 6.7 hours was spent communicating with Plaintiff; and a total of 3.4 hours was spent communicating with Defendant's counsel (primarily via e-mail).

32. I intentionally did not track all time spent drafting Plaintiff's Motion for Attorneys' Fees and Costs and accompanying Brief and Declarations. However, I did track a total of 7.7 hours for preparing the same.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 20th day of June, 2018.

*s/ **James A. Walcheske***
James A. Walcheske