UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TIMOTHY J. FAST,
on behalf of himself and all
others similarly situated,

        Plaintiff,

v.

CASH DEPOT, LTD.,

        Defendant.

Case No.: 16-CV-1637

**BRIEF IN OPPOSITION TO MOTION FOR ATTORNEY'S FEES AND COSTS**

    The Plaintiff moves for an award of over $50,000 in attorney's fees as a reward for recovering just $380, a payment Cash Depot made very early to end the litigation. (R. 20:6; R. 21:1). Cash Depot's retained accounting firm, Schenck, S.C., had determined its financial risk at approximately $22,000 if it lost the case, and attorney's fees and litigation costs threatened to drastically exceed that sum. (R. 21:2, Ex. 3, 4). Consequently, Cash Depot paid the Plaintiff and every member of the putative class, and actually tendered approximately $12,000 in attorney's fees to Plaintiff's counsel, all without requesting a release, a stipulation of dismissal, or anything else that would end the litigation. (Id.). In other words, Cash Depot paid the Plaintiff everything he was due and also paid class members everything allegedly due, all in order to ensure that this proposed class action ended early and the administrative attorney's fees stopped.[1] (R. 18:6-7).

    The Plaintiff resisted all that. He claimed that he could not be forced to settle his case, even though Cash Depot asserted that it planned nothing of the sort. (R. 34:13, R. 37:7). Now,

---

[1] Cash Depot's efforts actually extended beyond the putative class of service technicians. It paid all hourly employees regardless of whether they worked as service technicians. (R. 20:7).

the Plaintiff claims that his attorneys should receive over $50,000, because the case was supposedly settled after all.  (R. 45:6-7).

### A. The Plaintiff has Obtained no Judgment, so he is Entitled to no Fee Award.

The key statute, 29 U.S.C. 216, provides for the payment of attorney's fees only after the plaintiff obtains a judgment, something which the Plaintiff has not acquired and implicitly acknowledges he is not entitled to, since he has been fully paid.  (R. 45:6-7).  The statute provides:

> Any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . .  The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. . . .

The statute, therefore, requires obtaining a judgment as a prerequisite to the award of fees or costs.

*Dionne v. Floormasters Enterprises, Inc.*, 667 F.3d 1199 (11th Cir. 2012), confirms this.  There, the plaintiff also sued under the Fair Labor Standards Act, and the defendant tendered the full amount the plaintiff claimed due.  The district court dismissed the complaint when the plaintiff conceded he had been fully paid, and the court eventually denied the plaintiffs' claim for attorney's fees and costs.  After discussing the catalyst theory (discussed below), the 11th circuit concluded:

> Congress has provided that the court in an FLSA action 'shall, *in addition to any judgment awarded to the plaintiff or plaintiffs*, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'  The FLSA plainly requires that the plaintiff receive a judgment in his favor to be entitled to attorney's fees and costs.

Id. at 1205.  (emphasis supplied by court).

This alone justifies denying the Plaintiff's motion, but the theory underlying this particular motion has long been discredited as well.  The Plaintiff claims that "as a prevailing party" he succeeded in obtaining all wages Cash Depot owed for himself and all putative collective members and consequently must receive an attorney's fee.  (R. 45:5-7).  But *Buckhannon Bd. and Care*

2

Case 1:16-cv-01637-WCG   Filed 07/11/18   Page 2 of 10   Document 51

*Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598 (2001), concluded that a plaintiff who "achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct" is not a prevailing party entitled to legal fees. Id. at 601. The Court explained that the term prevailing party means "a party who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal." Id. at 604. The Court noted:

> The question presented here is whether this term [prevailing party] includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not.
>
> * * * * *
>
> A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties.

Id. at 600, 606. (emphasis original). The *Dionne* court ultimately concluded that the catalyst theory fails to apply to 29 U.S.C. 216(b), citing *Buckhannon* and the rationale quoted above. 667 F.3d at 1203-4.

