UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

TIMOTHY J. FAST,
on behalf of himself and
all others similarly situated

       Plaintiff,                              Case No. 16-cv-1637

     v.

CASH DEPOT, LTD.

       Defendant.

---

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR
ATTORNEYS' FEES AND COSTS**

---

      In Plaintiff's Brief in Support of His Motion for Attorneys' Fees and Costs ("Plaintiff's Brief"), (ECF No. 45), Plaintiff provided facts and authority supporting his being a prevailing party under the Fair Labor Standards Act, such that he is entitled to reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b). In response, Defendant filed its Brief in Opposition to Motion for Attorney's Fees and Costs ("Brief in Opposition"), (ECF No. 51), challenging Plaintiff's status as a prevailing party, as well as the amount of the award of fees and costs Plaintiff seeks. However, as is demonstrated herein, the majority (if not all) of the bases upon which Defendant relies in its Brief in Opposition are legally inapplicable and ineffectual and, therefore, do not upset or affect the determinations that: (1) Plaintiff is a prevailing party under the FLSA; (2) because he is a prevailing party, Plaintiff is entitled to his reasonable attorneys' fees and costs; and (3) the attorneys' fees and costs Plaintiff requests are reasonable and should not otherwise be reduced by the Court.

1

## I. PLAINTIFF IS A PREVAILING PARTY

"Title 29 U.S.C. § 216(b) entitles a prevailing plaintiff in a FLSA action to reasonable attorneys' fees and costs." *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 952 (E.D. Wis. 2003), *aff'd*, 93 F. App'x 81 (7th Cir. 2004). In Defendant's Brief in Opposition to Motion for Attorney's Fees and Costs (Defendant's "Brief in Opposition"), it incorrectly argues that in order to be a "prevailing party" under the Fair Labor Standards Act ("FLSA"), a plaintiff must first obtain a judgment against a defendant in order to be entitled to attorneys' fees and costs. (*See* Brief in Opposition, ECF No. 51, p. 2.) Rather, a plaintiff is a "prevailing party" in an FLSA case if his "lawsuit was casually linked to the relief obtained"[1] on behalf of himself and the putative class, and "the defendant was not acting gratuitously…because the suit was frivolous or groundless." *Dominguez v. Quigley's Irish Pub, Inc.*, 897 F. Supp. 2d 674, 681 (N.D. Ill. 2012).

In this case, Plaintiff brought his lawsuit against Defendant and on behalf of himself and all other similarly-situated current and former Field Service Technicians with the goal of obtaining unpaid overtime wages owed based on Defendant's failure to properly calculate such individuals' regular rates of pay for overtime calculation purposes. (Complaint, ECF No. 1.)

As summarized in this Court's November 7, 2017 Decision and Order, in response to Plaintiff's claims as set forth in his Complaint, Defendant retained an accounting firm that confirmed that Defendant violated the FLSA exactly as Plaintiff alleged. (*See* Decision and Order, ECF No. 43, pp. 2-4.) Indeed, as stated in the Declaration of Amy Bradley:

> During our audit, we verified that Cash Depot did not factor the on-call premiums into the 'regular rate' of pay when determining how much overtime it owed to the Plaintiff and other field service technicians. We also verified that Cash Depot did not factor shift premiums or non-discretionary bonuses into the 'regular rate' of pay and, therefore, failed to pay overtime on such payments.

---

[1] *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 595 (7th Cir. 1999).

(Declaration of Amy Bradley ("Bradley Decl."), ECF No. 20, ¶ 12.) Thus, Plaintiff's claims were neither frivolous nor groundless. Rather, they were linked to the relief obtained.

As a result of this acknowledged FLSA violation, Defendant compensated Plaintiff and the putative collective on whose behalf he brought his claims all monies owed to them. (Decision and Order, ECF No. 43, p. 4; Declaration of James A. Walcheske ("Walcheske Decl."), ECF No. 46, ¶ 13; Defendant's Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents ("Def. Disc. Resp."), ECF No. 35-1, Response to Interrogatory Number ("Int. Resp. No.") 1 (representing that Defendant's payment of $22,367.23 to Plaintiff and the putative collective "represents the potential amount that would have been in controversy if Plaintiff were to be successful in certifying this matter as a class action").)

