UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TIMOTHY J. FAST,
on behalf of himself and all
others similarly situated,

        Plaintiff,

v.

CASH DEPOT, LTD.,

        Defendant.

Case No.: 16-CV-1637

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

**A. The Court Should Grant the Summary Judgment Motion as Unopposed.**

Cash Depot moved for dismissal on the grounds of mootness or, alternatively, for summary judgment on the grounds of payment. The Plaintiff opposes the first motion and ignores the second. But ignoring a motion for summary judgment is not an option, as this Court pointed out in an earlier decision. *Fast v. Cash Depot*, 296 F.Supp.3d 998, 1003-4 (E.D.Wis. 2017). So, the motion for summary judgment should be granted for the simple reason that the Plaintiff does not oppose it.

**B. Conceding no Other Relief is Possible on the Merits, the Plaintiff Implicitly Concedes the Case is Moot.**

The Plaintiff repeats his earlier concession that this Court can grant him no further relief. (R. 56:2.) That is the classic definition of mootness, *Knox v. SEIU,* 567 U.S. 298, 307 (2012). So,

unless the Plaintiff's position that the case is not moot until the Court decides his attorney's fees and costs motion is correct, the motion should be granted.

### C. These Motions are Necessary to End This Litigation.

The Plaintiff's response brief reveals that he does not understand the purpose of these motions. The Plaintiff thinks Cash Depot filed the motions in order to perpetuate arguments about attorney's fees after the parties fully briefed the motion to award fees and costs. (R. 56:4). The Plaintiff contends that his motion for fees and costs yields the judgment necessary to end the litigation, and even asserts that the motion "requests relief in the form of his reasonable attorney's fees – and a judgment reflecting the same – allowing dismissal of this matter." (R. 56:4–5). Elsewhere, the Plaintiff describes the order he proposed as calling for a judgment. (R. 56:2). Neither assertion is accurate. The motion never mentions a judgment and the proposed order merely directs the payment of attorney's fees within 30 days and requires a stipulation between the parties dismissing the case after that. (R. 44, 44:1). An order directing payment of attorney's fees emanates after a judgment's entry under Fed. R. Civ. P. 54(d), and, a stipulation is an agreement and courts cannot compel agreements. Cf. *G. Heileman Brewery Co. v. Joseph Oat. Corp.*, 871 F.2d 648, 653 (7th Cir. 1989); *Williams v. Strachan*, 2016 WL 1057012 *6 (E.D.Wis. 2016).

Though very basic, the purpose of these motions should be explained again if only for the Plaintiff's benefit.

All litigation must eventually end. It ends either when the Court enters judgment in the Plaintiff's favor, orders dismissal in the Defendant's favor, or the parties stipulate to end it and the Court enters the appropriate order or judgment as a consequence of that stipulation. The American Rule allocates legal expenses so that each side bears its own. Section 29 U.S.C. §216(b) varies

2

Case 1:16-cv-01637-WCG   Filed 08/17/18   Page 2 of 11   Document 59

that rule under the Fair Labor Standards Act but only if the plaintiff first obtains a judgment in his favor. "The Court . . . shall, *in addition to any judgment awarded to the Plaintiff*, allow a reasonable attorney's fee to be paid by the Defendant . . . ." 29 U.S.C. §216(b) [Italics added.]

Without addressing this critical language of that statute, the Plaintiff claims that that is not true. He contends that he can obtain fees without obtaining a judgment because any "prevailing party" is entitled to a fee award under the Fair Labor Standards Act. He claims that he is a "prevailing party" because his lawsuit was the impetus behind Cash Depot paying the Plaintiff about $380 and (even though he never moved for class representative status) other hourly, non-exempt workers about $22,000 collectively. That is the catalyst theory. He admits that *Buckhannon* invalidated the catalyst theory but claims that theory is defunct only for other kinds of cases, not FLSA cases. (R. 56:5; 53:3-4). According to the Plaintiff's theory, the same words – prevailing party – mean something very different under the Fair Labor Standards Act where apparently the catalyst theory is alive and well. There is, of course, no legal authority to support any of this so, not surprisingly, the Plaintiff cites none. To make matters even more bizarre, the words "prevailing party" do not appear in the Fair Labor Standards Act or in Section 216(b).