The Plaintiff cites *Connolly v. National School Bus Service, Inc.*, 177 F.3d 593 (7th Cir. 1999), *Small v. Richard Wolf Medical Instruments Corp.*, 264 F.3d 702 (7th Cir. 2001), *Fisher v. Kelly*, 105 F.3d 350 (7th Cir. 1997), and *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891 (7th Cir. 2001), as support for his notion that Cash Depot's voluntary payment alone yields a fee award. But *Batt*, *Connolly*, and *Fisher* predated *Buckhannon*, and while *Small* followed the Supreme Court's decision by a few months, it overlooked it and noted that no dispute existed over whether the plaintiff there had prevailed. 264 F.3d at 707. That the 7th Circuit follows *Buckhannon* is now beyond debate. As *Petersen v. Gibson*, 372 F.3d 862, explained, the fact that the plaintiff settled

his case does not entitle his lawyer to fees. In *Petersen*, the plaintiff obtained a nominal, one-dollar judgment against a police officer for civil rights violations, but settled the case a short time after verdict for $10,000 and claimed to be the prevailing party. The court noted that attorney's fees are not available where the plaintiff has "acquired a judicial pronouncement that the defendant has violated the Constitution unaccompanied by judicial relief." Id. at 866, quoting *Buckhannon*, 532 U.S. at 606. *Petersen* acknowledged that settlements might occasionally qualify the plaintiff as a prevailing party, but, like *Petersen*, this case is not such an example.

> Since *Buckhannon*, many circuits have attempted to delineate the circumstances in which a settlement has sufficient judicial *imprimatur* to entitle the plaintiff to fees. Many, including this court, have held that a settlement short of a consent decree may qualify if, for instance, the terms of the settlement were incorporated into the dismissal order and the order was signed by the court rather than the parties, or the order provided that the court would retain jurisdiction to enforce the terms of the settlement. Correspondingly, we have recognized that mere judicial involvement in the settlement is not enough; '[t]here must be some official judicial approval of the settlement and some continuing judicial oversight.'

Id. at 866-7. [citations omitted]. None of that existed here. Long ago, Cash Depot sent a check, and the Plaintiff finally acknowledges that he has been fully paid. There has been no judgment, consent decree, or even dismissal, whether with or without the Court's approval. The Plaintiff has earned nothing carrying a judicial *imprimatur* of success and, consequently, is unentitled to fees.

### B. A $50,000 Fee is an Unreasonable Expenditure to Recover $380.

Even if § 216 applied, the Plaintiff's attorney fee must be reasonable, and a $50,000 attorney fee to recover just $380 is hardly reasonable. The following points, in no particular order, demonstrate just how unreasonable the Plaintiff's request is.

First, the reasonableness of the fee sought depends on the results actually achieved. "[T]he achievement of prevailing party status alone 'may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.'" *Texas State Teachers Ass'n. v. Garland Independent School District*, 489 U.S. 782, 789 (1989). "[A] technical victory may

be so insignificant . . . as to be insufficient to support prevailing party status." Id. at 792. Rather, the fee awarded should be guided by practical wisdom and common sense. Needless to say, no rational person would spend $50,000 to gain a $350 payment.

The Plaintiff may claim he achieved more than that because Cash Depot paid the putative class members, as well. But that payment was also modest (about $22,000), (R. 19:4), and due as much to the *in terrorum* effect of the lawsuit as to the merits of the Plaintiff's allegations. (R. 18:6-7). The fee, moreover, belongs to the client, not the lawyer, *Venegas v. Mitchell*, 495 U.S. 82, 87-9 (1990), and these lawyers had just one client. After all, they never moved for class or collective certification or even an appointment as class counsel. The Plaintiff is not entitled to fees for advancing other people's claims. So, what the lawsuit yielded for people (putative class members and others) the law firm did not represent is beside the point of this fee application.

Second, the Plaintiff's claimed hourly rate is, at worst, false and, at best, deceptive. In briefing, the Plaintiff claims:

> Here, the actual billing rates of Plaintiff's counsel, *Attorneys James A. Walcheske and Scott S. Luzi of Walcheske & Luzi, LLC, were $350.00 per hour*, and Attorneys Jesse R. Dill and Kelly L. Temeyer of Walcheske & Luzi, LLC, were $250.00 per hour for work performed on employment law cases, including but not limited to matters litigated under the FLSA and WWPCL.