These facts dictate that Plaintiff's lawsuit was not frivolous. Instead, it was *the* basis for the relief obtained. Accordingly, Plaintiff is a prevailing party for purposes of the FLSA, such that he is entitled to his attorneys' fees and costs at the lodestar rate. *See Dominguez,* 897 F. Supp. 2d at 682 (finding that "[b]ecause there was support for the Plaintiff's claim under FLSA…the Defendants were not acting gratuitously…[t]herefore, the Plaintiff was the prevailing party under the FLSA"); *see Connolly*, 177 F.3d at 595.

## II. THE "CATALYST RULE," AS RELIED ON BY DEFENDANT, IS INAPPLICABLE IN FLSA CASES

In its Brief in Opposition, Defendant claimed that Plaintiff could not be a "prevailing party" under the FLSA because such a finding would invoke the "catalyst rule," which was rejected by the United States Supreme Court in *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598 (2001). (Brief in Opposition, ECF No. 51, pp. 2-4.) Specifically, the now-defunct "catalyst rule" was invoked by parties in claims brought under federal statutes that did not *mandate* the provision of attorneys' fees to prevailing parties, but rather

3

*allowed* the award of such fees at a court's discretion. Indeed, in reference to the statutes discussed and at issue in *Buckhannon*, the Supreme Court explicitly stated, "Notably, the statutes do not mandate fees, but provide for their award in the court's discretion." *Id.* at 624.

As this Court is aware, the FLSA, specifically 29 U.S.C. § 216(b), mandates an award of attorneys' fees and costs to a prevailing party. *See Dionne v. Floormasters Enterprises, Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012) ("As the Supreme Court observed in *Buckhannon*, under the 'American Rule' parties in litigation are expected to bear their own attorney's fees and costs. Congress may abrogate this rule, however, by explicitly providing otherwise. 29 U.S.C. § 216(b) does so in the context of the FLSA.") Indeed, 29 U.S.C. § 216(b) explicitly states: "The court in such action shall…allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (emphasis added.) Thus, the "catalyst rule," the Supreme Court's rejection of the same in *Buckhannon*, and the other cases Defendant cites in support of the rejection of the "catalyst rule" are completely inapplicable to this matter and have no bearing on the determination that Plaintiff is a prevailing party in this matter.

For example, Defendant cites *Petersen v. Gibson*, 372 F.3d 862 (7th Cir. 2004), implying that its adoption of the Supreme Court's rejection of the "catalyst rule" in *Buckhannon* somehow overruled or superseded the Seventh Circuit's holdings cited by Plaintiff in support of his being a prevailing party under the FLSA.[2] (Brief in Opposition, ECF No. 51, p. 3.) However, *Petersen* did not involve an award of attorneys' fees under the FLSA. Rather, it concerned a request for fees in a Section 1983 claim, pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C.

---

[2] Specifically, Defendant references Plaintiff's citations to *Connolly*, *Small v. Richard Wolf Medical Instruments Corp.*, 264 F.3d 702 (7th Cir. 2001), *Fisher v. Kelly*, 205 F.3d 350 (7th Cir. 1997), and *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891 (7th Cir. 2001). (Brief in Opposition, ECF No. 51, p. 3.)

4

§ 1988. *Petersen,* 372 F.3d at 865 ("The pivotal issue in resolving this appeal is whether Petersen is a prevailing party under § 1988").

Unlike the FLSA's mandatory award of attorneys' fees and costs, 42 U.S.C. § 1988 was discussed in *Buckhannon* as the type of discretionary fee award statute under which the "catalyst rule" had been invoked. *See, e.g., Buckhannon*, 532 U.S. at 602-03. "42 U.S.C. § 1988(b)…states that in an § 1983 suit, the court, *in its discretion, may* allow the prevailing party a reasonable attorney's fee as part of the costs." *Walker v. Calumet City, Ill.*, 565 F.3d 1031, 1033 (7th Cir. 2009) (emphasis added). Thus, *Petersen* involves a completely unrelated statutory framework and certainly does not stand for the proposition that *Buckhannon* applies to FLSA cases.