In summary, the Plaintiff would have this Court (1) ignore Section 216(b) and its requirement of a judgment, (2) intuit the words "prevailing party" into an Act of Congress where the Congress never placed them, and (3) construe these words in direct opposition to the meaning the Supreme Court ascribed to them and consequently invigorate a legal theory that even the Plaintiff concedes is defunct. As an encore, the Plaintiff contends that an otherwise moot case – one where no more substantive relief is possible on the merits – is nevertheless justiciable because

a pending claim for attorney's fees exists. Extensive case law refutes that appallingly incorrect view of the law, and, once again, the Plaintiff cites no legal authority to support it.

In summary, the reason for this motion is to end the litigation, because the Plaintiff cannot obtain the judgment Section 216(b) requires and the catalyst theory that he espouses that would yield an attorney's fee award, has been discredited for 20 years.

### D. A Claim for Litigation Costs Does Not Make a Case Justiciable.

The first question raised by virtue of the Plaintiff's response brief inquires whether a case is moot with a motion for attorney's fees and costs pending. (R. 56:4). Many cases contradict the Plaintiff's position and, it is especially telling that he cites none to support it. The Supreme Court and Seventh Circuit have repeated many times that an interest "in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990); *Diamond v. Charles*, 476 U.S. 54, 70–71 (1986); *Genesis Health Care Corp. v. Symczyk*, 569 U.S. 66, 78, N. 5 (2013), *Wright v. Calumet City, Illinois*, 848 F. 3d 814, 820 (7th Cir. 2017), *Breneisen v. Motorola Inc.*, 656 F. 3d 701, 705 (7th Cir. 2011), *Premium Plus Partners L.P. v. Goldman, Sachs & Co.*, 648 F. 3d 533, 538 (7th Cir. 2011), *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 665 (7th Cir. 2001). While that extensive authority is enough, this Court applied that very rule in *Freedom From Religion Foundation, Inc. v. City of Green Bay*, 581 F.Supp.2d 1019, 1033 (E.D.Wis. 2008).

The dozens of cases contradicting the Plaintiff's position and his lack of citation to any legal authority supporting it underscores just how specious it is. But his efforts to distinguish *Steel Co. v. Citizens For a Better Environment,* 523 U.S. 83 (1998), as a standing case that expresses this "cherry picked language" with no "bearing on this case" demonstrates just how exceedingly frivolous it is. (R. 56:5). According to the Plaintiff, the fact that *Steel Co.* involved standing, not

mootness, somehow distinguished the case and made it inapplicable. But that contention reflects a regrettable ignorance of the fundamental principles of standing, mootness, justiciability, and the requirements of Article III. As the courts have stated many times: mootness is the "doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonians for Official English v. Arizona,* 520 U.S. 43, 68 n. 22 (1997).

The Plaintiff's baseless legal position trivializes *Stone* and pretends the Supreme Court did not mean what it wrote when it stated, "An interest in attorney's fees is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." 523 U.S. at 107. *Stone* drew no distinction between standing and mootness, but instead, declared that no claims for attorney fees confer justiciability. *Stone* therefore held that "[t]he litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself. A plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit." Id., 523 U.S. at 108. If a claim for attorney's fees cannot confer Article III justiciability at the outset of litigation, a claim for those same attorney's fees cannot confer Article III justiciability at the end of the litigation.

**E. There is no Express Statutory Authority for a Fee Award Here.**

To be clear, Cash Depot does not assert that the Court lacks the ability to assess fees and costs simply because the merits of this case are moot. This case must be dismissed because it is moot yet ample authority states that such an issue is ancillary to the merits, and courts may award or refuse fees even after losing the power to address the merits.

Still, just because courts might have general power to confer an adjunct fee award does not mean that there exists the authority to do so here. Courts do not confer an opposing party's

litigant attorney's fees on an adversary without the "explicit statutory authority" to do so. *Buckhannon*, 532 U.S. at 602; *Alyeska Pipeline Service Co. v. Wilderness Security*, 421 U.S. 240, 254-270 (1975). That authority, here, emanates from 29 U.S.C. §216(b) which "plainly requires that the plaintiff receive a judgment in his favor to be entitled to attorney's fees and costs." *Mayer v. Wall Street Equity Group, Inc.*, 514 Fed.Appx. 929, 934 (11th Cir. 2013) (per curiam). *Samson v. Apollo Resources Inc.,* 242 F.3d 629, 640 (5th Cir. 2001) similarly held that a voluntary payment made after suit started did not justify a fee award because §216(b) required a judgment. Because the Plaintiff has obtained no judgment on the merits, he is entitled to no fees. Id.