(R. 45:8, italics supplied). Prior discovery, however, revealed Walcheske and Luzi each charged $300.00 per hour up until January 2018. (Labs Decl. Exs. 1, 2). Comparing the invoices supplied in discovery to those attached to counsel's declaration here reveals a serious discrepancy between the rates charged then and those claimed now for these two lawyers. (Id.). As the Plaintiff concedes, the actual billing rate is usually the best measure of the reasonableness of the fee. (R. 45:7-8). The law firm appears to have altered billing records to increase the firm's hourly rates. This exaggeration alone justifies denying the motion.

5

Next, though the attorney's fee belongs to the Plaintiff, the Plaintiff failed to supply the actual fee agreement that governed his suit. No one knows what fee arrangement was actually achieved, whether it was contingent on a recovery, and what the Plaintiff is to receive. If the fees charged measure value, what rate the law firm actually agreed to accept in compensation before litigation began is telling, especially if the rate originally charged carried a built-in risk of non-recovery.

Fourth, the legal work dealt primarily with two matters. First, the Plaintiff sought a recovery for himself and for a collective of similarly situated workers. Yet the Plaintiff has never sought class certification, his appointment as class representative, or the law firm as class counsel. Cash Depot paid past and present employees as of June 2017 at a time when the lawsuit was only a few months old and little litigation had actually occurred. The Plaintiff's law firm's efforts, after that date, enhanced nothing, much less for a putative class that it never represented. Consequently, awarding fees to promote a class action that was never approved or approval even sought is unreasonable, especially because, as of June 2017, the legal bills were a small fraction of what the Plaintiff now seeks. The Plaintiff concedes that establishing a reasonable fee is his burden, (R. 45:8), and it was incumbent on the Plaintiff to distinguish those costs affiliated with the collective action from those costs dedicated to advancing Fast's case, the only litigant the firm actually represented, to meet that burden.

The balance of the law firm's work dealt primarily with assessing the accuracy of Cash Depot's payments to the members of the collective. That, in turn, dealt primarily with counsel's contention that the certified public accountants Cash Depot hired to make these calculations had erred. As explained at length in previous briefing, (R. 37:2-4, 13-15), counsel contended errors happened but never described them. He did not describe them to the Defendants when asked about

his critique. (R. 21:4-7). He did not describe them to the certified public accountants despite the fact that Cash Depot had produced those accountants for interview. Id. He declined the opportunity to meet face to face with Schenck's representatives and spent about 15 minutes in conversation on a matter that should have been central and critical to the litigation. (Id.). He did not describe them to the Court, even in opposing a motion for partial summary judgment on the question of damages, a motion the Court eventually granted due to inadequate factual opposition. (R. 43:10). Throughout, counsel had obliquely stated his opposition, contended that Schenck's methodology did not follow an administrative regulation exactly, but declined to reveal why Schenck's figures were wrong or why counsel's views were right. Amazingly, he ultimately explained that if he revealed this information, Cash Depot might send further payments to putative class members. (R. 35:6). That stunning revelation suggested the importance of enhancing a legal fee exceeded ensuring that class members were fully paid. In short, counsel was given every opportunity to verify that Schenck's calculations were correct, to compare them to his own, and to explain the difference, but did nothing.

Even now, while counsel implies that Schenck's calculations were wrong, he does not reveal why. That occurred once again on this motion, even after Schenck refuted his critique on the earlier motions, and, most tellingly, after bypassing seeking class certification. If Schenck truly erred, the Plaintiff certainly would have pursued certification to correct the mistake. Instead, the law firm now seeks thousands of dollars in added fees for *incorrectly* calculating the loss. Counsel not only seeks payment for being wrong, he seeks an extravagant sum of money for his effort. According to billings, the law firm dedicated four lawyers, over three months, compiling

14.6 hours to investigate Schenck's very simple calculation, (R. 46-2:3-6),[2] mostly after Cash Depot offered a face-to-face meeting with the accountants at its expense.