Similarly, Defendant's reliance on *Dionne v. Floormasters Enterprises, Inc.* is misplaced. In Defendant's Brief in Opposition, Defendant claims that *Dionne* "confirms" that Plaintiff must "obtain[] a judgment as a prerequisite to the award of fees or costs." (Brief in Opposition, ECF No. 51, p. 2.) However, Defendant omitted language from that decision limiting its application and stating that its decision should not be construed as Defendant suggests:

> Our decision in this matter addresses a very narrow question: whether an employee who conceded that his claim should be dismissed before trial as moot, when the amount of back pay was tendered, was a prevailing party entitled to statutory attorney's fees under § 216(b). **It should not be construed as authorizing the denial of attorney's fees, requested by an employee, solely because an employer tendered the full amount of back pay owing to an employee, prior to the time a jury has returned its verdict, or the trial court has entered judgment on the merits of the claim.**

*Dionne,* 667 F.3d 1199, 1206 (11th Cir. 2012) (emphasis added). Notably, the Eleventh Circuit further emphasized *Dionne*'s narrow scope in *Wolff v. Royal Am. Mgmt., Inc.*, where the court held that a former employee's acceptance of a settlement check from her employer and the signing of

a release did not strip her of her statutory right to recover attorneys' fees and costs under the FLSA or render her FLSA claim moot. 545 Fed. App'x 791, 793-94 (11th Cir. 2013).

Ultimately, Defendant's legal authority does not affect Plaintiff's status as a prevailing party in this matter. Rather, as demonstrated by the actual facts of this case, and pursuant to the FLSA and applicable authority, Plaintiff is, in fact, a prevailing party under the FLSA, such that he is statutory entitled to reasonable attorneys' fees and costs.

### III. THE LODESTAR METHOD OF CALCULATING ATTORNEYS' FEES AT THEIR PRESENT VALUE IS APPROPRIATE

"29 U.S.C. § 216(b) requires that a prevailing party be fully compensated for the costs of bringing the action. Thus, a prevailing party is not only entitled to the amounts that the attorney would have billed and/or that the plaintiff paid, **but the present value of those amounts**." *Heder*, 255 F. Supp. 2d at 957 (emphasis added); *see also Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989) (approving fee award at "current rather than historic hourly rates"); *Pennsylvania v. Del. Valley Citizens' Council*, 483 U.S. 711, 716 (1987). To compensate for the delay between the time that fees and costs were incurred and when they are awarded, "the court must award what is sometimes called a 'delay enhancement.'" *Heder*, 255 F. Supp. 2d at 957; *see also Jenkins,* 491 U.S. at 283; *Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994) (finding that the district court abused its discretion by failing to award a delay enhancement to account for the delay between fees incurred and the fee award). "Thus, to fully compensate a … plaintiff, <u>the court must award her the present value of what she paid</u>. In other words, <u>the court must award a delay enhancement</u>." *Heder,* 255 F. Supp. 2d at 957.

The "Seventh Circuit has instructed courts to take one of two approaches which seek to approximate the present value of fees: (1) recalculate the lodestar using the attorney's current hourly rate, or (2) assess interest on fees based on the attorney's hourly rate at the time fees were

6

incurred." *Id.* at 958. In keeping with this, the Seventh Circuit routinely supports paying an attorneys' fees award at current billing rates, rather than the rates historically applicable to each year during the litigation, and rather than awarding interest on work performed in earlier years. *See, e.g., Heder,* 255 F. Supp. 2d at 258 (finding that using current rates "is an accepted method and its use will be upheld when it does not result in a windfall for either party"); *Fleming v. Kane Cty.*, 688 F. Supp. 1264, 1272 (N.D. Ill. 1988), *aff'd sub nom, Fleming v. Cty. of Kane, State of Ill.*, 898 F.2d 553 (7th Cir. 1990) ("[c]ourts do frequently look to current billing rates in making fee awards"); *Skelton v. General Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988) ("[t]he courts in this circuit generally use current rates"); *Lightfoot v. Walker,* 826 F.2d 516, 523 (7th Cir. 1987) ("courts often calculate fee awards using current market rates as opposed to historic rates"); *In re Burlington N., Inc. Employment Practices Litig.*, 810 F.2d 601, 608-9 (7th Cir. 1986); *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 663 (7th Cir. 1985). This is particularly true where, as here, the case lasts only a few years. *See Ohio-Sealy*, 776 F.2d at 663 ("[t]o correct for inflation, using current rather than historical hourly rates might prove adequate if the litigation lasted only a few years").