**F. The Plaintiff is not a Prevailing Party.**

The Plaintiff presents no serious challenge to any of this in response. He never quotes the statute or explains why its prerequisite of a judgment should be ignored. Instead, the Plaintiff conflates the statutory requirement with the notion that any "prevailing party" may collect a reasonable attorney fee and costs. (R. 56:3-4). But, as stated above, that is not what the Fair Labor Standards Act declares, and the sparse authority the Plaintiff cites hardly supports his position.

For example, *Connolly v. National School Bus Service, Inc.*, 177 F.3d 593, 595 (7th Cir. 1999) involved employment discrimination statutes that carried different language than the FLSA's and also applied the catalyst theory before *Buckhannon* rejected it two years later. And, *Dominiguez v. Quigley's Irish Pub, Inc.*, 897 F.Supp.2d, 674, 681 (N.D.Ill. 2012), and *Heder v. City of Two Rivers,* 255 F.Supp.2d 947 (E.D.Wis. 2003) never addressed the construction of §216(b) either. Indeed, in *Dominguez,* the plaintiff acquired a summary judgment before seeking fees. In *Heder*, context reveals that Judge Adelman noted in a shorthand fashion that prevailing

parties collect attorney's fees, but the decision did not address whether the Plaintiff's groundless views of *Buckhannon* and the catalyst theory enjoy any legitimacy or even whether a judgment was a prerequisite, no doubt because the plaintiff had already obtained one.

But even if those Courts' use of that term proved that courts should imply language the Congress never included in the statute, the Plaintiff is not entitled to attorney's fees because he is not the prevailing party he claims to be. *Buckhannon* concluded the term 'prevailing party' requires the plaintiff receive some legally sanctioned relief on the merits of a claim. So absent a judgment on the merits or a court-ordered consent decree, no award of attorney's fees can occur. To that end, the Supreme Court held that the catalyst theory, which the Plaintiff invokes here, yielded no judicially sanctioned change in the legal relationship of the parties and therefore justified no fee award. *Buckhannon* ultimately concluded "a Defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties." Id. at 605. [Emphasis original.] All of this refutes the Plaintiff's position. He is not a prevailing party, because he has not obtained a judicially sanctioned change in the parties' legal relationship, and the catalyst theory that he invokes is inadequate to justify a fee award.

Despite all this, the Plaintiff claims that he is a prevailing party because *Buckhannon* construed that term under the Fair Housing Act and the Americans With Disabilities Act, not the Fair Labor Standards Act. (R. 56:5). Yet, it is nonsense to say that the same words mean different things when applied to different acts of Congress. It is especially ridiculous when those words are absent from the statute the Plaintiff invokes in the first place. Unsurprisingly, the

Plaintiff cites no legal authority to support the notions that he is a prevailing party despite the lack of a change in the legal relationship, that the catalyst theory applies in Fair Labor Standards Act cases but not elsewhere, or that Section 216(b) endorses fees for prevailing parties who lack a judgment. The Plaintiff cannot prevail on its motion for the simple reason that "absent explicit congressional authorization" attorney's fees are not a recoverable cost of litigation. *Keytronic Corp. v. United States*, U.S. 809, 814 (1994). Section 216(b) withholds that "explicit" authorization, here, so the Plaintiff's suit should be dismissed without fees awarded.

### G. The Plaintiff Reads *Dionne* and *Wolff* Erroneously.

The Plaintiff's position is even more brazen because he claims that *Dionne v. Floormasters Enterprises, Inc.*, and *Wolff v. Royal American Management, Inc.*, two 11th Circuit cases, support his position and undercut Cash Depot's. (R. 56:5-6).

*Dionne* directly rejected the plaintiff's contention that filing his lawsuit prompted the Defendant to pay the money he sought, so he is a prevailing party entitled to collect an attorney's fee. The Court construed §216(b), and concluded that because "the FLSA plainly requires the Plaintiff receive a judgment in his favor to be entitled to attorney's fees and costs", he was entitled to none. 667 F.3d 1199, 1205 (11th Cir. 2012). The Court also declined to order fees for a second reason, noting that regardless of whether the lawsuit prompted the payment, the Plaintiff had obtained no judicially sanctioned relief and consequently, *Buckhannon* barred collecting fees. Id. In *Mayer*, *supra*, the 11th Circuit explained *Dionne* and its holding in just this fashion. 514 Fed.Appx. at 934.