Next, the fact is that the Plaintiff has achieved nothing more than he achieved on June 21, 2017, when his legal bills amounted to $10,385, and he received the $380 Cash Depot check and its discovery responses. (R. 46-2:1-3). The Plaintiff then spent 61.4 hours opposing a motion to dismiss the complaint as moot. (R. 46-2).[3] In doing so, the Plaintiff told this Court that he was entitled to more relief than just payment. (R. 34:14-15). Having taken that position just a few months ago, the Plaintiff now concedes that he was fully compensated after all. (R.45:6-7). While once denying that the case was resolved, he now tells the Court that that actually happened. And, sixty-one hours is a stunning amount of time, and 18-20 thousand dollars (depending on a $300-$350 billing rate) an amazing expenditure to dedicate to researching and briefing a single legal issue.

Fifth, while the Plaintiff embellishes his work and efforts, the truth is that this case involved very little legal work, especially before the Plaintiff received full payment of everything he was owed from Cash Depot. (R. 46-2:1-3). The Plaintiff took no depositions and filed no meaningful motions. (He tried to bar Cash Depot from communicating with putative class members, ostensibly because he eventually planned to move for class certification.) (R. 38). He served two sets of pattern discovery and responded to one. He named no experts. While he contends that after the Court's ruling on motions he reviewed two hundred pages documenting the wage calculations Schenck performed, he had never appropriately sought that information beforehand, and in fact, a Supreme Court case declared the discovery he served on the subject improper. (R. 37:12). Cash Depot, at the Court's urging, (R. 43:12-14), voluntarily produced the

---

[2] See billing entries for June 23-28, July 20, and August 15-16. (R. 46-2).
[3] See billing entries for August 4, 14, 17-31, and September 1 and 18. (R. 46-2).

information, and it was hardly complex or required much study.  Walcheske's billing records suggest he spent just 3.4 hours reviewing the data.  (R. 46-2:10).  Ironically, or not, the Plaintiff has spent more than double that time drafting this motion and brief to recover fees.

Sixth, even now the Plaintiff seemingly understands very little about the case he filed.  Several times he contends that he filed the claim under Wisconsin's Wage Payment and Collection Laws—the WWPCL as he characterizes it—but his complaint fails to reveal anything of the sort.  (R. 45:1).  The complaint makes no mention of that statute and never asserts pendent state claims.  (R. 1:1-17).  That, perhaps, is due to the fact that the Plaintiff, according to his own allegations, resided and worked in Indiana during his career at Cash Depot.  (R. 1:3, ¶12, 22).

Despite the Plaintiff's suggestion otherwise, it has litigated this case inefficiently.  Early in the case, the Plaintiff learned that the class had been fully paid, but the Plaintiff's attorneys insisted on going forward.  They wasted the opportunity to meet with the certified public accountants, who could quickly and easily explain how the collective members (and others) had been fully compensated.  While the Plaintiff complains that the discovery responses did not disclose "specific amounts paid to individuals", existing case law required the Plaintiff to seek a court order to elicit that information, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978), and, frankly, it was not the type of confidential information that should be shared with a private litigant who had not yet even bothered to seek class/collective certification.  In other words, the Plaintiff could have easily resolved this case but did not do so, and, instead, inaccurately told the Court that there was more to be done and further relief to be had, when subsequent events confirmed that there was no more to be done and no more relief to be had.

## Conclusion

Plaintiff has sought $50,000 to obtain a recovery that equals less than 1% of those fees. The statute involved prohibits a recovery for the simple fact that the Plaintiff has obtained no judgment and is entitled to none. Instead, he has relied on a discredited legal theory and 7th Circuit case law that was implicitly overruled almost two decades ago. The law firm's billings are extravagant and wasteful. This is the type of effort that has led the 7th Circuit to call some class action litigation a "racket," In re *Footlong Sandwich Litigation*, 869 F.3d 551, 553 (7th Cir. 2017), and the motion should be denied.

Dated this 11th day of July, 2018.

        LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.
        Attorneys for Defendant, Cash Depot, Ltd.


        By: s/George Burnett
            George Burnett

**POST OFFICE ADDRESS:**
231 S. Adams Street
P.O. Box 23200
Green Bay, WI 54305-3200
Phone: (920) 437-0476
Fax (920) 437-2868
State Bar No. 1005964
201615.046:#2889403