Plaintiff's counsel's present motion seeks its attorneys' fees at their current market rates, in keeping with the manner of determining the lodestar method in the Seventh Circuit. As demonstrated by the cases cited above, this is the accepted method of doing so in the Seventh Circuit. Despite this, Defendant accused Plaintiff's counsel's calculation of its fees using this accepted method as "at worst false and, at best deceptive." (Brief in Opposition, ECF No. 51, p. 5.) Defendant's aspersion in this regard is apparently the result of Plaintiff's previous provision of counsel's rates at their historic, rather than present, rate in an intentional effort to keep them as low as possible with the goal of resolving this matter without further litigation. (*See id.* at p. 5;

7

Walcheske Decl., ECF No. 46, ¶ 24 ("Notably, Plaintiff's … amended answer to Interrogatory No. 2, provided a calculation of Plaintiff's attorneys' fees that did not use the lodestar method, meaning that it did not reflect our firm's then-current rates. … This increase was intentionally not reflected in the updated accounting of fees as provided to Defendant (although such an increase would have been appropriate under the lodestar method), with the hope that the parties could more easily resolve the matter if the number was as low as possible."). Plaintiff should not be disallowed from using the accepted, lodestar method of calculating his attorneys' fees simply because he was willing to provide Defendant a discount at an earlier date.

## IV.   PLAINTIFF'S ATTORNEYS' FEES AND COSTS ARE REASONABLE

### A.   The Hours Plaintiff's Counsel's Expended Advancing The Litigation In This Matter Are Reasonable

Plaintiff's counsel expended a total of 139.7 hours litigating the merits in this matter: 95.6 hours by Attorney Walcheske (*id.* at ¶ 27), 33.2 hours by Attorney Scott S. Luzi (Declaration of Scott S. Luzi ("Luzi Declaration"), ECF No. 47, ¶ 8), 7.3 hours by Attorney Jesse R. Dill (Walcheske Decl., ECF No. 46, ¶ 28), and 11.3 hours by Attorney Kelly L. Temeyer. (*Id.*) As detailed in Plaintiff's principle brief and the accounting of attorneys' fees and costs as provided by Plaintiff, Plaintiff's counsel expended approximately 30.9 hours before June 21, 2017, or the date upon which Plaintiff received notification via Defendant's discovery responses that Defendant may have made payments to Plaintiff and the putative class. (Plaintiff's Brief in Support of His Motion for Attorneys' Fees and Costs, ECF No. 45, pp. 8-9; Walcheske Decl., ECF No. 46, Exhibit B; Defendant's Brief Supporting Motion to Dismiss, ECF No. 18, p. 2 (acknowledging Plaintiff learned of Defendant's actions on June 21, 2018).)

Between June 21, 2017 and July 25, 2017, Plaintiff's counsel devoted approximately 17.7 hours reviewing Defendant's discovery responses and conducting calculations to determine

8

Defendant's method of calculating the amounts owed, and comparing them against counsel's own calculations. (*See* Walcheske Decl., ECF No. 46, Exhibit B.) July 25, 2017 is significant because via letter of same date, Plaintiff's counsel offered to share his method of calculation and to "resolve this matter as expeditiously as possible" with Defendant.[3] (ECF No. 35-8, p. 2.)

Instead of taking Plaintiff up on his offer as extended on July 25, 2017, on August 4, 2017, Defendant filed its Motions to Lift the Temporary Stay of Proceedings, (ECF No. 16), to Dismiss on Mootness Grounds, (ECF No. 17), and for Summary Judgment, (ECF No. 22), against Plaintiff. As could be expected, briefing multiple motions concurrently, particularly dispositive motions to dismiss and for summary judgment, was no small undertaking, causing Plaintiff's counsel to expend approximately 81.8 hours performing the same. (*See* Walcheske Decl., ECF No. 46, Exhibit B.)