Despite all this, the Plaintiff contends that a footnote at the end of the case rescues his position. (R. 56:5). Quoted incompletely in the Plaintiff's brief, the full footnote provides:

> Our decision in this matter addresses a very narrow question: whether an employee who conceded that his claim should be dismissed as moot, when the full amount of

> back pay was tendered, was a prevailing party entitled to statutory attorney's fees under Section 216(b). It should not be construed as authorizing the denial of attorney's fees requested by an employee, solely because the employer tendered the full amount of back pay owing to the employee, prior to the time a jury has returned its verdict or the court has entered judgment on the merits of the claim.

*Dionne,* 667 F.3d at 1206. Read in context, the court plainly intended to foreclose making a last-minute payment in order to avoid imminent liability. Payment because a jury is poised to return an adverse verdict or a court prepared to enter an adverse judgment cannot eliminate fees. Furthermore, the footnote invoked is merely *dicta*. Such a case was not before the 11th Circuit and it is not present before this Court today. No jury has been impaneled and the Court has not been asked nor would it be justified to enter a judgment against Cash Depot on the merits. As in *Dionne*, by conceding that he is entitled to no more relief on the merits, the Plaintiff acknowledges the case as moot.

*Wolff* hardly advances the Plaintiff's position, for there, the plaintiff obtained the equivalent of a judgment, which the 11th Circuit reiterated Section 216(b) requires, when the District Court approved a settlement as reasonable. In *Wolff*, the defendants settled the plaintiff's claims behind her lawyer's back and then sought to deprive him of a fee. The court approved the settlement formally and concluded that the settlement agreement and release did not preclude an attorney's fee award under the Fair Labor Standards Act. Thus, because the court had entered the equivalent of a judgment and because the release the plaintiff signed did not foreclose an attorney's fee award, the court granted one.

None of this has occurred here. There has been no settlement; Cash Depot made its payment without demanding or expecting a release and the Plaintiff was free to pursue his claim, if further remedies were available. The Plaintiff eventually conceded that Cash Depot was right

after all and now acknowledges that he had been paid everything he was entitled to and that Cash Depot owes nothing further on the merits.

### H. Events Have Changed Making the Case Moot.

The Plaintiff contends that nothing has changed since the Court denied Cash Depot's motion for dismissal months ago. (R. 56:3). But that is wrong. The Plaintiff now accepts Cash Depot's payment, which it previously rejected. And, deadlines to move for class and collective certifications lapsed without action. Fast no longer seeks appointment or compensation to serve as class representative. These reflect key factors that the Court invoked for its prior decision denying Cash Depot's motion to dismiss. *Fast,* 296 F.Supp.3d at 1005. Otherwise, if nothing has changed, as the Plaintiff now espouses, and the Plaintiff can obtain no more relief as he now concedes, then the case was moot months ago when the Plaintiff misled the Court into believing otherwise.

Under any circumstance the Plaintiff should not prevail: "Courts should not countenance meaningless class actions, or collective actions, that benefit no one but the attorneys." Id., 296 F.Supp.3d. at 1006. Fast has been fully paid almost from the outset of the litigation yet his legal fee claim has quadrupled. His lawyer's effort has always been to perpetuate litigation which increases his legal fee. He best demonstrated that motivation several months ago, when he refused to describe how Cash Depot's payments were supposedly wrong, out of fear that Cash Depot would rectify any problem, a strategy this Court described as senseless. Id. at 1004. Since then, of course, the Plaintiff has acknowledged that Cash Depot's calculations were correct. He has never revealed why those calculations were supposedly wrong, and one legitimately wonders whether any basis ever existed for that contention. Ultimately, the Plaintiff

requires statutory authorization to obtain an attorney's fees, and he has none.  The case should be dismissed and the motion for fees denied.

      Dated this 17th day of August, 2018.

                      LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.
                      Attorneys for Defendant, Cash Depot, Ltd.

                      By: s/George Burnett
                            George Burnett

**POST OFFICE ADDRESS:**
231 S. Adams Street
P.O. Box 23200
Green Bay, WI  54305-3200
Phone:  (920) 437-0476
Fax  (920) 437-2868
State Bar No. 1005964
201615.046:#2914008