On November 7, 2017, the Court entered its Decision and Order on said Motions, instructing the parties to "assess their respective positions and determine where, if at all, any dispute still exists" and, if appropriate, "promptly resolve with little additional expense to either party." (Decision and Order, ECF No. 43, p. 13.) Thereafter and in compliance with the Court's Decision and Order, Plaintiff's counsel expended a total of less than ten (10) hours continuing to advance the litigation, the majority of which was devoted to reviewing documents produced by Defendant relating to the payments it made to those in the putative collective.[4] [5] (*See* Walcheske Decl., ECF No. 46, Exhibit B.)

---

[3] As of this date, Plaintiff's counsel had expended a total of approximately 48.6 hours, or approximately 34.8% of the total hours it ultimately expended advancing the litigation of this matter. (*See id.*)

[4] Plaintiff's counsel expended approximately 93% of all hours litigating the matter before this Court's entrance of its Decision and Order.

[5] Notably, during that period, Plaintiff suggested to Defendant that this matter could simply be resolved if Defendant reimbursed his attorneys' fees and costs. (*Id.* at ¶ 25.) Only after Defendant refused to respond to this suggestion was Plaintiff's counsel once again compelled to expend additional hours in an attempt to obtain the same and enable the matter to finally be resolved. (*Id.* at ¶ 26.)

9

As made clear by this accounting, as well as that set forth in Plaintiff's principle brief, (ECF No. 45, pp. 8-9), and accounting of fees, (Walcheske Decl., ECF No. 46, Exhibit B), the hours expended by Plaintiff's counsel were solely for the purpose of advancing the litigation toward its conclusion and were not otherwise duplicative or unnecessary. Although Defendant did provide payment of monies owed to Plaintiff and the putative class "early" in the litigation, Plaintiff's counsel's conduct in ensuring that the payments were: (1) actually made as represented; and (2) made correctly, was entirely reasonable,[6] particularly in a FLSA collective action such as this where the outcome affects more than simply Plaintiff.

### B. Plaintiff's Counsel's Hourly Rates Are Reasonable Because They Reflect The "Market Rate"

A "reasonable" hourly rate reflects the "market rate" for the attorney's services. *Pickett*, 664 F.3d at 640; *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003); *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir.1996). The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir. 1993). An attorney's actual billing rate for comparable work or similar litigation is appropriate to use as the market rate. *Pickett*, 664 F.3d at 640; *Denius*, 330 F.3d at 930; *Small*, 264 F.3d at 707; *People Who Care*, 90 F.3d at 1310; *Uphoff*, 176 F.3d at 407. Ultimately, a fee applicant need only offer

---

[6] As noted by the Court in its Decision and Order, although Defendant told Plaintiff it made payments to Plaintiff and the putative collective, Defendant "did not provide any information relating the putative class," or "provide [Plaintiff] with an itemized list of the payments it made to all current and former employees," (Decision and Order, ECF No. 43, p. 5), causing Plaintiff to not be "in a position to dispute [Defendant's] evidence on this issue." (*Id.* at p. 13.) Indeed, Defendant refused to provide any such information to Plaintiff until on or about January 8, 2018, (*see* Walcheske Decl., ECF No. 46, Exhibit B), and only after the Court rendered its Decision and Order in this matter.

third party affidavits attesting to comparable billing rates to meet her burden. *Pickett*, 664 F.3d at 641; *Spegon*, 175 F.3d at 556.

Here, the actual billing rates of Plaintiff's counsel, Attorneys James A. Walcheske and Scott S. Luzi of Walcheske & Luzi, LLC, were $350.00 per hour, and Attorneys Jesse R. Dill and Kelly L. Temeyer of Walcheske & Luzi, LLC, were $250.00 per hour for work performed on employment law cases, including but not limited to matters litigated under the FLSA and WWPCL. (*See* Walcheske Decl., ECF No. 46, ¶¶ 8, 29, Exhibit B; Luzi Decl., ECF No. 47, ¶ 7.)

Plaintiff's counsel's hourly rates of $350.00 for Attorneys Walcheske and Luzi, and $250.00 for Attorneys Dill and Temeyer, are reasonable because these rates are similar to the rates that other attorneys of similar ability and experience in the community normally charge their paying clients for similar services and types of work. (*See* Declaration of Larry A. Johnson, ECF No. 48, ¶¶ 6, 10; Declaration of Summer Hart Murshid, ECF No. 49, ¶¶ 6, 10; Declaration of Robert M. Mihelich, ECF No. 50, ¶¶ 6, 10.) Accordingly, there is no reason for this Court to reduce or otherwise not award Plaintiff's attorneys' fees at their current rates that are reflective of the market rate.

### C. Plaintiff's Counsel's Attorneys' Fees Should Not Be Reduced

As a general principal, courts cannot arbitrarily award fees based upon a gut reaction; a court must provide a clear and concise explanation of its award. *Schlacher v. Law Offices of Phillip J. Rotche Assocs.,* 574 F.3d 852, 857 (7th Cir. 2009); *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001); *In re Cont'll Ill. Sec. Litig.*, 962 F.3d 566, 570 (7th Cir. 1992). Further, it is inappropriate for a court to "eyeball" a fee request and cut it down by an arbitrary percentage because it seemed excessive. *See Schlacher*, 574 F.3d at 857; *Spellan v. Bd.*

11

*of Educ.*, 59 F.3d 642, 646-47 (7th Cir. 1995) (citing *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir. 1986)).

Defendant's Brief in Opposition suggests that Plaintiff should not be awarded his attorneys' fees because of the amount of those fees as compared to the recovery achieved by Plaintiff. (*See* Brief in Opposition, ECF No. 51, pp. 4-5.) However, Defendant's suggestion of disproportionality is irrelevant to the determination of the reasonableness of counsel's attorneys' fees. *See Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (finding that proportionality between the damages claimed and the attorney's fees is irrelevant when the plaintiff recovers "the entire amount of the claimed deficiency" and that the Seventh Circuit has "rejected the notion that the fees must be calculated proportionally to damages"); *see also Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) ("This court has repeatedly rejected the notion that the fees must be calculated proportionally to damages"); *Dominguez*, 897 F. Supp. 2d at 687 ("The purpose of a fee shifting statute, which is to enable smaller claims to be litigated, would be thwarted if attorneys' fees had to be strictly proportional to the amount recovered"). "To hold otherwise would in reality prevent individuals with relatively small claims from effectively enforcing their rights," *Hodgson v. Miller Brewing Co.*, 457 F.2d 221, 228-29 (7th Cir. 1972), and, "[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys fee requests will exceed the amount of the judgment in the case." *Heder*, 255 F. Supp. 2d 947, 956 (E.D. Wis. 2003 (collecting cases)); *see also Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) ("[o]nce it is determined that civil rights claims of small cash value nevertheless have enough social value to warrant litigation, it follows that attorney's fees awards will sometimes exceed the damages awards in such cases—and the Supreme Court therefore has held that the damage award is not a ceiling on the fee award.")

12

Indeed, the purpose of 29 U.S.C. § 216 provides an incentive for attorneys to take cases like these, knowing the presiding court will award prevailing parties with reimbursement for reasonable attorneys' fees and costs. *See Anderson*, 578 F.3d at 545 (stating that "[f]ee-shifting provisions signal Congress' intent that violations of particular laws be punished, and not just large violations that would already be checked through the incentives the American Rule"). Otherwise, a court's reduction of otherwise reasonable attorneys' fees and costs sought on behalf of a prevailing plaintiff would contravene Congress' intent under the FLSA and encourage defendants to engage in protracted and inefficient litigation.

Further, that Plaintiff was ultimately unsuccessful in defending summary judgment insofar as he failed to satisfactorily demonstrate to this Court that his methodology of calculating the employees' "regular rate" was legally "correct," does not undermine the result his lawsuit achieved for Plaintiff and the putative class or the reasonableness of the time counsel expended advancing the litigation in this matter. In other words, there is no basis for denying or even reducing Plaintiff's counsel's attorneys' fees simply because he was not successful in every facet of his case. *See Hensley*, 461 U.S. 424 at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation … In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.") (internal citations omitted); *see also Dominguez*, 897 F. Supp. 2d at 689; *Spegon,* 175 F.3d at 557-58.

## Conclusion

For all of the reasons stated herein and in Plaintiff's principle brief, Plaintiff respectfully requests that this Court award him reasonable attorneys' fees in the total amount of $49,730.00 and reasonable costs in the amount of $407.04.

Dated this 20th day of July, 2018.

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

s/ *James A. Walcheske*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405

WALCHESKE & LUZI, LLC
15850 W. Bluemound Rd., Ste. 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com